## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - -x | : | |
| In re: | : | Chapter 11 |
| | : | |
| DELTA PETROLEUM CORPORATION, | : | Case No. 11-14006 (KJC) |
| et al.,[1] | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - -x | : | |
| DELTA PETROLEUM GENERAL | : | |
| RECOVERY TRUST | : | |
| and | : | |
| PAR PETROLEUM CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Adv. Pro. No. 12-50898 (KJC) |
| | : | |
| v. | : | |
| | : | |
| BWAB LIMITED LIABILITY | : | **Hrg. Date: TBD** |
| COMPANY, | : | **Obj. Due:  N/A** |
| Defendant. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - -x | | **Related Docket No. 1** |

### AMENDED COMPLAINT FOR AVOIDANCE AND/OR DISCHARGE OF INTERESTS, ENFORCEMENT OF BAR DATE ORDER, AND RECOVERY OF PROPERTY OF THE ESTATE

Delta Petroleum General Recovery Trust ("Delta Petroleum Trust")

and Par Petroleum Corporation ("Par Petroleum") and its affiliates (each a

"Reorganized Debtor" and collectively, the "Reorganized Debtors," and together

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Delta Petroleum Corporation (0803); DPCA LLC (0803); Delta Exploration Company, Inc. (9462); Delta Pipeline, LLC (0803); DLC, Inc. (3989); CEC, Inc. (3154); Castle Texas Production Limited Partnership (6054); Amber Resources Company of Colorado (0506); and Castle Exploration Company, Inc. (9007).  The Reorganized Debtors' headquarters are located at: 1301 McKinney Street, Suite 2025, Houston, TX 77010.

with Delta Petroleum Trust, the "Plaintiffs"), for their complaint against BWAB

Limited Liability Company ("BWAB" or "Defendant"), allege, on personal

knowledge as to their own actions and on information and belief as to the actions of

others, as follows:

## SUMMARY OF ACTION

1.      Through this action, the Plaintiffs seek a ruling from this

Court declaring, among other things, that certain of the Debtors' assets (in particular,

interests related to certain leases off the coast of California) that vested "free and

clear" in the Reorganized Debtors upon emergence from bankruptcy, did so without

being burdened by Defendant's alleged rights and claims.  Defendant obtained these

rights and claims against the Debtors pursuant to two separate sets of agreements,

each of which is at issue here, one from 1994 and one from 1999.

2.      With respect to the 1994 agreement, Defendant was conveyed

a contractual right to payment (or a personal property right) that gave rise to a

prepetition claim.  This claim was discharged by the Debtors' chapter 11 plan of

reorganization (the "Plan")[2] upon its effectiveness.  With respect to the 1999

agreement, Defendant was either granted (i) a contractual right to payment (or a

personal property right), in which case like the 1994 agreement, any and all of

Defendant's related rights and claims were discharged by the Plan upon its

effectiveness, or (ii) a real property interest, which will be avoided and recovered

---

[2]    Terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

pursuant to sections 544(a)(3) and 550 of title 11 of the United States Code (the "Bankruptcy Code"), as of the commencement of the above-captioned jointly administered bankruptcy cases (the "Chapter 11 Cases"), because Defendant failed to record its real property interest pursuant to applicable law.  Although Defendant may have been entitled to the treatment afforded to holders of allowed prepetition claims, Defendant failed to file a proof of claim, despite having been provided with actual notice of the bar date.  Such failure results in the disallowance of Defendant's claim(s) by operation of this Court's order establishing the bar date.

3.      Moreover, Defendant received payments during the postpetition period on account of its alleged interests.  Defendant was not entitled to these payments and, therefore, all such payments should be disgorged and paid to the Plaintiffs for the benefit of all holders of allowed unsecured claims.

4.      In addition, upon information and belief, Defendant was overpaid for the alleged interests obtained under the 1994 agreement.  Plaintiffs seek to disgorge the historical amounts overpaid for the benefit of all holders of allowed unsecured claims.

5.      In addition, through this action Plaintiffs seek to enforce against Defendant the provisions of the Confirmation Order (as defined herein) and the Debtors' Plan that relate to the discharge injunction (the "Chapter 11 Plan Injunction").

**JURISDICTION AND VENUE**

6.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This action is a core proceeding under 28 U.S.C. § 157(b)(2).

7.      Venue is proper under 28 U.S.C. § 1409.

8.      This Court has personal jurisdiction over Defendant under Rule 7004(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9.      Pursuant to sections 11.1(b), (e), (j), (m), (p) and (s) of the Debtors' Plan and paragraph 70(d), (g), (l), (o), (r) and (u) of the Confirmation Order, this Court has jurisdiction over the causes of action set forth herein.

10.     This adversary proceeding is initiated under Bankruptcy Rule 7001.

**PARTIES**

11.     Upon the Effective Date (as defined herein) of the Debtors' Plan, Debtor Delta Petroleum Corporation ("Delta") emerged from chapter 11 as Par Petroleum, one of the Reorganized Debtors.

12.     Delta Petroleum Trust is a general recovery trust created for the benefit of the Reorganized Debtors in these Chapter 11 Cases.  Delta Petroleum Trust was formed to liquidate certain trust assets and object to, settle and/or compromise any disputed claims for the benefit of the Reorganized Debtors.

4

Sections 6.6 and 10.14 of the Debtors' Plan, together with paragraph 13 of the Confirmation Order, expressly create and authorize Delta Petroleum Trust to bring the causes of action set forth herein.

13.   Upon information and belief, Defendant BWAB Limited Liability Company is a private company with headquarters in Denver, Colorado.

## FACTUAL BACKGROUND

### A.   The Bankruptcy Cases

14.   Delta and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), each commenced on December 16, 2011 (the "Petition Date", except in the case of Castle Exploration Company, Inc., for which "Petition Date" shall mean January 6, 2012), a voluntary case under chapter 11 of the Bankruptcy Code.

15.   Throughout the pendency of the Chapter 11 Cases, the Debtors operated their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner was appointed in the Chapter 11 Cases.  A committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on June 15, 2012.

16.   On February 14, 2012, the Court entered the *Order (I) Establishing Bar Dates For Filing Proofs Of Claim, (II) Approving Proof Of Claim Form, Bar Date Notices And Mailing And Publication Procedures, (III) Implementing Uniform Procedures Regarding 503(B)(9) Claims, And (IV) Providing*

5

*Certain Supplemental Relief* (D.I. 303) (the "<u>Bar Date Order</u>").

17.     On February 14, 2012, the Debtors filed and served Defendant with the *Notice Of Deadline Of March 23, 2012 At 4:00 P.M. (ET) To File Proofs Of Claim For Prepetition Claims And 503(b)(9) Claims* (D.I. 313) (the "<u>Bar Date Notice</u>").  Further, publication notice of the Bar Date Notice was provided in the USA Today on February 21, 2012, as indicated in the *Certificate Of Publication Re: Notice Of Deadline Of March 23, 2012 At 4:00 P.M. To File Proofs Of Claim For Prepetition Claims And 503(B)(9) Claims* (D.I. 335) (the "<u>Bar Date Notice Certificate of Publication</u> ") filed on February 24, 2012.

18.     On July 6, 2012, the Debtors filed and served Defendant with the *Notice Of (I) Deadline For Casting Votes To Accept Or Reject The Joint Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and its Debtor Affiliates, (II) The Hearing To Consider Confirmation Of The Joint Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and its Debtor Affiliates, And (III) Certain Related Matters* (D.I. 697) (the "<u>Plan and Confirmation Hearing Notice</u>").

19.     On August 13, 2012, the Debtors filed and served Defendant with the Plan and *Amended Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and Its Debtor Affiliates* (D.I. 885).

20.     A hearing to consider confirmation of the Debtors' Plan (the "<u>Confirmation Hearing</u>") was held before this Court on August 15, 2012.

21.     On August 16, 2012, the Court entered the *Findings of Fact,*

6

*Conclusions of Law and Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* (D.I. 925) (the "Confirmation Order"), which confirmed the Debtors' Plan.

22.     On August 31, 2012 (the "Effective Date"), the Debtors satisfied all conditions under the Plan, which became effective, and all of the Debtors' assets vested either in a joint venture, in the Recovery Trusts (as defined under the Plan and which includes the Delta Petroleum Trust), or in the Reorganized Debtors free and clear of all claims and liens, as each term is defined in the Bankruptcy Code.

23.     On August 31, 2012, the Debtors filed and served Defendant with the *Notice Of (I) Effective Date of Third Amended Joint Chapter 11 Plan of Reorganization of Delta Petroleum Corporation and its Affiliated Debtors And (II) Bar Dates For Filing Certain Claims* (D.I. 947) (the "Effective Date Notice").

24.     Section 10.1 of the Plan provides for the vesting of all property of the Debtors' estates free and clear of any Liens, Claims and Equity Interests, as follows:

> ***Vesting of Assets***. Except as otherwise provided in this Plan, on the Effective Date all property comprising the Estates not otherwise vested in the Joint Venture Company or the Recovery Trusts shall revest in the Estate of the applicable Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests (other than as expressly provided herein).... On and after the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses, and to use, acquire or dispose of assets without supervision or approval by the Bankruptcy Court, and free from any restrictions of the Bankruptcy

7

Code or the Bankruptcy Rules.

25.     Further, in conjunction with the foregoing, paragraph 15 of the

Confirmation Order provides that:

>   ***Free and Clear.***  Except as otherwise provided in the Plan, on the
>   Effective Date all property comprising the Estates not otherwise vested
>   in the Joint Venture Company or the Recovery Trusts shall revest in the
>   Estate of the applicable Reorganized Debtor, free and clear of all Liens,
>   Claims and Equity Interests (other than as expressly provided in the
>   Plan).  Except as otherwise provided in the Plan, on the Effective Date
>   all property to be transferred to the Joint Venture Company shall be
>   transferred free and clear of all Liens, Claims and Equity Interests
>   (other than as expressly provided in the Plan).  On and after the
>   Effective Date, the Reorganized Debtors shall be authorized to operate
>   their respective businesses, and to use, acquire or dispose of assets
>   without supervision or approval by the Court, and free from any
>   restrictions of the Bankruptcy Code or the Bankruptcy Rules.  Except
>   as otherwise provided in the Plan, the Debtors, as the Reorganized
>   Debtors, shall continue to exist on and after the Effective Date as
>   separate Persons with all of the powers available to such Persons under
>   applicable law, without prejudice to any right to alter or terminate such
>   existence (whether by merger or otherwise) in accordance with such
>   applicable law.

26.     As defined under section 1.1 of the Plan, "***Claim*** has the

meaning set forth in section 101(5) of the Bankruptcy Code," and "***Lien*** has the

meaning set forth in section 101(37) of the Bankruptcy Code."

27.     Section 10.3 of the Plan provides for the binding effect of the

Plan, stating as follows:

>   ***Binding Effect.*** Except as otherwise provided in section 1141(d)(3) of
>   the Bankruptcy Code and subject to the occurrence of the Effective
>   Date, the provisions of this Plan shall bind any Holder of a Claim
>   against, or Equity Interest in, the Debtors and such Holder's respective
>   successors and assigns, whether or not the Claim or Equity Interest of

8

such Holder is impaired under this Plan and whether or not such Holder has accepted this Plan. The provisions of this Plan shall bind the respective Estates of the Debtors and any chapter 7 Trustee that might be appointed upon a subsequent conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

28.     Further, paragraph 19 of the Confirmation Order similarly provides that:

> ***Binding Effect.*** …On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, Reorganized Debtors, the Recovery Trustee, the Disbursement Agent, the Joint Venture Company, all Holders of Claims or Equity Interests in the Debtors and such Holders' respective successors and assigns (irrespective of whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan) all entities that are parties to or are subject to settlements, compromises, releases, discharges and injunctions described in the Plan or in this Confirmation Order, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any subsequent trustees appointed under any chapter of title 11 of the U.S. Code, any other party in interest in the Chapter 11 Cases and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing, and shall not be subject to rejection. All agreements, instruments and other documents filed in connection with the Plan or included in the Plan Supplements (as they may be amended or modified pursuant to the terms of the Plan) are hereby approved.

**B.     Oil And Gas Leases And Overriding Royalty Interests**

29.     <u>The 1999 Conveyances</u>.  The Debtors owned and/or operated natural gas and crude oil producing assets and held interests in leases (the "<u>Leases</u>") in certain lands that contain oil and gas producing wells.  Among those Leases were certain offshore oil and gas leases on the outer continental shelf of the United States, including interests in certain offshore California leases (the "<u>OCS Leases</u>") that

Delta acquired from Whiting Petroleum Corporation ("Whiting") in 1999.

        30.     When the Debtors acquired the OCS Leases from Whiting in 1999, the parties originally contemplated that Whiting would convey to Delta its interests in the OCS Leases, including without limitation, title (in other words, a conveyance of the real property rights). See Article 1 of the Purchase Agreement (as defined herein), which is attached hereto as Exhibit A. However, following execution of the Purchase Agreement (as defined herein), Whiting and Delta realized that Whiting might not be able to get the necessary consents and approvals to make such a real property conveyance, and as a result, on or about August 25, 1999, the parties entered into an amendment to the purchase agreement contemplating that Whiting would convey the economic equivalent of conveying real property title (among other things) to the OCS Leases by assigning a "net operating interest" to Delta in certain of the OCS Leases. This "net operating interest" was intended to be a derivative product to ensure that Delta received all of the same economic interests despite not being able to acquire the real property interest originally agreed to by the parties.

        31.     To that end, the relevant acquisition and conveyance agreements executed by Delta and Whiting reflect an ambiguity as to whether Delta acquired real or personal property interests. The Debtors acquired the OCS Leases from Whiting pursuant to: (i) the purchase and sale agreement, dated June 8, 1999, between Whiting, Whiting Programs, Inc. and Delta (the "Purchase Agreement"), a

10

copy of which is Exhibit A hereto; (ii) the amendment to the Purchase Agreement

(the "Amendment"), a copy of which is Exhibit B hereto, which was filed in a Form

8-K/A, dated August 25, 1999, with the United States Securities and Exchange

Commission, but the Amendment itself is dated *as of* June 8, 1999; and (iii) the

conveyance and assignment agreement, dated December 1, 1999, between Whiting,

Whiting Programs, Inc. and Delta (the "Conveyance Agreement," and together with

the Purchase Agreement and Amendment, the "Whiting Agreements"), a copy of

which is Exhibit C hereto.

      32.     Notably, the Conveyance Agreement, which was the last

Whiting Agreement executed, provided definitively that Whiting was to convey to

Delta a "net operating interest" (as defined therein) in certain of the OCS Leases.

      33.     Notwithstanding the issues described above, in connection

with the Debtors' acquisition of their interests in the OCS Leases, in December 1999

the Debtors executed an assignment to Defendant to create a non-operating

overriding royalty interest in a specified percentage of certain "oil and gas leases and

lands" and which burdened the oil, gas and other leased minerals produced, saved

and sold from or allocated to the lands covered by the OCS Leases, free and clear of

certain expenses (the "1999 BWAB ORRI").

      34.     To facilitate this assignment, Delta and Defendant executed an

assignment agreement, dated December 1, 1999, which provided that the 1999

BWAB ORRI was equal to three percent (3.0%) in certain of Delta's oil and gas

Leases (the OCS Leases), free and clear of all development, production and

operating expenses (the "1999 BWAB Assignment Agreement"), a copy of which is

Exhibit D hereto.  As such, the 1999 BWAB Assignment agreement purports to

convey to Defendant a true overriding royalty interest, which under California law is

a real property interest in the OCS Leases.  However, the actual nature of the 1999

BWAB ORRI – whether it is a real property interest or a personal property interest –

depends upon the extent of the interests conveyed to Delta by Whiting in 1999

because Delta could not convey to Defendant more than it owned.

        35.     The 1994 Conveyance.  Moreover, sections 1.2(a), 10.2, 11.2,

and 11.4 of the Purchase Agreement (as amended) and paragraphs (a), (e), and (g) of

the Conveyance Agreement provided that the conveyance to Delta was subject to

certain encumbrances and claims, including without limitation, the interests Whiting

allegedly conveyed to BWAB in 1994 (the "1994 BWAB Interest").

        36.     More specifically, Whiting conveyed the 1994 BWAB Interest

to BWAB pursuant to an assignment agreement, dated December 16, 1994, between

Whiting and BWAB (the "1994 Assignment Agreement"), a copy of which is

Exhibit E hereto.  The 1994 Assignment Agreement provides that the 1994 BWAB

Interest equals an "overriding royalty consisting of an undivided Three and One-Half

Percent (3.5%) interest in *Whiting's Net Revenue Interest* from the Subject

Properties."  "Net Revenue," a defined term in section 1 of the 1994 Assignment

Agreement, is determined by a formula for calculating net proceeds related to cash

flows associated with the sale of oil, gas and other minerals extracted from the OCS

Leases.  Notwithstanding the use of the term "overriding royalty," the plain language

of the 1994 Assignment Agreement only granted BWAB a contractual right to

payment (or, more specifically, an interest in net proceeds).  Notably, the 1994

Assignment Agreement did not assign to Defendant rights in the affected leases and

lands, oil, gas and other leased minerals produced, saved and sold from the OCS

Leases.  In other words, BWAB was not granted any real property interests in 1994

and, therefore, did not acquire an overriding royalty interest in 1994.

       37.    Moreover, the formulation of the monthly payment obligations

due and payable to Defendant under each of the 1994 Assignment Agreement and

the 1999 BWAB Assignment Agreement differed.  Following Whiting's sale to the

Debtors of the OCS Leases, which were subject to the 1994 BWAB Interest, and the

Debtors' conveyance to Defendant of the 1999 BWAB ORRI, the Debtors

mistakenly lumped together the percentages related to each of the 1994 and 1999

interests to calculate the amounts payable, in the aggregate, to Defendant.

Accordingly, each payment made by the Debtors to Defendant included a payment

on account of the 1994 Assignment Agreement (the "1994 Payments") and the 1999

BWAB ORRI (the "1999 Payments," and together with the 1994 Payments, the

"BWAB Payments").  However, the Debtors mistakenly applied the 1999 payment

formula to both the 1994 and 1999 interests (when they should have applied two

different formulas).  As a result, the 1994 Payments were improperly calculated.

Due to this mistake, the Debtors over-paid Defendant on account of the 1994 BWAB Interest (the "Excess Payments").

38.    Subsequent to the Petition Date, the Debtors continued to remit the BWAB Payments (including the Excess Payments) to Defendant (the "Post-Petition Payments"). Following emergence from chapter 11, the Reorganized Debtors suspended the Post-Petition Payments made to Defendant, pending a final judgment in this adversary proceeding. The Plaintiffs should not have made the Post-Petition Payments and, therefore, are seeking to disgorge those funds.

39.    By this action, Plaintiffs seek to: avoid and recover any interest related to the 1999 BWAB ORRI, to the extent the 1999 BWAB ORRI is a real property interest; disallow, expunge and discharge any claims and rights Defendant may have to the OCS Leases, including those relating to the 1994 BWAB Interest, the 1994 Assignment Agreement, the 1999 BWAB ORRI and the 1999 BWAB Assignment Agreement; recover any and all Post-Petition Payments and Excess Payments; and enforce the Chapter 11 Plan Injunction.

## CAUSES OF ACTION

### COUNT I

**(Avoidance And Recovery Of The 1999 BWAB ORRI Under Sections 544(a)(3) And 550 Of The Bankruptcy Code)**

40.    Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

41.    Section 544(a)(3) of the Bankruptcy Code provides that:

14

(a) [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by … (3) a bona fide purchaser of real property, other than fixture, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser of real property and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

42.     Further, Section 550(a) of the Bankruptcy Code provides, in part, that:

to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

43.     To the extent that the 1999 BWAB ORRI is a true overriding royalty interest, then under applicable state law, the 1999 BWAB ORRI is a real property interest.  Defendant obtained the 1999 BWAB ORRI on account of a prepetition transfer by a Debtor.

44.     Further, the appropriate county recording office for purposes of providing potential bona fide purchasers with notice of the 1999 BWAB ORRI is Santa Barbara County, California.

45.     The 1999 BWAB ORRI was not recorded in the Santa Barbara County's recording office prior to the Petition Date.

46.     By reason of these failures, the 1999 BWAB ORRI, to the

extent it is in fact a real property interest, is voidable by Plaintiffs, as a hypothetical

bona fide purchaser of real property as of the Petition Date.

        47.     Accordingly, to the extent the 1999 BWAB ORRI is in fact a

real property interest, Plaintiffs are entitled to a judgment, pursuant to sections

544(a)(3) and 550 of the Bankruptcy Code and applicable state law, against

Defendant, declaring that the 1999 BWAB ORRI was avoided and recovered as of

the Petition Date.

### COUNT II

**(Declaration That The 1999 BWAB ORRI, The 1999 BWAB Assignment
Agreement, The 1994 BWAB Interest, The 1994 Assignment Agreement And
Any Rights Arising Thereunder Were Discharged, Thus Stripped from the
Underlying OCS Leases Held By The Debtors And, Therefore, The 1999 BWAB
ORRI, The 1999 BWAB Assignment Agreement, The 1994 BWAB Interest, The
1994 Assignment Agreement And Any Rights Arising Thereunder Are Not
Enforceable Against The Reorganized Debtors Upon Consummation Of The
Plan Confirmed Under Bankruptcy Code Section 1141)**

        48.     Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

        49.     Section 1141(a) of the Bankruptcy Code provides, in part,

that:

> the provisions of a confirmed plan bind the debtor, any entity issuing
> securities under the plan, any entity acquiring property under the plan,
> and any creditor, equity security holder, or general partner in the
> debtor, whether or not the claim or interest of such creditor, equity
> security holder, or general partner is impaired under the plan and
> whether or not such creditor, equity security holder, or general partner
> has accepted the plan.

        50.     Further, section 1141(b) of the Bankruptcy Code provides

that, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the

confirmation of a plan vests all property of the estate in the debtor."  Finally, section

1141(c) of the Bankruptcy Code provides, in part, that, "except as otherwise

provided in the plan or in the order confirming the plan, after confirmation of a plan,

the property dealt with by the plan is free and clear of all claims and interests of

creditors, equity security holders, and of general partners in the debtor."

       51.    Section 10.5 of the Plan, together with paragraph 45 of the

Confirmation Order (which provides for substantially similar discharge terms),

provides that:

> ***Discharge of the Debtors.***  Except to the extent otherwise provided in
> this Plan or the Confirmation Order, the treatment of all Claims
> against or Equity Interests in the Debtors under this Plan shall be in
> exchange for and in complete satisfaction, discharge and release of,
> all Claims against or Equity Interests in the Debtors of any nature
> whatsoever, known or unknown, including any interest accrued or
> expenses incurred thereon from and after the Petition Date, or against
> their Estates or properties or interests in property.  Except as
> otherwise provided in this Plan or the Confirmation Order, upon the
> Effective Date, all Claims against and Equity Interests in the Debtors
> shall be satisfied, discharged and released in full exchange for the
> consideration provided under this Plan.  Except as otherwise provided
> in this Plan or the Confirmation Order or under the terms of the
> documents evidencing the Exit Loan, all Persons shall be precluded
> from asserting, against the Debtors, the Reorganized Debtors, or their
> respective properties or interests in property, any other Claims based
> upon any act or omission, transaction or other activity of any kind or
> nature that occurred prior to the Effective Date.  In accordance with
> the foregoing, except as provided in this Plan or the Confirmation
> Order, the Confirmation Order shall constitute a judicial
> determination, as of the Effective Date, of the discharge of all such
> Claims and other debts and liabilities of the Debtors, pursuant to
> sections 524 and 1141 of the Bankruptcy Code, and such discharge

17

shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent such judgment is related to a discharged Claim.

52.    Further, Section 10.10(a) of the Plan, together with paragraph 53 of the Confirmation Order (which provides for substantially similar injunction terms), provides that:

> ***Term of Injunctions or Stays.*** Except as otherwise expressly provided herein, and except with respect to enforcement of this Plan, all Persons who have held, hold or may hold any Claim against, or Equity Interest in, the Debtors as of the Effective Date will be permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind in any forum with respect to such Claim or Equity Interest against the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or their property, (ii) the enforcement, attachment, collection or recovery in any manner or by any means any judgment, award, decree or order against the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or their respective property with respect to such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or other encumbrance of any kind against the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or against any property or interests in property of the Reorganized Debtors with respect to any such Claim or Equity Interest, (iv) asserting a right of setoff, subrogation or recoupment of any kind against any obligation due from the Reorganized Debtors, the Joint Venture Company, the Recovery Trusts, or against any property or interests in property of the Reorganized Debtors, the Joint Venture Company or the Recovery Trusts with respect to such Claim or Equity Interest, (v) commencing or continuing any action, in any forum, that does not comply or is inconsistent with the provisions of this Plan and (vi) pursuing any such Claim released pursuant to Section 10.5, 10.6, 10.7 or 10.8 hereof. For the avoidance of doubt, nothing in this Section shall be deemed to affect or waive any potential defenses that any defendant to a Cause of Action or Wapiti Cause of Action has asserted or could assert against the Debtors or the Recovery Trustee, as the case may be, in any resulting litigation, or the rights of the Debtors to object to such potential defenses asserted

18

by such defendants therein.  The right of any defendant to a Wapiti
Cause of Action or Cause of Action (except as provided in Section
10.7 herein with respect to the ZCOF Parties) to assert defenses, at
law and in equity, and to defend against actions is preserved to the
extent allowed under applicable law.

53.     Defendant was served with the Bar Date Notice, Plan and

Confirmation Hearing Notice and the Effective Date Notice, as well as other notices

filed by the Debtors that put Defendant on notice of the Chapter 11 Cases and

confirmation of the Debtors' Plan.

54.     Under the express terms of the Plan, the effectiveness of the

Plan vested all property of the estates in a joint venture described under the Plan, the

Recovery Trusts (as defined under the Plan and which includes the Delta Petroleum

Trust), or in the Reorganized Debtors free and clear of all Liens, Claims, and Equity

Interests (subject to certain enumerated exceptions and exclusions not applicable

here), including free and clear of the 1999 BWAB ORRI, the 1999 BWAB

Assignment Agreement (and any claims arising thereunder), the 1994 BWAB

Interest and the 1994 Assignment Agreement (and any claims arising thereunder).

The OCS Leases vested in the Reorganized Debtors pursuant to (*inter alia*) sections

6.2(b) and 10.1 of the Plan.

55.     Accordingly, Plaintiffs are entitled to a judgment, pursuant to

section 1141 of the Bankruptcy Code and the express provisions of the Plan and

Confirmation Order, against Defendant declaring that: (i) the Reorganized Debtors'

confirmed Plan is binding on Defendant; (ii) upon confirmation of the Plan, the OCS

Leases (among other assets the Debtors' estates) vested in the Reorganized Debtors

free and clear of any Liens, Claims, and Equity Interests (subject to certain

enumerated exceptions and exclusions not applicable here), including free and clear

of the 1999 BWAB ORRI, the 1999 BWAB Assignment Agreement (and any

interests, rights and claims arising thereunder), the 1994 BWAB Interest and the

1994 Assignment Agreement (and any interests, rights and claims arising

thereunder); and (iii) the 1999 BWAB ORRI, the 1999 BWAB Assignment

Agreement (and any rights arising thereunder), the 1994 BWAB Interest and the

1994 Assignment Agreement (and any rights arising thereunder) are not enforceable

against the Reorganized Debtors as of the Effective Date of the Plan.

## COUNT III

**(Declaration That Defendant's Claims Against The Debtors' Estates For
Payments Under The 1999 BWAB ORRI, The 1999 BWAB Assignment
Agreement, The 1994 BWAB Interest And The 1994 Assignment Agreement
Were Disallowed, Expunged And Discharged Upon Confirmation And
Consummation Of The Plan By Virtue Of Failure To File A Proof Claim And
The Plan Discharge Pursuant To Bankruptcy Code Section 1141)**

56.     Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

57.     The Bar Date Order established that (*inter alia*): (i) the last

date and time for filing proofs of claim against the Debtors for any and all prepetition

claims was March 23, 2012 at 4:00 p.m. (E.T.) (the "Bar Date"); and (ii) any entity

who fails to file a proof of claim on or before the Bar Date will be forever barred,

estopped and enjoined from asserting such claim (or filing a proof of claim) against

20

the Debtors.

58.    Defendant failed to file a proof of claim.

59.    Paragraph 19 of the Bar Date Order provides, in part, that:

*Effect of Failure to File by Applicable Bar Date*.  Any entity that is required pursuant to this Order to file a proof of claim for a Prepetition Claim and/or a 503(b)(9) Claim in these chapter 11 cases pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against a Debtor, but that fails to do so on or by an applicable Bar Date, is forever barred, estopped and enjoined from: asserting any Prepetition Claim and/or 503(b)(9) Claim against any of the Debtors (or filing a proof of claim for a Prepetition Claim and/or 503(b)(9) Claim with respect thereto), and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Prepetition Claim or 503(b)(9) Claim.

60.    Further, the Debtors' Schedules and Statements, filed with the Court and dated January 6, 2012, listed Defendant as a creditor holding an unliquidated claim.  Under Bankruptcy Rule 3003(c)(2), any creditor whose claim or interest  is scheduled as disputed, contingent, or unliquidated and who fails to timely file a proof of claim (as prescribed under Bankruptcy Rule 3003(c)(3)), shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

61.    Accordingly, Plaintiffs are entitled to a judgment, pursuant to the Bar Date Order, Plan and Confirmation Order, against Defendant declaring that: (i) the Bar Date Order and the confirmed Plan are binding on Defendant; (ii) any and all of Defendant's claims against the Debtors related to the 1999 BWAB ORRI, the

1999 BWAB Assignment Agreement, the 1994 BWAB Interest, and the 1994

Assignment Agreement are barred; (iii) Defendant is permanently barred, estopped

and enjoined from pursuing any such claims against the Debtors or the Reorganized

Debtors and their property (including any claims relating to the 1999 BWAB ORRI,

the 1999 BWAB Assignment Agreement, the 1994 BWAB Interest, and the 1994

Assignment Agreement); (iv) any and all claims Defendant may have against the

Debtors' estates, including claims for payment under the 1999 BWAB ORRI, the

1999 BWAB Assignment Agreement (and any other claims arising thereunder), the

1994 BWAB Interest and the 1994 Assignment Agreement (and any other claims

arising thereunder), are discharged as of the Effective Date; and (v) accordingly, any

claims against the Debtors, the Reorganized Debtors, the joint venture described

under the Plan and the Delta Petroleum Trust related to or arising under the 1999

BWAB ORRI, the 1999 BWAB Assignment Agreement, the 1994 BWAB Interest

and the 1994 Assignment Agreement are disallowed, expunged and discharged as of

the Effective Date of the Plan.

**COUNT IV**
**(Unjust Enrichment And Clawback Of Excess Payments And The Post-Petition**
**Payments Relating To The 1999 BWAB ORRI)**

62.    Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

63.    Under applicable state law, where a defendant receives a

benefit at the plaintiff's expense under circumstances in which it would be unjust for

22

the defendant to retain such benefit, unjust enrichment requires that the defendant

return the benefit to the plaintiff or compensate the plaintiff for its loss.

64.    To the extent that the 1999 BWAB ORRI is a real property

interest, then on account of the avoidance of the 1999 BWAB ORRI as of the

commencement of the Chapter 11 Cases, Defendant was not entitled to receive, and

the Debtors were not obligated to make, the Post-Petition Payments relating to the

1999 BWAB ORRI.

65.    From the Petition Date to the Effective Date, the Debtors Post-

Petition Payments to Defendant (on account of the 1999 BWAB ORRI and the 1994

BWAB Interest) totaled $507,980.42 in the aggregate.  In connection with the Post-

Petition Payments made on account of the 1999 BWAB ORRI, the Debtors' estates

received no benefit.

66.    Moreover, as a result of the Debtors' mistakenly calculating

the amount payable on account of the 1994 BWAB Interest, Defendant received

Excess Payments that Defendant was not entitled to receive and the Debtors were not

obligated to make.

67.    The Debtors' estates received no benefit in connection with

the Excess Payments.

68.    Accordingly, pursuant to applicable state law, Plaintiffs are

entitled to a judgment against Defendant declaring that Defendant was unjustly

enriched to the extent of the Post-Petition Payments relating to the 1999 BWAB

ORRI and to the extent of the prepetition and postpetition Excess Payments, and

ordering the immediate return of such funds plus interest, or awarding compensatory

damages, to Plaintiffs.

### COUNT V
### (Post-Petition Fraudulent Transfers Under State Law)

69.     Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

70.     Under applicable state law, a transfer is deemed fraudulent

where a debtor makes a transfer or incurs an obligation to a third party without

receiving a reasonably equivalent value in exchange for such transfer or obligation

and the debtor was insolvent at that time or became insolvent as a result of such

transfer or obligation.

71.     Here, from the Petition Date to the Effective Date, the Debtors

made Post-Petition Payments (which included Excess Payments) to Defendant (on

account of the 1999 BWAB ORRI and the 1994 BWAB Interest) that totaled

$507,980.42 in the aggregate.  On account of the avoidance of the 1999 BWAB

ORRI as of the commencement of the Chapter 11 Cases, the Debtors were not

obligated to make the Post-Petition Payments related thereto and did not receive a

reasonably equivalent value in exchange for such Post-Petition Payments.  Further,

the Debtors were insolvent at the time of such transfers.

72.     Accordingly, pursuant to applicable state law, Plaintiffs are

24

entitled to a judgment against Defendant declaring that the Post-Petition Payments (which included Excess Payments) constituted fraudulent transfers and ordering the immediate return of such funds plus interest, or awarding compensatory damages, to Plaintiffs.

**COUNT VI**

**(Avoidance and Recovery Of Post-Petition Payments Relating To The 1994 BWAB Interest And 1999 BWAB ORRI Under Sections 549 And 550 Of The Bankruptcy Code)**

73.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

74.     Section 549 of the Bankruptcy Code provides, in part, that:

(a) …the trustee may avoid a transfer of property of the estate – (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.

75.     The Debtors made payments to Defendant during the pendency of the Chapter 11 Cases in connection with the 1994 BWAB Interest. Immediately upon the commencement of the Debtors' Chapter 11 Cases, such payments should have ceased.  Such payments were not authorized by this Court.

76.     Moreover, the Debtors made payments to Defendant during the pendency of the Chapter 11 Cases in connection with the 1999 BWAB ORRI. To the extent that the Debtors conveyed to Defendant personal property interests in the OCS Leases in 1999, the Post-Petition Payments relating to the 1999 BWAB ORRI should have ceased immediately upon the commencement of the Debtors'

Chapter 11 Cases and were not authorized by this Court.

77.     Accordingly, Plaintiffs are entitled to a judgment, pursuant to sections 549 and 550 of the Bankruptcy Code, against Defendant, avoiding and recovering the Post-Petition Payments relating to the 1994 BWAB Interest and the 1999 BWAB ORRI plus interest or awarding Plaintiffs compensatory damages therefor.

**COUNT VII**

**(Breach Of Contract Relating To The 1994 Assignment Agreement)**

78.     Plaintiffs hereby repeat and reallege each of the above paragraphs as though fully set forth here.

79.     Plaintiffs and Defendant allegedly had rights and obligations relating to a contract – the 1994 Assignment Agreement – which entitled Defendant to payments on account of the 1994 BWAB Interest that are based on a particular formula.

80.     Due to the Debtors' mistakenly calculating the amount payable on account of the 1994 BWAB Interest, upon information and belief, the Debtors paid and Defendant received Excess Payments that Defendant was not entitled to receive and the Debtors were not obligated to make.

81.     As a result, Defendant has wrongfully retained the Excess Payments.

82.     Accordingly, Plaintiffs are entitled to a judgment against

Defendant declaring that Defendant's wrongful retention of the Excess Payments

constituted breaches of contract and ordering the immediate return of such funds plus

interest, or awarding compensatory damages, to Plaintiffs..

## COUNT VIII
### (Turnover Of The Post-Petition Payments Under Section 542(a) Of The Bankruptcy Code)

83.     Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

84.     Section 542(a) of the Bankruptcy Code provides, in part, that:

(a) …an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

85.     The Post-Petition Payments constitute property of the Debtors'

estates to be recovered by and on behalf of the Reorganized Debtors.

86.     Accordingly, Plaintiffs are entitled to a judgment, pursuant to

sections 542(a) of the Bankruptcy Code, against Defendant, ordering the immediate

payment and turnover of any and all Post-Petition Payments plus interest or

awarding Plaintiffs compensatory damages therefor.

## COUNT IX
### (Enforcement Of Debtors' Chapter 11 Plan Injunction)

87.     Plaintiffs hereby repeat and reallege each of the above

paragraphs as though fully set forth here.

27

88.     As set forth herein, the express provisions of the Debtors' Plan and Confirmation Order provide that certain of the Debtors' assets, including the assets at issue here, vested in the Reorganized Debtors free and clear of all claims and liens, as each term is defined in the Bankruptcy Code.

89.     Further, the express provisions of section 10.3 of the Plan and paragraph 19 of the Confirmation Order provide for the binding effect of the Plan.

90.     Moreover, section 10.10(a) of the Plan and paragraph 45 of the Confirmation Order (as set forth herein), provide that under the Chapter 11 Plan Injunction all persons, including, without limitation, Defendant, who held any claim against the Debtors as of the Effective Date, are permanently enjoined, from and after the Effective Date, from (*inter alia*) commencing or continuing in any manner any action or other proceeding with respect to such claims against the Reorganized Debtors, the joint venture described under the Plan, the Recovery Trusts (as defined under the Plan and which includes the Delta Petroleum Trust) or their respective property.

91.     Accordingly, Plaintiffs are entitled to a judgment, pursuant to the express provisions of the Plan and Confirmation Order, permanently enforcing the Chapter 11 Plan Injunction against Defendant.

WHEREFORE, Plaintiffs respectfully request the Court enter a judgment against Defendant:

(a)     avoiding and recovering the 1999 BWAB ORRI as of

28

the commencement of the Chapter 11 Cases;

        (b)    declaring that the 1999 BWAB ORRI, the 1999 BWAB Assignment Agreement (and any interests, rights and claims arising thereunder), the 1994 BWAB Interest and the 1994 Assignment Agreement (and any interests, rights and claims arising thereunder) were discharged and thus stripped from the Debtor's OCS Leases on the Effective Date of the Plan and, therefore, the 1999 BWAB ORRI, the 1999 BWAB Assignment Agreement (and any rights arising thereunder), the 1994 BWAB Interest and the 1994 Assignment Agreement (and any rights arising thereunder) are not enforceable against the Reorganized Debtors as of the Effective Date of the Plan;

        (c)    declaring Defendant's claims, relating to the 1999 BWAB ORRI and the 1994 BWAB Interest, against the Debtors' estates were barred and discharged as of the Effective Date and that Defendant is permanently enjoined from pursuing such claims against the Reorganized Debtors;

        (d)    declaring that Defendant's rights related to the 1999 BWAB ORRI, the 1999 BWAB Assignment Agreement (and any other claims arising thereunder), the 1994 BWAB Interest and the 1994 Assignment Agreement (and any other claims arising thereunder) as against the Debtors, the Reorganized Debtors, the joint venture described under the Plan and the Delta Petroleum Trust are disallowed, expunged and discharged as of the Effective Date of the Plan.

        (e)    recovering, for the benefit of Plaintiffs, the Post-Petition

29

Payments made on account of the 1999 BWAB ORRI and the 1994 BWAB Interest plus interest or awarding Plaintiffs compensatory damages therefor;

      (f)    recovering, for the benefit of Plaintiffs, the Excess Payments plus interest or awarding Plaintiffs compensatory damages therefor;

      (g)    ordering the immediate payment and turnover of any and all Post-Petition Payments plus interest or awarding Plaintiffs compensatory damages therefor;

      (h)    enforcing the Chapter 11 Plan Injunction against Defendant; and

      (i)    granting such other and further relief, including costs, expenses and attorneys' fees, as the Court deems just and proper.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated:      January 4, 2013
            Wilmington, Delaware


            /s/ Anthony W. Clark
            Anthony W. Clark (I.D. No. 2051)
            Kristhy M. Peguero (I.D. No. 4903)
            Skadden, Arps, Slate, Meagher & Flom LLP
            One Rodney Square
            P.O. Box 636
            Wilmington, Delaware 19899-0636
            (302) 651-3000

            and

            Ron Meisler
            Ebba Gebisa
            Skadden, Arps, Slate, Meagher & Flom LLP
            155 North Wacker Drive
            Chicago, Illinois 60606-1720
            (312) 407-0700

            *Counsel for Delta Petroleum General Recovery Trust and
            Par Petroleum Corporation*

31