**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                      :          Chapter 11
                                                            :
DELTA PETROLEUM CORPORATION, :          Case No. 11-14006 (KJC)
et al.,                                                     :
                                                            :          Jointly Administered
                                         Debtors.           :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DELTA PETROLEUM GENERAL                      :
RECOVERY TRUST                                        :
and                                                         :
PAR PETROLEUM CORPORATION,          :
                                                            :
                                         Plaintiffs,        :          Adv. Pro. No. 12-50898 (KJC)
                                                            :
        v.                                                  :
                                                            :
BWAB LIMITED LIABILITY                       :
COMPANY,                                                :
                                                            :
                                         Defendant.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

SKADDEN, ARPS, SLATE,                              SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP                                  MEAGHER & FLOM LLP

Anthony W. Clark (I.D. No. 2051)                   Ron Meisler
Kristhy M. Peguero (I.D. No. 4903)                 Ebba Gebisa
One Rodney Square                                  155 North Wacker Drive
P.O. Box 636                                       Chicago, Illinois 60606-1720
Wilmington, Delaware 19899-0636                    (312) 407-0700
(302) 651-3000


Dated: Wilmington, Delaware                        *Counsel for Plaintiffs Delta Petroleum*
        February 12, 2013                          *General Recovery Trust and Par Petroleum*
                                                   *Corporation*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 3

SUMMARY OF ARGUMENT ........................................................................................ 4

STATEMENT OF FACTS ............................................................................................... 6

ARGUMENT ................................................................................................................. 10

    I.       STANDARDS FOR SUMMARY JUDGMENT ..................................... 10

    II.      BWAB'S INTERESTS HAVE BEEN EXTINGUISHED. ....................... 11

            A.      BWAB's Interests Are Prepetition Unsecured Personal
                  Property Claims That Were Released And Discharged
                  Under The Plan And Are No Longer Enforceable ........................ 11

            B.      If BWAB's Interest Under The 1999 Agreement Was A
                  Real Property Interest, It Is Avoidable And Recoverable By
                  The Reorganized Debtors Under The Bankruptcy Code. .............. 14

    III.     THE EXCESS PAYMENTS TO BWAB SHOULD BE
            DISGORGED. ........................................................................................ 19

            A.      The Prepetition Excess Payments To BWAB Should Be
                  Disgorged. ..................................................................................... 19

            B.      The Post-Petition Excess Payments To BWAB Should Be
                  Disgorged. ..................................................................................... 20

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abercrombie v. Hayden Corp. (In re Abercrombie)*,
  139 F.3d 755 (9th Cir. Wash. 1998) .............................................................12

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................................................10

*Apache Corp. v. W & T Offshore, Inc.*,
  626 F.3d 789 (5th Cir. 2010) ....................................................................12, 16

*Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines)*,
  96 F.3d 687 (3d Cir. 1996) ............................................................................13

*Broadway Advisors, LLC v. Hipro Electronics, Inc. (In re Gruppo Antico, Inc.)*,
  359 B.R. 578 (Bankr. D. Del. 2007) ...............................................................10

*In re Cascade Oil Co.*,
  65 B.R. 35 (Bankr. D. Kan. 1986) ..................................................................18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................10

*Chase Manhattan Bank v. Iridium Africa Corp.*,
  307 F. Supp. 2d 608 (D. Del. 2004)................................................................10

*ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*,
  335 B.R. 580 (Bankr. D. Del. 2005) ...............................................................22

*Ferguson v. Coronado Oil Co.*,
  884 P. 2d 971 (Wyo. 1994).............................................................................12

*Foothills Texas, Inc. v. MTGLQ Investors, L.P. (In re Foothills Texas, Inc.)*,
  No. 09-10452, 2012 Bankr. LEXIS 3322 (Bankr. D. Del. 2012) ..................11

*Garfield v. True Oil Co.*,
  667 F.2d 942 (10th Cir. 1982) ........................................................................12

*In re Grand Union Co.*,
  204 B.R. 864 (Bankr. D. Del. 1997) ...............................................................13

*Grover v. Exxon Corp.*,
  894 F. Supp. 291 (S.D. Tex. 1995)..................................................................16

*Grynberg v. Waltman*,
  946 P. 2d 473 (Colo. App. 1996).....................................................................11

ii

*Honolulu Oil Corp. v. Kennedy*,
  251 F.2d 424 (9th Cir. 1957) ........................................................................17

*Industrial Enterprises of America v. Tabor Academy (In re Pitt Penn Holding Co.)*,
  2011 Bankr. LEXIS 3554 (Bankr. D. Del. Sept. 16, 2011) ...........................................18

*In re Jason Realty, L.P.*,
  59 F.3d 423 (3d Cir. 1995) ...........................................................................16

*L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*,
  209 F.3d 291 (3d Cir. Del. 2000)......................................................................23

*LA Laguna Ranch Co. v. Dodge*,
  18 Cal. 2d 132 (Cal. 1941)...........................................................................17

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..................................................................................10

*Missouri Breaks, LLC v. Burns*,
  791 N.W. 2d 33 (N.D. 2010) ..........................................................................14

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ...........................................................................20

*Peltz v. Worldnet Corp. (In re USN Communications, Inc.)*,
  280 B.R. 573 (Bankr. D. Del. 2002) ..................................................................14

*Rodrigue v. Aetna Casualty & Surety Co.*,
  395 U.S. 352 (1969)..................................................................................16

*Showalter v. University of Pittsburgh Medical Center*,
  190 F.3d 231 (3d Cir. 1999) .........................................................................10

*Shubert v. Premier Paper Products, LLC (In re American Tissue, Inc.)*,
  No. 01-10370 (KG), 2007 Bankr. LEXIS 4004 (Bankr. D. Del.
  Nov. 20, 2007) ......................................................................................23

*In re Sosnowski*,
  314 B.R. 23 (Bankr. D. Del. 2004) ...................................................................15

*Sportsman's Warehouse, Inc. v. McGillis/Eckman Investments-Billings, LLC (In re
  Sportsman's Warehouse, Inc.)*,
  457 B.R. 372 (Bankr. D. Del. 2011) ..................................................................22

*Suhar v. Burns (In re Burns)*,
  322 F.3d 421 (6th Cir. 2003) ........................................................................15

*Taxel v. Chase Manhattan Bank, U.S.A, N.A. (In re Deuel)*,
    361 B.R. 509 (B.A.P. 9th Cir. 2006) ...................................................................18

*In re Tleel*,
    79 B.R. 883 (B.A.P. 9th Cir. 1987) .......................................................17, 18

*U-Tex Oil Co. v. Pauley*,
    209 Cal. App. 2d 88 (Cal. App. 1962) .........................................................17

*World Hospitality Ltd. v. Shell Offshore, Inc.*,
    699 F.Supp. 111 (S.D. Tex. 1988) ...............................................................16

*In re Worldwide Direct, Inc.*,
    280 B.R. 819 (Bankr. D. Del. 2002) .............................................................14

## STATUTES AND RULES

11 U.S.C. § 363...........................................................................................23

11 U.S.C. § 542(a) .......................................................................................23

11 U.S.C. § 544(a) .......................................................................................15

11 U.S.C. § 544(a)(3)...............................................................15, 18, 21, 22, 23

11 U.S.C. § 549(a) ................................................................................21, 22

11 U.S.C. § 550...........................................................................................15

11 U.S.C. § 550(a) ..............................................................................15, 18, 22

11 U.S.C. § 1141 .........................................................................................14

11 U.S.C. § 1141(b) .....................................................................................13

11 U.S.C. § 1141(c) .....................................................................................13

43 U.S.C. § 1331 et seq................................................................................16

43 U.S.C. § 1333(a)(2)(A) ...........................................................................16

Cal. Civ. Code § 1169 (2012) ......................................................................17

Cal. Civ. Code § 1213 (2012) ......................................................................17

Cal. Civ. Code § 1214 (2012) ......................................................................17

Cal. Civ. Code § 1217 (2012) ......................................................................17

iv

Del. Code Ann. tit. 6 § 1301 ............................................................................................21

Del. Code Ann. tit. 6. § 1302(a)......................................................................................21

Del. Code Ann. tit. 6 § 1302(b) .......................................................................................21

Del. Code Ann. tit. 6 § 1303(a)........................................................................................21

Del. Code Ann. tit. 6 § 1305 ............................................................................................21

Fed. R. Bankr. P. 7056.....................................................................................................10

Fed. R. Civ. P. 56(a) ........................................................................................................10

Fed. R. Civ. P. 56(e) ........................................................................................................10

Plaintiffs Delta Petroleum General Recovery Trust (the "Trust") and Par Petroleum Corporation ("Par," and with the Trust, "Plaintiffs") submit this opening brief in support of their motion for summary judgment against defendant BWAB Limited Liability Company ("BWAB").

## PRELIMINARY STATEMENT

BWAB received substantial post-petition payments from Delta Petroleum Corporation ("Delta") and its affiliates (collectively, the "Debtors"), and claims a right to future payments from the Reorganized Debtors (defined below), on account of two so-called overriding royalty interests ("ORRIs"), created in 1994 and 1999, in four oil and gas leases located off the coast of Santa Barbara, California (the "Leases").[1]  The Debtors acquired their interests in the Leases, which are now owned by the Reorganized Debtors, from Whiting Petroleum Corporation ("Whiting") in 1999.  Plaintiffs contend that, as a result of the Debtors' bankruptcy proceedings, BWAB's interests, and the Debtors' and Reorganized Debtors' corresponding obligations, have been extinguished.

While ORRIs commonly are understood to be real property interests, the interest BWAB obtained from Whiting in 1994 was not.  Rather, the language of that contract makes clear that what BWAB got was simply a personal property right to share in payments received by Whiting (and Delta, as its successor) on account of the Leases – in effect, BWAB had a participation right in receivables collected by Whiting as the Lease owner.  Thus, BWAB's 1994 interest was merely a prepetition unsecured claim as to which it was not entitled to receive any post-petition payments and which was

---

[1]     Only two of the Leases (the so-called Point Arguello leases), which continue to produce and provide revenues, are relevant.  The other two (the so-called Rocky Point leases) were relinquished by the Debtors several years ago and are of no further consequence to the parties.

discharged when the Debtors' reorganization plan (the "Plan") was confirmed and consummated.  Moreover, it is undisputed that BWAB failed to file a proof of claim and, therefore, has no right to distributions under the Plan.

As for the interest BWAB obtained from Delta after Delta acquired its interests from Whiting in 1999, that was not a true ORRI either.  The language of that contract did indicate an intent to transfer a real property interest to BWAB, but Delta itself only held, and therefore could only transfer, an unsecured personal property interest in the Leases.  If the 1999 ORRI, like the 1994 ORRI, gave BWAB only a personal property right to payment, the same analysis as with the 1994 interest applies – the 1999 interest was discharged under the Plan, and BWAB is not entitled to retain the post-petition payments it received on account of its unsecured prepetition claim.  If, however, the 1999 ORRI is held to be a real property interest, under sections 544(a)(3) and 550 of the Bankruptcy Code, that interest may be avoided by the Debtors (and the Plaintiffs, as successors in interest) as of the commencement of the bankruptcy cases, because BWAB admittedly failed to properly perfect and record its interest in the Leases.

Lastly, because BWAB had no right to the substantial post-petition payments it received from the Debtors, these funds (plus interest) must be returned to the estates.  The undisputed facts also show that, since 1999, due to an error by the Debtors, BWAB received more than one million dollars in prepetition payments on account of its 1994 ORRI to which it was not entitled.  Therefore, Plaintiffs also are entitled to summary judgment requiring BWAB to reimburse the estates for these overpayments.

## NATURE AND STAGE OF THE PROCEEDINGS

The Debtors (except for one) commenced their chapter 11 cases on December 16, 2011 (the "Petition Date").[2]  On August 16, 2012, the Court entered an order confirming the Debtors' Plan (the "Confirmation Order"), which became effective on August 31, 2012 (the "Effective Date").  (D.I. 925, 947)

On September 25, 2012, the Trust, on behalf of itself and Par and its affiliates (the "Reorganized Debtors"), filed the initial adversary complaint against BWAB.  (Adv. D.I. 1)  On October 25, 2012, BWAB answered and asserted affirmative defenses.  (Adv. D.I. 5)  On January 4, 2013, Plaintiffs filed an amended complaint (which, among other things, added Par as a plaintiff) (cited as "Compl. ¶ __") (Adv. D.I. 22), to which BWAB filed its answer, affirmative defenses and counterclaims on January 18, 2013 (the "Answer," cited as "Ans. ¶__").  (Adv. D.I. 25).[3]

On the basis of these pleadings and the supporting declarations filed herewith, this matter presents purely legal issues and there are no disputed material facts.  Therefore, Plaintiffs have moved for summary judgment.  This is their opening memorandum of law in support.

---

[2]     Debtor Castle Exploration Company, Inc. filed its chapter 11 petition on January 6, 2012.

[3]     On January 30, 2013, BWAB filed an amended answer, affirmative defenses and counterclaims (Adv. D.I. 29), but the only substantive change was the addition of a set-off affirmative defense.

## SUMMARY OF ARGUMENT

1.      In two separate transactions, one in 1994 and the other in 1999, BWAB obtained pre-petition interests in the Leases.  The estates' interest in these Leases, acquired in 1999, previously was owned by the Debtors and now is owned by the Reorganized Debtors.  As a result of the Debtors' chapter 11 cases and consummation of the Plan, BWAB's interests are no longer enforceable against the Debtors or the Reorganized Debtors.

2.      With respect to the 1994 transaction, BWAB received a personal property contractual right to payment, *i.e.*, a prepetition general unsecured claim.  Under the Debtors' Plan, ownership of the Lease interests vested with the Reorganized Debtors free and clear of all claims, liens and interests.  Therefore, BWAB's 1994 ORRI claim was discharged when the Plan became effective and is no longer enforceable against the Reorganized Debtors.  Additionally, BWAB received notice of the bar date for prepetition claims, but failed to file a proof of claim and, thus, has no right to participate in Plan distributions.

3.      With respect to the 1999 transaction, while the nature of what BWAB was granted arguably is less clear, it makes no difference.  Regardless of whether BWAB received an unsecured contractual right to payment or a real property interest, Plaintiffs are entitled to summary judgment.  If BWAB was granted a personal property contract right to payment, then the analysis is the same as for the 1994 transaction.  If BWAB was granted a true ORRI, *i.e.*, a real property interest, then that interest is avoidable and recoverable by Plaintiffs under sections 544(a)(3) and 550, as of the commencement of the Debtors' chapter 11 cases, because BWAB failed to record its interest as required by applicable law.

4.      Additionally, starting in 1999, when the Debtors assumed Whiting's obligation to pay BWAB under the 1994 agreement, the Debtors erred in calculating the amounts payable and consistently overpaid BWAB by more than a million dollars.  Plaintiffs seek to disgorge these excess payments from BWAB for the benefit of the holders of allowed unsecured claims.

5.      Lastly, during the post-petition period, BWAB received excess payments aggregating $507,980.42 on account of its 1994 and 1999 interests.  BWAB was not entitled to receive these payments.  Therefore, they must be disgorged and paid back to Plaintiffs for the benefit of the holders of allowed unsecured claims under the confirmed Plan.

## STATEMENT OF FACTS

***The Parties***

Prior to the Petition Date, the Debtors owned and/or operated natural gas and crude oil producing assets and held interests in leases of real estate that contain oil and gas producing wells.  (Bullock Dec. ¶ 7)[4]  Plaintiffs are the Trust, a general recovery trust created under the Debtors' Plan to liquidate certain trust assets and object to, settle and/or compromise any disputed claims,[5] and Par, one of the Reorganized Debtors which, under the Plan, received the Debtors' assets free and clear of all claims, liens and interests.[6]

Defendant BWAB is a private company headquartered in Denver, Colorado.  (Compl. ¶ 13; Ans. ¶ 13)

***BWAB's 1994 Interest***

Pursuant to a December 16, 1994 assignment agreement (the "1994 Agreement") (Ex. A),[7] Whiting conveyed to BWAB an interest in the Leases.  (Bullock Dec. ¶ 12)  Under section 1 of the 1994 Agreement, BWAB received an "overriding royalty consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties" which was to be calculated from net proceeds from cash flows received by Whiting ultimately associated with the sale of oil, gas and other gaseous and liquid hydrocarbons extracted from the leased

---

[4]      The supporting declaration of Seth Bullock (cited as "Bullock Dec. ¶ __") is filed herewith.

[5]      Sections 6.6(b) and 10.14(a) of the Plan, together with paragraph 13 of the Confirmation Order, expressly create the Trust and authorize it to bring this type of action.

[6]      Plan § 10.1; Confirmation Order ¶ 15.

[7]      Exhibit references herein refer to exhibits attached to the Bullock Declaration.

premises.  (*Id.*)  Thus, despite the parties' use of the phrase "overriding royalty," the plain language of the 1994 Agreement only gave BWAB an interest in the net proceeds received by Whiting from the Leases, and not an interest in or to the un-extracted oil, gas or minerals or the real property itself.  *(See id.* ¶ 13)

### Delta Acquires Its Interests

In 1999, the Debtors acquired their interests in the Leases from Whiting,[8] subject to, among other things, BWAB's interest conveyed by Whiting under the 1994 Agreement.[9]  (Bullock Dec. ¶ 14)  The parties originally agreed that Whiting would convey to Delta title to its interests in the Leases.  (*Id.* ¶ 8)  However, when it turned out that Whiting was not able to obtain the necessary consents and approvals to make such a real property conveyance, the parties entered into the Amendment for Whiting to convey to Delta a derivative product which would provide the economic equivalent of real property title – *i.e.*, an assignment to Delta of a "net operating interest" in, rather than title to, the Leases.  (*Id.*)  Thus, as provided for in the Amendment, the parties' Conveyance Agreement actually conveyed and assigned to Delta a "net operating interest" in the Leases and not title to them.   (Bullock Dec. ¶ 10)

---

[8]    Delta acquired these leases pursuant to: (i) a June 8, 1999 purchase and sale agreement, dated , between Whiting, Whiting Programs, Inc. and Delta (the "Purchase Agreement") (Ex. B); (ii) an amendment to the Purchase Agreement dated as of June 8, 1999, but which was filed with the SEC in an August 25, 1999 Form 8-K/A (the "Amendment") (Ex. C); and (iii) a December 1, 1999 conveyance and assignment agreement (the "Conveyance Agreement") (Ex. D).

[9]    *See* Purchase Agreement §§ 1.2(a), 10.2, 11.2, and 11.4, Conveyance Agreement ¶ (a), (e), and (g).

*BWAB's 1999 Interest*

In connection with Delta's 1999 acquisition, the Debtors entered into an agreement (the "1999 Agreement") (Ex. E) to assign to BWAB a non-operating overriding royalty interest in three percent (3.0%) of the "oil and gas leases and lands" and the oil, gas and other minerals produced, saved and sold from or allocated to the lands covered by the Leases, free and clear of all development, production and operating expenses.   (Bullock Dec. ¶ 9, 16; 1999 Agreement at 1)  Unlike the 1994 Agreement, and despite the fact that the Debtors only owned a personal property net operating interest in the Leases, the 1999 Agreement was drafted as a true ORRI – the plain contract language reflects the intent to convey an interest in the Leases, lands and minerals.

*The Excess Payments*

Monthly payments due to BWAB under each of the 1994 and 1999 Agreements were supposed to be calculated using different formulae.  (Bullock Dec ¶ 17)  However, when calculating the payments to BWAB, Delta mistakenly lumped together the percentages under both agreements and used the 1999 formula to calculate payments under both agreements.  (*Id.*)  As a result, prior to the Petition Date, Delta overpaid BWAB on account of the 1994 Agreement by at least $1.1 million.[10]  (*Id.* at 17, 21)

In addition, between the Petition Date and the Effective Date, the Debtors continued to make payments to BWAB that it was not entitled to receive in the aggregate amount of $507,980.42.  (Compl. ¶ 65; Ans. ¶ 65)  These post-petition payments should not have been made.

---

[10]     This covers 2002-2011.  Plaintiffs do not presently have the records for payments made before 2002 but understand that the same mistaken formula was used for 1999-2001 to calculate payments to BWAB under the 1994 Agreement.  (Bullock Dec. ¶ 23)

***The Chapter 11 Cases***

On February 14, 2012, the Court entered an order  (the "Bar Date Order") (D.I. 303) setting March 23, 2012 as the deadline for filing of general proofs of claim in the chapter 11 cases.   The same day, the Debtors filed and served BWAB with notice (D.I. 313) of the bar date.  (Affidavit of Service at 458) (D.I. 346)  BWAB admits that it received the bar date notice but failed to file a proof of claim.  (Compl. ¶¶ 53, 58; Ans. ¶¶ 53, 58)

On July 6, 2012, the Debtors filed their disclosure statement (the "Disclosure Statement") (D.I. 695) and filed and served BWAB (D.I. 752) with notice of the deadline for voting on the Plan and the confirmation hearing (D.I. 697).  (Compl. ¶ 53; Ans. ¶ 53)  On August 13, 2012, the Debtors filed and served BWAB (D.I. 923) with the Plan (D.I. 885).   (Compl. ¶ 53; Ans. ¶ 53)  On August 16, 2012, the Court entered the Confirmation Order confirming the Plan.  (D.I. 925)  On the Effective Date, all of the Debtors' assets, including the interests in the Leases and the claims in this action, vested in the Trust, a joint venture, and the Reorganized Debtors, free and clear of all claims, encumbrances, and liens.  (D.I. 947) (Plan §§ 6.2(b), 10.1)

## ARGUMENT

## I.    STANDARDS FOR SUMMARY JUDGMENT

Where the material facts are not genuinely disputed and one party is entitled to judgment as a matter of law, summary judgment is appropriate.[11]  While the record and inferences therefrom are viewed most favorably to the non-moving party, that party must do more than simply show that there is some doubt as to the material facts and, instead, "must set forth specific facts showing that there is a genuine issue for trial."[12]

Here, there can be no dispute about the substance or authenticity of the relevant contracts and documents or the key facts concerning the 1994 and 1999 Agreements, the payments BWAB received thereunder, both pre- and post-petition, and the proceedings of record in the bankruptcy cases, much of which has been admitted by BWAB in its Answer.[13]  The only argument is over the legal significance of those undisputed facts.  Accordingly, this case is the poster child for summary judgment, which, as explained below, should be entered for Plaintiffs.

---

[11]    *See* Fed. R. Civ. P. 56(a) and Fed. R. Bankr. P. 7056.  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[12]    *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986) (quoting Fed. R. Civ. P. *56(e)).  See also id.* at 586-87;  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999); *Chase Manhattan Bank v. Iridium Africa Corp.*, 307 F. Supp. 2d 608, 611 (D. Del. 2004) (citing *Matsushita*, 475 U.S. at 586-87).

[13]    Factual assertions admitted by a party in an answer are judicial admissions that are conclusively binding upon the party who made them.  *Broadway Advisors, LLC v. Hipro Elecs., Inc. (In re Gruppo Antico, Inc.)*, 359 B.R. 578, 587 (Bankr. D. Del. 2007).

**II.    BWAB'S INTERESTS HAVE BEEN EXTINGUISHED.**

    **A.    BWAB's Interests Are Prepetition Unsecured Personal Property Claims That Were Released And Discharged Under The Plan And Are No Longer Enforceable.**

    While the 1994 Agreement between BWAB and Whiting employed the phrase "overriding royalty" – which, if it were a true ORRI, would be a real property interest[14] – the term is overused and frequently misused.  "[W]hether the interest is an overriding royalty or (something else) depends on the true nature of the particular conveyance which gives rise to the interest.  Because merely calling an interest an overriding royalty interest is not conclusive of its true status, provisions relevant to the grant of an overriding royalty interest are germane."[15]  Moreover, "[t]he way in which a dispute concerning an overriding royalty interest is to be treated by the courts depends upon its characterization as real or personal property."[16]

    Under the "particular conveyance" here – section 1 of the 1994 Agreement – what BWAB actually received was not an interest in real estate but, rather, "an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties."  Thus, BWAB's 1994 interest was simply a right to share in money collected by Whiting (and, thereafter, by Delta when it acquired its Lease interests

---

[14]    *See Foothills Texas, Inc. v. MTGLQ Investors, L.P. (In re Foothills Texas, Inc.)*, No. 09-10452, 2012 Bankr. LEXIS 3322, at \*9-10 (Bankr. D. Del. 2012) (an overriding royalty interest, "like any ordinary oil and gas royalty … 'is an interest in real property regarded as a covenant running with the land between the assignor and the assignee, and is enforceable by the assignor against the assignee.'").

[15]    *Id.*

[16]    *Grynberg v. Waltman*, 946 P. 2d 473, 476 (Colo. App. 1996).

in 1999) on account of its interest in the leased premises, and that is a personal property interest, *i.e.*, a prepetition general unsecured claim.[17]

By contrast, the 1999 Agreement between BWAB and Delta, on its face (at 1), appears to convey a true overriding royalty interest in the Leases, as it purports to grant to BWAB a three percent (3.0%) interest in the "oil and gas leases and lands" and the oil, gas and other minerals produced, saved and sold from or allocated to the lands covered by the Leases.  The difficulty with this position is that Delta could not have conveyed a real property interest to BWAB, regardless of what the 1999 Agreement says, if it did not own one.[18]  As explained above, what Delta received from Whiting in 1999 was not a real property interest but, rather, merely an assignment of Whiting's "net operating interest" in the Leases, and not title to the Leases.  In this respect, the nature of the interest conveyed by Whiting's assignment to Delta in 1999 was essentially the same as what it conveyed to BWAB in 1994 – a right to receive money from Whiting that Whiting collected on account of the Leases, *i.e.*, a personal property interest.[19]  Thus, neither BWAB, in 1994, nor Delta, in 1999, obtained title to any or all of Whiting's actual leasehold interests, *i.e.*, a real property interest.  And because Delta did not acquire a real

---

[17]    *See Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755, 757 (9th Cir. Wash. 1998) ("[C]osts and expenses arising out of prepetition contracts are treated under the Bankruptcy Code as nonprioritized unsecured claims.").

[18]    *See Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 797 (5th Cir. 2010) (plaintiff's working interest in offshore oil and gas lease only gave plaintiff whatever rights plaintiff's predecessor happened to have because party cannot assign what it does not own, or convey any rights greater than that which he held).

[19]    *See Garfield v. True Oil Co.*, 667 F.2d 942, 943 (10th Cir. 1982) (interest reserving fifty percent of the net profits realized from the production and marketing of oil and gas leases was purely contractual because plaintiffs had no ownership in the leasehold); *Ferguson v. Coronado Oil Co.*, 884 P. 2d 971, 977 (Wyo. 1994) (interest in proceeds or net profits of oil and gas after it has been removed from the ground is a personal property interest).

property interest, it could not, and did not, convey one to BWAB under the 1999

Agreement.

    Under the Plan, ownership of the Debtors' interests in the Leases vested in

the Reorganized Debtors free and clear of all claims, liens and encumbrances.[20]  BWAB

concedes that it received notice of the Plan, Confirmation Hearing and the Effective Date.

(Compl.¶ 53; Ans. ¶ 53)  Therefore, because all of BWAB's interests under the 1994 and

1999 Agreements are nothing more than prepetition general unsecured claims as to which

it failed to file a proof of claim in the Debtors' chapter 11 cases,[21] they have been

---

[20]  Section 10.1 of the Plan provides that "on the Effective Date all property comprising the Estates not otherwise vested in the Joint Venture Company or the Recovery Trusts shall revest in the Estate of the applicable Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests[.]"  *See also* Confirmation Order ¶ 15; Bankruptcy Code sections 1141(b) and (c).  Similarly, section 10.5 of the Plan provides that "the treatment of all Claims against … the Debtors under this Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against … the Debtors of any nature whatsoever, known or unknown, … or against their Estates or properties or interests in property.  …  [U]pon the Effective Date, all Claims against … the Debtors shall be satisfied, discharged and released in full exchange for the consideration provided under this Plan.  …  [A]ll Persons shall be precluded from asserting, against the Debtors, the Reorganized Debtors, or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  …  [T]he Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims and other debts and liabilities of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code[.]"; *see also* Confirmation Order ¶ 45.

[21]  Paragraph 19 of the Bar Date Order provides that "[a]ny entity that is required pursuant to this Order to file a proof of claim for a Prepetition Claim … but that fails to do so on or by an applicable Bar Date, is forever barred, estopped and enjoined from: asserting any Prepetition Claim … against any of the Debtors …, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Prepetition Claim[.]"  *See Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines)*, 96 F.3d 687, 691 (3d Cir. 1996) (bar date "is a 'drop-dead date' that bars all prepetition claimants who received the required notice"); *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) ("[T]he claims bar date operates as a federally created statute of limitations, after which the claimant loses all of her right to bring an action against the debtor.").

extinguished under the Plan and are no longer enforceable against the Reorganized Debtors.[22]

Accordingly, Plaintiffs are entitled to summary judgment, pursuant to Bankruptcy Code section 1141 and the express provisions of the Plan and Confirmation Order, against BWAB declaring that: (i) the confirmed Plan is binding on BWAB; (ii) upon confirmation of the Plan, the applicable Lease interests vested in the Reorganized Debtors free and clear of BWAB's interests and claims; and (iii) BWAB's interests and any rights arising thereunder are not enforceable against the Reorganized Debtors as of the Effective Date of the Plan.

**B.      If BWAB's Interest Under The 1999 Agreement Was A Real Property Interest, It Is Avoidable And Recoverable By The Reorganized Debtors Under The Bankruptcy Code.**

Even if BWAB's interest under the 1999 Agreement were construed to be a true overriding royalty and, therefore, a real property interest – which it is not, for the reasons explained above – it is no longer enforceable against the Reorganized Debtors under the Bankruptcy Code.

---

[22]      *See Missouri Breaks, LLC v. Burns*, 791 N.W. 2d 33, 38-41 (N.D. 2010) (defendant's interest in oil and gas well was extinguished, and his claims were barred by res judicata by operation of plan transferring all property of estate to debtor's successor free and clear of any and all claims, liens, encumbrances and interests); *In re Worldwide Direct, Inc.*, 280 B.R. 819, 821-822 (Bankr. D. Del. 2002) (confirmation order is a "binding, final order, accorded full res judicata effect and precludes the raising of issues which could or should have been raised during the pendency of the case") (internal citations omitted); *Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R. 573, 592 (Bankr. D. Del. 2002) (confirmed plan is binding contract on all parties thereto; and because defendant received notice of plan and could have objected, but did not, plan prevented defendant from objecting to plan terms permitting a trustee to pursue avoidance actions post-confirmation).

Bankruptcy Code sections 544(a)(3) and 550 and applicable state law authorize this Court to avoid and recover BWAB's purported real property interest under the 1999 Agreement.  Section 544(a)(3) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by … a bona fide purchaser of real property … from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser of real property and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Under this statute, the trustee steps into the shoes of a "hypothetical bona fide purchaser" and "would be deemed to have conducted a title search of [the] property, paid value for the property, and perfected (i.e. recorded) his interest as of the date of Debtors' commencement of the [bankruptcy] case."[23]

Further, section 550(a) provides:

> [T]o the extent that a transfer is avoided under section 544 … of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

Therefore, to the extent a transfer is avoided under section 544(a)(3), the transferred property may be recovered under section 550(a).[24]

The trustee's avoidance power under section 544(a) is governed by "the substantive law of the state in which the property in question is located as of the

---

[23]    *In re Sosnowski*, 314 B.R. 23, 30 (Bankr. D. Del. 2004) (citing *In re Bridge*, 18 F.3d 195, 204 (3d. Cir. 1994).

[24]    *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 424 (6th Cir. 2003) (section 550(a) allows a trustee who avoids a transfer under section 544(a)(3) to recover the interest that was transferred).

bankruptcy petition's filing."[25]  Here, the property at issue under the 1999 Agreement that

is subject to avoidance and recovery involves offshore oil and gas leases on the outer

continental shelf of the United States in federal waters off the coast of Santa Barbara,

California.  Oil and gas producing properties on the outer continental shelf are governed

by the Outer Continental Shelf Lands Act ("OCSLA") and related regulations

promulgated by the Bureau of Ocean Energy Management, Regulation and Enforcement.

43 U.S.C. § 1331 *et. seq*.  Under OCSLA section 1333(a)(2)(A),[26] the federal government

has adopted the laws of the adjacent state, here California, as controlling.[27]

---

[25]     *Id.* at 29 (citing *In re Bridge*, 18 F.3d at 200); *see also In re Jason Realty, L.P.*, 59 F.3d
423, 427 (3d Cir. 1995) (when determining nature of transferred property, state law of the
real property's situs determines nature of the real property interests) (citing *Butner v.
United States*, 440 U.S. 48, 55 (1979)).

[26]     Section 1333(a)(2)(A) provides:

> To the extent that they are applicable and not inconsistent with this
> subchapter or with other Federal laws and regulations of the Secretary
> now in effect or hereafter adopted, the civil and criminal laws of each
> adjacent State, now in effect or hereafter adopted, amended, or repealed
> are declared to be the law of the United States for that portion of the
> subsoil and seabed of the outer Continental Shelf, and artificial islands
> and fixed structures erected thereon, which would be within the area of
> the State if its boundaries were extended seaward to the outer margin of
> the outer Continental Shelf.

43 U.S.C. § 1333(a)(2)(A).  *See also Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S.
352, 356-57 (1969).

[27]     *See Grover v. Exxon Corp.*, 894 F. Supp. 291, 294 (S.D. Tex. 1995) (controversy
involved "a fixed offshore production platform located in navigable Federal waters off
the coast of Santa Barbara," which was "located on the Outer Continental Shelf adjacent
to the State of California, outside the State territorial waters"; therefore, "OCSLA applies
to Plaintiff's claims, and the laws of the adjacent State of California govern"); *Apache
Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 794, 797 (5th Cir. 2010) (applying Louisiana
law to dispute involving federal offshore lease adjacent to Louisiana, overriding royalty
interests and assignment of interests therein ); *World Hospitality Ltd v. Shell Offshore,
Inc.*, 699 F.Supp. 111, 113-114 (S.D. Tex. 1988) (on lien perfection issue, "Texas law
applies to the perfection of a lien claim on the Outer Continental Shelf adjacent to
Texas").

Under California law, true overriding royalty interests constitute real property interests,[28] which must be duly recorded in order to be valid as against subsequent purchasers.[29]  Indeed, a purchaser for value without notice of a prior interest is given bona fide purchaser status and has priority over unrecorded interests.[30]  If, therefore, BWAB's interest under the 1999 Agreement is construed as an overriding royalty interest, then it is an interest in real property under California law that was required to be recorded to be valid against a subsequent purchaser.  Because BWAB admittedly failed to record this interest in the Santa Barbara County, California recording office prior to the Petition Date[31] (Compl. ¶ 45; Ans. ¶ 45), Plaintiffs have the rights and

---

[28]　　*See, e.g., LA Laguna Ranch Co. v. Dodge*, 18 Cal. 2d 132, 135-40 (Cal. 1941) (overriding royalty interests, including oil royalty interests, are considered incorporeal interests in real property, subject to the same requirements and protected by the same safeguards); *U-Tex Oil Co. v. Pauley*, 209 Cal. App. 2d 88, 96-97 (Cal. App. 1962) (overriding royalties are interests in real property that are determinable interests limited to duration of the existing lease) (citing *LA Laguna Ranch Co.*, 18 Cal. 2d at 140); *Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424, 429 (9th Cir. 1957) ("The decisions of California courts establish that a stipulation that there be an overriding royalty, consisting of a share of the produce in kind, does create an interest in real property.").

[29]　　Cal. Civ. Code § 1214 (2012) provides:

> Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

[30]　　*See* Cal. Civ. Code §§ 1213, 1214, 1217 (2012);  *In re Tleel*, 79 B.R. 883, 887 (B.A.P. 9th Cir. 1987) (applying California Civil Code sections 1213, 1214 and 1217 in avoidance action under Bankruptcy Code section 544(a)(3) to determine bona fide purchaser status under California law).

[31]　　Under California law, the appropriate recording office for purposes of providing potential bona fide purchasers with notice of existing real property interests is the recorder's office for the applicable county.  *See* Cal. Civ. Code § 1169 (2012) ("Instruments entitled to be recorded must be recorded by the County Recorder of the county in which the real property affected thereby is situated.").  The nearest county adjacent to the leases at issue

17

powers of a hypothetical bona fide purchaser under section 544(a)(3) of the Bankruptcy Code, and they may avoid the transfer to BWAB under the 1999 Agreement.[32]  And once BWAB's interest is avoided, Plaintiffs are entitled to recover that interest from BWAB, as the initial transferee, under section 550(a) of the Bankruptcy Code.[33]

Therefore, even if BWAB's interest under the 1999 Agreement is deemed to be a real property overriding royalty interest, it was no longer enforceable against the Debtors (or their successors) as of the Petition Date.  Accordingly, Plaintiffs are entitled to summary judgment extinguishing BWAB's claims under the 1999 Agreement.

---

is Santa Barbara County, California.  *See* Declaration of Tim Truwe  ("Truwe Dec.") ¶ 4, filed herewith.  Accordingly, the Santa Barbara County, California recording office would have been the proper location for BWAB to record its interest under the 1999 Agreement.  (*Id.*)  Indeed, in connection with their search of the Santa Barbara recording office's title records, Plaintiffs found that other parties holding interests in the same leases as BWAB have recorded the instruments pursuant to which they acquired such interests in the recorder's office for Santa Barbara County.  (Truwe Dec. ¶ 6)

[32]  *See, e.g.,  Taxel v. Chase Manhattan Bank, U.S.A, N.A. (In re Deuel)*, 361 B.R. 509, 515 (B.A.P. 9th Cir. 2006) (avoiding bank's unrecorded real property interest under section 544(a)(3) and California law because trustee was hypothetical bona fide purchaser at time of bankruptcy filing and such status could not be defeated by any alleged constructive notice to trustee); *In re Tleel*, 79 B.R. 883, 887 (B.A.P. 9th Cir. 1987) (avoiding real property interest under section 544 (a)(3) because appellant's interest was unperfected and unrecorded, and under California law, debtor, as hypothetical bona fide purchaser at the time of the filing, would not have notice of appellant's claimed interest); *In re Cascade Oil Co.*, 65 B.R. 35, 39-41 (Bankr. D. Kan. 1986) (overriding royalty interests treated as real property for purposes of section 544(a)(3), which permits avoidance of overriding royalty interests that were not recorded at time bankruptcy petition was filed).

[33]  *See Indus. Enters. of Am. v. Tabor Acad. (In re Pitt Penn Holding Co.)*, 2011 Bankr. LEXIS 3554, at * 44 (Bankr. D. Del. Sept. 16, 2011) (if fraudulent transfer plaintiff avoided stock transfer to defendant, plaintiff could recover stock from defendant, as initial transferee, under section 550(a)).

### III.    THE EXCESS PAYMENTS TO BWAB SHOULD BE DISGORGED.

In addition to extinguishing BWAB's claims under the 1994 and 1999 Agreements, Plaintiffs are entitled to summary judgment requiring BWAB to disgorge and repay the excess payments it received, pre- and post-petition, under them.

### A.    The Prepetition Excess Payments To BWAB Should Be Disgorged.

With respect to the excess payments that BWAB received prepetition under the 1994 Agreement, these were made because of a miscalculation in the payment formula.  (Bullock Dec. ¶ 18)  Under the 1994 Agreement, payments to BWAB were supposed to have been reduced by other existing burdens and encumbrances, but were not.[34]  (*Id.*  ¶ 19)  Specifically, among other things, the Leases were burdened by BWAB's 1999 interest and other interests held by Kaiser-Francis Oil Company, Aleron Larson, Jr., and Roger Parker.   (*Id.*)  Payments made with respect to those interests should have been deducted from the gross receivable under the formula to reduce the amount payable to BWAB, but the Debtors mistakenly failed to do so at least from 2002 through the Petition Date in December 2011,[35] resulting in aggregate prepetition excess payments – in essence, an unintended gift – to BWAB of at least $1.1 million.  (*Id.* ¶ 21)

---

[34]    Under section 1 of the 1994 Agreement, BWAB's received "an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties, to be determined as set forth below.  As used herein, the term 'Net Revenues' to the BWAB interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, ***after the deduction of all lessors royalties, overriding royalties, and other burdens and payments out of gross production that burden Whiting's fractional or percentage share***, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses, (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons."  (Emphasis added)

[35]    Delta has no records pre-dating 2002 reflecting the payments made to BWAB.

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[36] The elements of unjust enrichment are: (i) an enrichment, (ii) an impoverishment, (iii) a relation between the two, (iv) the absence of justification, and (v) the absence of a remedy provided by law.[37] These elements are easily met here because, as a result of the mistaken payments under the 1994 Agreement, BWAB plainly was enriched, and the Debtors were impoverished, to the tune of $1.1 million or more without any justification whatsoever, and Plaintiffs have no other legal remedy. It would be fundamentally unfair for BWAB to retain this unearned benefit. Therefore, the Court should enter summary judgment requiring BWAB to repay the $1.1 million to the Reorganized Debtors, plus interest, for the benefit of the estates' allowed unsecured creditors.

**B.     The Post-Petition Excess Payments To BWAB Should Be Disgorged.**

Nor is BWAB entitled to retain any of the $507,980.42 in post-petition payments that it received. The post-petition portion attributable to the mistaken payments under the 1994 Agreement, approximately $95,678.52 (*see* Bullock Dec. ¶ 22), constitute unjust enrichment for the same reasons discussed immediately above. The remainder of the post-petition payments also amount to unjust enrichment, because: (i) if all of BWAB's claims are on account of prepetition unsecured personal property interests, it was not entitled to any post-petition payments thereon other than in accordance with the confirmed Plan, and since it did not file a proof of claim, BWAB is not entitled to

---

[36]     *See Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[37]     *Id.*

anything under the Plan; and (ii) if BWAB's claims under the 1999 Agreement are considered to be real property interests, they were avoided and extinguished as of the Petition Date pursuant to section 544(a)(3) of the Bankruptcy Code and, therefore, there was no basis for it to receive post-petition payments on account of those interests.

Moreover, the post-petition payments also were fraudulent transfers. To establish a fraudulent transfer claim under applicable state law, Plaintiffs must show that (i) the Debtors made a transfer, (ii) to a creditor, (iii) without receiving reasonably equivalent value in exchange for such transfer, and (iv) at a time when the Debtors were insolvent.[38] Here, the Debtors transferred cash to BWAB on account of is creditor claims under the 1994 and 1999 Agreements and did not receive reasonably equivalent value (or any value at all) at a time when the Debtors were insolvent.[39] Accordingly, BWAB is liable to the Reorganized Debtors for the full amount of the post-petition payments it received on account of the 1994 and 1999 Agreements.

Plaintiffs also are entitled to recover the post-petition payments from BWAB under Bankruptcy Code section 549(a), which authorizes a debtor to "avoid a transfer of property of the estate … that is not authorized under this title or by the

---

[38]     *See* 6 Del. C. §§ 1301, 1302(a) and (b), 1303(a) and 1305.

[39]     The record in the chapter 11 cases establishes the Debtors' insolvency beyond any doubt. The core reason the Debtors entered chapter 11 in December 2011 was because they had substantial debt obligations coming due in 2012 and, as of the Petition Date, they could not satisfy those debts. *See* Declaration Of John T. Young, Jr., Chief Restructuring Officer Of Delta Petroleum Corporation, In Support Of First Day Relief at 12-13 ("First Day Declaration") (D.I. 18). Indeed, the Disclosure Statement estimated creditor recoveries at 28-30%, and equity was to be wiped out. Moreover, the Reorganized Debtors were valued on a going-concern basis at $100-$110 million as of the assumed projected effective date of September 1, 2012, and the estimated midpoint for the total value available for distribution to creditors was approximately $180 million, which was substantially less than the Debtors' liabilities of $310.7 million as of the Petition Date. *See* Disclosure Statement at 6, Exhibit 5 at 1; First Day Declaration at 9-13. The Debtors were therefore insolvent at the time the post-petition excess payments were made.

court."[40]  There is no provision of the Bankruptcy Code that authorized the post-petition

payments to BWAB, since its claims under the 1994 and 1999 Agreements were only

prepetition unsecured claims or, with respect to the 1999 Agreement, were ORRI claims

that were avoided under section 544(a)(3) as of the commencement of the chapter 11

cases.  And while certain ORRI payments during the bankruptcy cases were authorized

by December 19, 2011 and February 13, 2012 court orders (D.I. 66, 296), these only

applied to true ORRIs – *i.e.*, real property interests that were not property of the estate,

and only to prevent the underlying leasehold interest from being at risk of termination

due to non-payment (*see* D.I. 9) – and not to BWAB's prepetition general unsecured

claims.  Moreover, each of these orders (in ¶ 5) explicitly provided that "[n]othing in the

Motion or in this Order shall be construed as impairing the Debtors' right to contest the

validity, priority or amount of any Royalties or ORRI that may be due to any of the

Royalty Owners or ORRI Owners."  Therefore, even if the post-petition payments to

BWAB had been made under the guise of these orders – and they were not – they were

improperly made and were subject to the estates' reservation of rights to challenge the

validity of the payments.  Thus, the post-petition excess payments to BWAB can and

should be avoided under section 549(a) and recovered by the Reorganized Debtors under

section 550(a).

---

[40]  *See ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*, 335 B.R. 580, 584-585 (Bankr. D. Del. 2005) (noting that there is no protection for an initial transferee who takes personal property in good faith other than [in involuntary cases] under section 549(b)."); *Sportsman's Warehouse, Inc. v. McGillis/Eckman Invs.-Billings, LLC (In re Sportsman's Warehouse, Inc.)*, 457 B.R. 372, 400 (Bankr. D. Del. 2011) (transaction that would have violated § 363(b)(1) was outside the "ordinary course" of business and, thus, voidable).

Lastly, Plaintiffs are entitled to a turnover of the post-petition payments from BWAB under Bankruptcy Code section 542(a).[41]  In order to establish a turnover claim, Plaintiffs must show that property is in the possession, custody or control of another entity which can be used in accordance with Bankruptcy Code section 363 and has more than an inconsequential value to the estate.[42]  Here, BWAB has possession of the post-petition payments from the Debtors totaling $507,980.42, an indisputably substantial value, which constitute "property of the estate" that the Debtors would have been authorized to "use" under section 363(b)(1).[43]  BWAB was not entitled to post-petition payments on account of its prepetition unsecured claims or on account of any real property interest arising from the 1999 Agreement which, if it ever existed, was avoided under section 544(a)(3) as of the Petition Date.  Therefore, the post-petition funds BWAB received from the Debtors were and are property of the estate and must be turned over to Plaintiffs.

---

[41]     Section 542(a) provides:

> an entity, other than a custodian, in possession, custody or control,
> during the case, of property that the trustee may use, sell, or lease under
> section 363 of this title, or that the debtor may exempt under section
> 522 of this title, shall deliver to the trustee, and account for, such
> property or the value of such property, unless such property is of
> inconsequential value or benefit to the estate.

[42]     *Shubert v. Premier Paper Prods., LLC (In re Am. Tissue, Inc.)*, No. 01-10370 (KG), 2007 Bankr. LEXIS 4004, at *21 (Bankr. D. Del. Nov. 20, 2007).

[43]     *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 297 (3d Cir. Del. 2000) ("'Property of the estate' includes, inter alia, 'all legal or equitable interests of the debtor in property as of the commencement of the case.'  As the legislative history makes clear, 'the scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action … [and] also includes 'title' to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.'") (citations omitted).

Therefore, the Court should enter summary judgment requiring BWAB to pay to the Reorganized Debtors, for the benefit of the estates' allowed unsecured creditors, $1.1 million on account of the prepetition excess payments and $507,980.42 on account of the post-petition payments, plus interest.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the

Court (i) grant their motion in all respects and enter summary judgment in favor of

Plaintiffs; and (ii) grant Plaintiffs such other and further relief, including costs, expenses

and attorney's fees, as the Court deems just and proper.

Dated:          February 12, 2013
                Wilmington, Delaware


/s/ Anthony W. Clark
Anthony W. Clark (I.D. No. 2051)
Kristhy M. Peguero (I.D. No. 4903)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

Ron E. Meisler
Ebba Gebisa
Skadden, Arps, Slate, Meagher & Flom LLP
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Plaintiffs Delta Petroleum General Recovery
Trust and Par Petroleum Corporation*