### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :   Chapter 11
                                              :
DELTA PETROLEUM CORPORATION,                  :   Case No. 11-14006 (KJC)
et al.,¹                                      :
                                              :   Jointly Administered
              Debtors.                        :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
DELTA PETROLEUM GENERAL                       :
RECOVERY TRUST                                :
and                                           :
PAR PETROLEUM CORPORATION,                    :
                                              :   Adv. Pro. No. 12-50898 (KJC)
              Plaintiffs,                     :
                                              :
     v.                                       :
                                              :
BWAB LIMITED LIABILITY                        :
COMPANY,                                      :
              Defendant.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DECLARATION OF SETH BULLOCK IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO
<u>FED. R. CIV. P. 56 AND FED. R. BANKR. P. 7056</u>**

I, Seth Bullock, hereby declare that the following is true to the best of my knowledge, information and belief:

     1.     I am the Chief Financial Officer at Par Petroleum Corporation

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Delta Petroleum Corporation (0803); DPCA LLC (0803); Delta Exploration Company, Inc. (9462); Delta Pipeline, LLC (0803); DLC, Inc. (3989); CEC, Inc. (3154); Castle Texas Production Limited Partnership (6054); Amber Resources Company of Colorado (0506); and Castle Exploration Company, Inc. (9007). The Reorganized Debtors' headquarters are located at: 1301 McKinney Street, Suite 2025, Houston, TX 77010.

("Par Petroleum," or the "Reorganized Debtor," and together with its affiliates, the "Reorganized Debtors"). I have consulted for Par Petroleum or its predecessor, Delta Petroleum Corporation ("Delta"), since November 2011, and have held officer positions at Par Petroleum (or Delta) since July 2012.

2. I am aware of the above-captioned adversary proceeding (the "Adversary Proceeding") between the Reorganized Debtors and Delta Petroleum General Recovery Trust ("Delta Petroleum Trust," and together with the Reorganized Debtors, the "Plaintiffs") on the one hand, and BWAB Limited Liability Company ("BWAB" or "Defendant"), on the other.

3. This declaration is being submitted in support of the Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056 (the "Motion").

4. Except as otherwise expressly stated, the facts set forth herein are based upon my personal knowledge and/or upon my review of the books and records of the Reorganized Debtors. I have reviewed the Motion and the accompanying brief filed in support of the Motion, and the statements of facts set forth therein are true and correct to the best of my knowledge.

5. Through the ordinary course of employment with the Reorganized Debtors, I received or became familiar with the documents attached hereto as Plaintiffs' Exhibits A - F. The attached exhibits are true, accurate and complete copies of the original documents, and are genuine and authentic.

6. Delta and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), each commenced on December 16, 2011 (the "Petition Date", except in the case of Castle Exploration Company, Inc., for which "Petition Date" shall mean January 6, 2012), a voluntary case under chapter 11 of title 11 of the United States Code.

7. Prior to the Petition Date, the Debtors owned and/or operated natural gas and crude oil producing assets and held interests in leases in certain lands that contain oil and gas producing wells. Among those leases were certain offshore oil and gas leases on the outer continental shelf of the United States, including interests in certain oil and gas leases located off the coast of Santa Barbara, California (the "Leases")[2] that Delta acquired from Whiting Petroleum Corporation ("Whiting") in 1999.

8. When the Debtors acquired the Leases, which are now owned by the Reorganized Debtors, from Whiting in 1999, the parties originally contemplated that Whiting would convey to Delta title to its interests in the Leases. However, following execution of the Purchase Agreement (as defined herein), Whiting and Delta realized that Whiting was not able to obtain the necessary consents and approvals to make such a real property conveyance. As a result, the parties entered into an amendment to the Purchase Agreement (as defined herein)

---

[2] Only two of the Leases (the so-called Point Arguello leases), which continue to produce and provide revenues, are relevant. The other two (the so-called Rocky Point leases) were relinquished by the Debtors several years ago and are of no further consequence to the parties.

3

contemplating that Whiting would convey a derivative product which would provide the economic equivalent of conveying real property title to the Leases by assigning to Delta a "net operating interest" in, rather than title to, the Leases.

9. Accordingly, Delta acquired the Leases pursuant to: (i) the purchase and sale agreement, dated June 8, 1999, between Whiting, Whiting Programs, Inc. and Delta (the "Purchase Agreement"), a copy of which is Exhibit B hereto; (ii) the amendment to the Purchase Agreement (the "Amendment"), a copy of which is Exhibit C hereto, which was dated as of June 8, 1999, but was filed with the United States Securities and Exchange Commission in a Form 8-K/A dated August 25, 1999; and (iii) the conveyance and assignment agreement, dated December 1, 1999, between Whiting, Whiting Programs, Inc. and Delta (the "Conveyance Agreement," and together with the Purchase Agreement and Amendment, the "Whiting Agreements"), a copy of which is Exhibit D hereto.

10. As provided for in the Amendment, the Conveyance Agreement, which was the last Whiting Agreement executed, provided that Whiting was to convey to Delta a "net operating interest" in the Leases and not title to them.

11. Further, the Whiting Agreements provided that the conveyance to Delta was subject to certain encumbrances and claims, including without limitation, the interests Whiting conveyed to BWAB in 1994 (the "1994 BWAB Interest").

12. Whiting conveyed the 1994 BWAB Interest to BWAB

pursuant to an assignment agreement, dated December 16, 1994, between Whiting and BWAB (the "1994 Agreement"), a copy of which is Exhibit A hereto.  The 1994 Agreement provides that the 1994 BWAB Interest equals an "overriding royalty consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's Net Revenue Interest from the Subject Properties."  "Net Revenue," a defined term in section 1 of the 1994 Agreement, was to be calculated from net proceeds from cash flows received by Whiting ultimately associated with the sale of oil, gas and other gaseous and liquid hydrocarbons extracted from the Leases.

13. More specifically, section 1 of the 1994 Agreement provides, in part, that the "Net Revenue Interest" conveyed thereunder is determined as follows:

> As used herein, the term "Net Revenues" to the BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, <u>after the deduction of all lessors royalties, overriding royalties, and other burdens and payments out of gross production that burden Whiting's fractional or percentage share</u>, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses, (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons. The deductions set forth in items 1(B)(i), (ii), (iii) and (iv) will not include expenses or tariffs charged by the Point Arguello Pipeline Company (PAPCO), the Point Arguello Natural Gas Line Company (PANGL), Gaviota Gas Plant Company (GGP) or by Whiting or its Affiliates. (*emphasis added*)

14. As a result of Delta acquiring the Leases from Whiting, Delta assumed Whiting's rights and obligations arising under and relating to the 1994

Agreement.  Accordingly, since Delta's acquisition of the Leases, Delta has been paying BWAB on account of the 1994 BWAB Interest.  As set forth in the 1994 Agreement, for purposes of calculating the "Net Revenues" under the 1994 Agreement, and ultimately the monthly amount payable to BWAB, Delta was entitled to reduce the specified gross revenues by *all lessors royalties, overriding royalties, and other burdens and payments out of gross production that burden* the Leases (the "Revenue Deductions").

15. In connection with Delta's acquisition of the Leases, in December 1999 Delta executed assignments to certain parties (the "1999 Interests"), including an assignment to Defendant (the "1999 BWAB Interest"), to create non-operating overriding royalty interests in a specified percentage of certain "oil and gas leases and lands" and which burdened the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by the Leases, free and clear of certain expenses.

16. In regards to the 1999 BWAB Interest, Delta and Defendant executed an assignment agreement, dated December 1, 1999, which provided that the 1999 BWAB Interest was equal to three percent (3.0%) of the "oil and gas leases and lands" and the oil, gas and other minerals produced, saved and sold from or allocated to the lands covered by the Leases, free and clear of all development, production and operating expenses (the "1999 Agreement"), a copy of which is Exhibit E hereto.

17. The formulation of the monthly payment obligations due and

6

payable to Defendant under each of the 1994 Agreement and the 1999 Agreement differed. However, following Whiting's sale to Delta of the Leases (which were subject to the 1994 BWAB Interest) and Delta's conveyance of the 1999 Interests (including the conveyance to Defendant of the 1999 BWAB Interest), Delta mistakenly lumped together the percentages related to each of the 1994 and 1999 interests for purposes of calculating the aggregate amounts payable to Defendant. As a result, Delta incorrectly applied the payment formula under the 1999 Agreement to both the 1994 and 1999 BWAB Interests, when they should have applied two different formulas.

18. Consequently, the payments on account of the 1994 BWAB Interest (the "1994 Payments") were improperly calculated. Delta historically over-paid Defendant on account of the 1994 BWAB Interest (the "Excess Payments") because the calculations for each of the 1994 Payments did not account for the Revenue Deductions.

19. Specifically, the Revenue Deductions should have included deductions on account of the 1999 Interests – which includes the 1999 BWAB Interest and interests held by Kaiser-Francis Oil Company, Aleron Larson, Jr. and Roger Parker – and a royalty held by the Bureau of Ocean Energy Management (formerly, the Mineral Management Service) of the United States Department of the Interior.

20. Plaintiffs discovered the Excess Payments during the course of

this Adversary Proceeding. Immediately upon discovering such historical overpayments to BWAB, the Reorganized Debtors promptly underwent an audit (the "Audit") of Delta's financial records to determine the extent of the Excess Payments.

21.  The Audit revealed that, as a result of Delta's failure to account for the Revenue Deductions (for purposes of calculating the 1994 Payments), BWAB has been historically overpaid, in the aggregate, of not less than approximately $1,199,959 – as set forth on the Excess Payments chart (the "Excess Payments Chart"), a copy of which is Exhibit F hereto.[3]

22.  Prior to initiating this Adversary Proceeding, the Debtors made post-petition payments to Defendant on account of the 1994 and 1999 BWAB Interests in the aggregate amount of $507,980.42. Based on the Audit, approximately $95,678.52 of such post-petition payments constitute Excess Payments attributable to miscalculations.

23.  The Excess Payment calculations noted herein cover 2002 through 2012. Plaintiffs do not presently have payment records for before 2002 but understand that the same mistaken formula was applied in 1999 – 2001 to calculate payments made to BWAB under the 1994 Agreement.

---

[3]  The Audit remains ongoing and Plaintiffs expressly reserve the right to amend the numbers, and calculations thereof, set forth herein and in the Excess Payments Chart.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated: February 11, 2013
Wilmington, Delaware

*R. Seth Bullock*
Seth Bullock
*Chief Financial Officer of Par Petroleum Corporation*