# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - x
                                             :
In re:                                       :     Chapter 11
                                             :
DELTA PETROLUEM, et al.,                     :     Case No. 11-14006 (KJC)
                                             :
            Debtors.                         :     Jointly Administered
                                             :
- - - - - - - - - - - - - - - - - - - - - -  x
                                             :
DELTA PETROLEUM GENERAL                      :
RECOVERY TRUST, and PAR                      :
PETROLEUM CORPORATION,                       :
                                             :
            Plaintiffs,                      :
                                             :
                                             :     Adv. Pro. No. 12-50898 (KJC)
v.                                           :
                                             :
BWAB LIMITED LIABILTY COMPANY,               :
                                             :
            Defendant, Counterclaimant,      :
- - - - - - - - - - - - - - - - - - - - - -  x
DELTA PETROLEUM GENERAL                      :
RECOVERY TRUST, and PAR                      :
PETROLEUM CORPORATION,                       :
                                             :
                                             :     Adv. Pro No. 12-50877 (KJC)
            Plaintiffs,                      :
v.                                           :
                                             :
ALERON LARSON, JR.,                          :
                                             :
            Defendant, Counterclaimant.      :
- - - - - - - - - - - - - - - - - - - - - -  x
```

**DECLARATION OF ALERON H. LARSON, JR. IN SUPPORT OF BWAB'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND FED. R.
BANKR. P. 7056**

I, Aleron H. Larson, Jr., hereby declare that the following is true to the best of my

knowledge, information and belief.

1

**Exhibit
B**

1.    I am Aleron H. Larson, Jr. and I reside at 150 Casteel Ridge Road, Edwards, Colorado, 81632.

2.    I have reviewed the Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment filed against me and the one they filed against BWAB, Limited Liability Company. ("BWAB")  I have reviewed the Declaration of Seth Bullock in Support of Plaintiffs' Motion for Summary Judgment Pursuant to Fed.R.Civ.P.56 and Fed. R. Bankr. P. 7056 ("Bullock Declaration") that was filed in this lawsuit against BWAB and in the one they filed against me.  I have reviewed BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056 ("Opposition Brief") in this proceeding.  I have reviewed the Declaration of Steven Roitman in Support of BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 70056 ("Roitman Declaration").  I have reviewed the Larson Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056.  Unless otherwise defined hereto, all capitalized terms contained in my Declaration shall have the meaning set forth in the Roitman Declaration.

3.    Except as otherwise expressly stated, the facts set forth herein are based upon my personal knowledge.

4.    I was the Chairman of the Board of Directors of Delta from May, 1987 until sometime in 2005.  I was the Chief Executive Officer of Delta from May, 1987 until sometime in 2002.  Even though I resigned as Chairman of the Board of Directors in 2005, I remained a Director of Delta until June 4, 2011.

**Exhibit**
**B**

5.     Through my role as Chairman of the Board and Chief Executive Officer of Delta, I was personally involved, along with other executive officers and employees of Delta who reported directly to me, in the negotiation and documentation of the business transactions between and/or among BWAB, Whiting, and Delta in 1999 as described in the Roitman Declaration.

6.     As a result of my active participation in such business activities I became very knowledgeable about the documents attached hereto as Exhibits 2 and 3, about Exhibits A through E attached to the Bullock Declaration and about Exhibits 1,3,6,7 and 8 which are attached to the Roitman Declaration. Although the Exhibits attached to my Declaration may contain Defendant's or Plaintiff's bates stamp number, each document is otherwise a genuine, accurate copy of an identical record maintained by me in the ordinary course of business and is either a publicly recorded document or is a document which I signed. Mr. Bullock was not personally involved on behalf of any of the parties to these transactions and it is clear to me from Mr. Bullock's Declaration that he has no personal knowledge of the meaning of the language of the conveyance documents described in his and my Declarations or of the intentions of the parties as to such language.

7.     For purposes of this Declaration, the term "Point Arguello Properties" shall mean the property described on Exhibit 1 hereto, which is also Exhibit A to the 1999 Delta NOI.

8.     During the latter half of 1999, pursuant to the Purchase Agreement and Amendment, as defined by the Bullock Declaration, Delta attempted to acquire Whiting's ownership interest in the Point Arguello Properties.

3

**Exhibit**
**B**

9.      BWAB assisted Delta in those efforts pursuant to an Agreement dated April 29, 1999, but made effective as of April 1, 1999 ("BWAB Fee Agreement"). A copy of the BWAB Fee Agreement is attached to the Roitman Declaration as Exhibit 6. According to the terms of the BWAB Fee Agreement, if Delta acquired a net operating interest in the property described on Exhibit A thereto, including the Point Arguello Unit, Delta would convey to BWAB an overriding royalty interest in the Point Arguello Property "calculated as 3% of the actual gross revenue generated from and accrued to Delta's interest." (Roitman Declaration, Ex. 6 at ¶ 3(2)).

10.     Due in part to the efforts of BWAB, Delta was able to enter into the Purchase Agreement and Amendment with Whiting. If successfully closed, the transaction as initially contemplated by Delta, Whiting and BWAB, would have resulted in Delta's acquisition of all of Whiting's legal and beneficial interest in the Point Arguello Properties, including legal title.

11.     Whiting was unable, however, to obtain the consents of the other working interest owners in the Point Arguello Properties to the transfer of Whiting's legal ownership to the property because of concerns that Delta did not have the financial strength necessary to fulfill Whiting's working interest obligations, particularly those relating to plugging and abandonment of the offshore wells and platforms. The other working interest owners had no objection, however, if Whiting conveyed to Delta all of its ownership in the Point Arguello Properties, **except for legal title.**

12.     As a result, the Purchase Agreement and Amendment was eventually closed in December of 1999, when Whiting executed and delivered to Delta a Conveyance and Assignment dated December 1, 1999, pursuant to which Whiting

**Exhibit
B**

conveyed to Delta what was labeled a Net Operating Interest in the Point Arguello

Properties (the "1999 Delta NOI"), including Whiting's interest in the Unit Agreement

dated effective October 1, 1996 ("Point Arguello Unit Agreement") and the Unit

Operating Agreement dated October 1, 1996 ("Point Arguello Unit Operating

Agreement"), both as described on Exhibit A thereto.   To the best of my knowledge,

there were no separate assignments of the Unit Agreement or the Unit Operating

Agreement to Delta.  A copy of the 1999 Delta NOI is attached to the Roitman

Declaration as Exhibit 7. The 1999 Delta NOI states in part: "Whiting Petroleum

Corporation ... does hereby grant, convey, transfer and assign to Delta Petroleum

Corporation... a net operating interest (as herein defined) in, to and under the

following:..." (Roitman Declaration, Ex. 7 at 1-2).  Such property included the Point

Arguello Unit Agreement and the Point Arguello Operating Agreement.  The term Net

Operating Interest is defined in the 1999 Delta NOI as the following:

> a.   The net operating interest ("NOI") herein conveyed and assigned is
> defined as the monthly payable positive or negative cash flow resulting
> to the Interests from the following eight step calculation:
>
> (i)      oil and gas sales revenue:
> (ii)     **less** royalties and **overriding royalties**:
> (iii)    Less Unit lease operating expenses;
> (iv)    less severance, production or ad valorem taxes, if any;
> (v)     less capital expenditures;
> (vi)    less Unit fees to the Unit operator; and
> (vii)   plus the positive or less the negative cash flow from the
> Partnerships.
> (viii)  plus or minus any other miscellaneous costs or revenues
> that may be related to these interests or operations....
>
> **In the event of positive cash flow, Assignor will pay the excess to
> Assignee; in the event of a negative cash flow, Assignee will pay
> the deficit to Assignor.**

(Roitman Declaration, Ex. 7 at 2-3, emphasis added).

**Exhibit
B**

13.    The parties' intended and the definition of Net Operating Interest makes clear that Whiting retained bare legal title to the Point Arguello Properties but conveyed all of its beneficial interest including its beneficial interest in the Unit Agreement and Unit Operating Agreement to Delta except for previously granted royalties and overriding royalties owed to third parties such as the 1994 BWAB ORRI.

14.    Subsequent to Whiting's conveyance of the 1999 Delta NOI to Delta, Whiting has acted on behalf of Delta as its nominee and agent as to operations under the Point Arguello Unit Agreement and Point Arguello Operating agreement for Delta's newly acquired properties, including whether to participate or not participate in the drilling of wells in the Point Arguello Unit.  Delta would make the decisions, would instruct Whiting to implement such decisions in accordance with the Unit Agreement and the Unit Operating Agreement, and Whiting would do so.  Delta has also referred to Whiting as holding Delta's interest in the Point Arguello Unit as Delta's nominee in its filings with the Securities and Exchange Commission.  See for example, p. 24 of Delta's 2004 Annual Report, an excerpt of which is attached hereto as Exhibit 2.

15.    On December 1, 1999, as part of the closing of the Purchase Agreement and Amendment, Delta also executed and delivered an overriding royalty interest, carved out of its newly acquired beneficial ownership interest in the Point Arguello Properties, to me ("1999 LARSON ORRI").  A true and correct copy of the 1999 LARSON ORRI is attached hereto as Exhibit 3.  The 1999 LARSON ORRI was conveyed to me as consideration for my personal guarantee of a loan $2,000,000 to Delta for the purpose of acquiring the Point Arguello Properties from Whiting.  I provided the personal guaranty at great personal risk.  The Purchase Agreement and Amendment required Delta to make

**Exhibit**
**B**

a $1,000,000 earnest money deposit. Because Delta did not have access to such funds, I loaned the money to Delta. In addition, the agreement required that Delta make a $2,000,000 installment payment on August 2, 1999. Delta did not have such funds when the installment payment was due and was unable to borrow such funds without my personal guaranty of its loan. My personal guaranty enabled Delta to get one step closer to the purchase of the Point Arguello Properties. Without my personal guaranty, it would have lost its $1,000,000 earnest money deposit and would not have been able to purchase the Point Arguello Properties.

16.    On December 1, 1999, as part of the closing of the Purchase Agreement and Amendment, Delta executed and delivered an overriding royalty interest, carved out of its newly acquired beneficial ownership interest in the Point Arguello Properties, to BWAB ("1999 BWAB ORRI"). A true and accurate copy of the 1999 BWAB ORRI is attached to the Roitman Declaration as Exhibit 8.

17.    Delta's interest in the Point Arguello Properties did not include the property owed to BWAB under the 1994 BWAB ORRI. Neither BWAB, Delta nor I agreed that the 1994 BWAB ORRI was to be reduced by the 1999 LARSON ORRI, the 1999 BWAB ORRI, or any other subsequently granted conveyances by Delta.

18.    When Delta acquired the 1999 Delta NOI, and at Whiting's request, Delta agreed that it would not record such document in any county recording office because of Whiting's concern that its other working interest owners would consider such action as a conveyance of legal title in violation of its agreements with them. To the best of my knowledge, Delta has never recorded or filed the 1999 Delta NOI in any county recording office.

19.     Similarly, I did not file my 1999 LARSON ORRI for the same reason that Delta did not record the 1999 Delta NOI in any county recording office. Moreover, recording the 1999 LARSON ORRI would be ineffective because Delta's property interest was not recorded and my recordation would merely constitute a "wild" deed outside of the legal chain of title. Whiting was notified and made aware of Delta's delivery of the 1999 LARSON ORRI and conveyance of part of its newly acquired interest in the Point Arguello Properties to me.

20.     Following Delta's acquisition of its interest in the Point Arguello Properties, Whiting distributed to Delta for distribution to me monthly revenues I owned from my 1999 LARSON ORRI, in the ordinary course of business. Delta in turn timely distributed such revenues to me in the ordinary course of business until September of 2012.

21.     At all times, prior to and during Delta's bankruptcy proceeding, Delta treated my override as a real property interest, without dispute. Even after Delta filed bankruptcy on December 16, 2011, Delta continued to deliver revenues owned by virtue of my 1999 LARSON ORRI to me in the ordinary course of business when they were received from Whiting. At no time did Delta have an ownership interest in those revenues.

22.     I did not have any prepetition claim against Delta at the time of the proof of claim bar date in March of 2012. The only way that I would have had a claim against Delta insofar as nonpayment of monies owned by me by virtue of my 1999 LARSON ORRI is concerned, is:

a.  First, the operator of the Point Arguello Properties must produce oil or gas from the Point Arguello Properties which is attributable to my overriding royalty property interest;

b.  Second, such oil and gas production must be sold to a purchaser;

c.  Third, the proceeds from that sale must be delivered to Whiting;

d.  Fourth, the production proceeds from the sale of oil and gas production attributable to my overriding royalty property interest would have to be delivered to Delta for delivery to me, and Delta would have to not deliver such proceeds to me. At that point, I would have a claim against Delta for the unpaid amount, and for conversion of my property.

23.    It has customarily taken about two months after production of the oil and gas by the operator for the sales proceeds to be delivered to Whiting, and another month for Whiting to distribute the funds to Delta and Delta to distribute the funds to me.

24.    I did not have any claim whatsoever against Delta, pre-petition or post-petition, as of August 31, 2012. The last payment of production revenues by Delta to me was a check I in the latter part of August, 2012, in the amount of $7,688.07. The check detail I received from Delta referred to me as an owner.

25.    If Delta had not paid the accrued revenues it received from Whiting during the month before its bankruptcy that were owned by and supposed to be distributed to me, I would have instructed my attorneys to file a proof of claim in the bankruptcy case for any unpaid prepetition amount as a pre-petition claim, and to assert a claim for conversion of my property.

26.    If Delta received any revenues from Whiting during its bankruptcy proceeding that were supposed to be distributed to me but were not, I would have instructed my attorneys to take all legal steps necessary in the bankruptcy proceeding to obtain payment of such amounts from Delta and would also have notified Whiting that

**Exhibit
B**

Delta was no longer delivering the funds owned by me for which Whiting was responsible.

27.    At no time prior to the latter part of September of 2012 did Delta or Plaintiffs ever provide notice to me that they disputed the 1999 LARSON ORRI, or any amounts owned or previously paid pursuant thereto.

28.    Delta's confirmed Plan of Reorganization and its disclosure statement made no mention of my 1999 LARSON ORRI, did not indicate that it was disputed, and did not deal with my property.  At no time prior to confirmation of its Plan did Delta commence adversary proceedings to determine the validity, extent and priority of my property interest.

29.    At no time did I participate in Delta's bankruptcy proceeding prior to being sued in this action, because I had no reason to.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated:        March 8, 2013
              Denver, Colorado

Aleron H. Larson, Jr.

10

Exhibit
B

# Exhibit 1

My Commission Expires: February 28, 2003

s/Jean E. Solot
Notary Public

## EXHIBIT "A"
## POINT ARGUELLO FIELD
### Offshore California

Attached to and made a part of that certain CONVEYANCE AND ASSIGNMENT between Whiting Petroleum Corporation, Assigor, and Delta Petroleum Corporation, Buyer, effective April 1, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%

3. Partnership Agreement for Ownership of Facilities- Gaviota Gas Plant Company dated October 1, 1984; Partnership

Interest 5.7013%

II.

| PROPERTY NAME | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of Seller's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

**INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:**

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram N1 10-6 Santa Maria (CA 3- 1055).

B. Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

**INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:**

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

**WELLS:**

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A- 11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, (B-1WB-1, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C- 9, C-10 and C-11.

Subject to the following:

a. Offset Development and Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b. Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limit Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 5rN-84W and 55N-85W, Channel Island Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore, California.

c. Unit Operating Agreement Point Arguello Unit, Pacific Offshore, California, dated effective October 1, 1996 between Chevron U.S.A. Inc., Phillips Petroleum Company, Whiting Petroleum Corporation, Texaco Exploration and Production Inc., Sun Operating Limited Partnership, by Oryx Energy Company, its Managing General Partner, Pennnzoil Exploration & Production Company and Oxbow Energy, Inc.

# **Exhibit 2**



# DELTA PETROLEUM CORPORATION

## 2004 ANNUAL REPORT

### Rocky Point Unit

We own an 11.11% interest in the east half of OCS Block 451 and a 100% interest in OCS Blocks 452 and 453, which leases comprise the undeveloped Rocky Point Unit. On November 2, 2000 we entered into an agreement with all of the interest owners of the Point Arguello unit for the development of Rocky Point and agreed, among other things, that Arguello, Inc. would become the operator of Rocky Point. Six test wells have been drilled on these leases from mobile drilling units. Five were successful and one was a dry hole. OCS-P 0451 #1, drilled in 1982, was the discovery well for the Rocky Point Field. Five delineation wells were drilled on the Unit between 1982 and 1984. Rates up to 1,500 Bbls of oil per day were tested from the Monterey formation. Rates up to 3,500 Bbls of oil per day were tested from the lower Sisquoc formation which overlies the Monterey. Oil gravities at Rocky Point range from 24 degrees to 31 degrees API.

Development of the Rocky Point Unit will be accomplished through extended-reach drilling from the platforms located within the adjacent Point Arguello Unit (see below). In 1987 an extended-reach well was successfully drilled to the southwestern edge of the Rocky Point field from Platform Hermosa located in the Point Arguello Unit. Since that time the technology of extended-reach drilling has dramatically advanced. The entire Rocky Point field is now within drilling distance from the Point Arguello Unit platforms.

We are currently drilling our first development well on the Rocky Point Unit. The well is being drilled to a total measured depth of 18,000 feet and we should have results sometime in September. By virtue of various agreements between owners of the Point Arguello Unit platforms and the Rocky Point Unit leasehold, Delta will have approximately a 6.25% working interest in the development of the east half of OCS Block 451.

### Offshore Producing Properties

Point Arguello Unit. Whiting Petroleum Corporation holds, as our nominee, the equivalent of a 6.07% working interest in form of a financial arrangement termed a "net operating interest" in the Point Arguello Unit and related facilities. In layman's terms, the term "net operating interest" is defined in our agreement with Whiting as being the positive or negative cash flow resulting to the interest from a seven step calculation which in summary subtracts royalties, operating expenses, severance taxes, production taxes and ad valorem taxes, capital expenditures, unit fees and certain other expenses from the oil and gas sales and certain other revenues that are attributable to the interest. Within this unit are three producing platforms (Hidalgo, Harvest and Hermosa) which are operated by Arguello, Inc., a subsidiary of Plains Resources Corporation. In an agreement between Whiting and us (see Form 8-K dated June 9, 1999), Whiting agreed to retain all of the abandonment costs associated with our interest in the Point Arguello Unit and the related facilities.

### Office Facilities

Our offices are located at 475 Seventeenth Street, Suite 1400, Denver, Colorado 80202. We lease approximately 19,000 square feet of office space for approximately $25,000 per month and the lease will expire in September, 2008.

### Production

During the years ended June 30, 2004, 2003 and 2002 we have not had, nor do we now have, any long-term supply or similar agreements with governments or authorities under which we acted as producer.

Exhibit
B

DPT000128

# Exhibit 3

## ASSIGNMENT OF OVERRIDING ROYALTY INTEREST
### (The "ASSIGNMENT")

This Assignment is made and entered into this 1st day of December, 1999, between DELTA PETROLEUM CORPORATION, a Colorado corporation, whose address is 555 17th Street, Suite 3310, Denver, Colorado, 80202, hereinafter referred to as Assignor, and ALERON H. LARSON, JR., an individual, whose address is 25598 Foothills Drive North, Golden, Colorado 80401, hereinafter referred to as Assignee.

NOW THEREFORE, IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor does, by these presents, assign, transfer and convey unto Assignee, an OVERRIDING ROYALTY INTEREST of one percent (1.0%) in and to the oil and gas leases and lands described on Exhibit "A" attached hereto and by this reference made a part hereof (the "Leases"), which shall burden all the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by said Leases, and any extensions or renewals thereof. Said Overriding Royalty Interest shall be subject to the following terms and conditions:

1.     The Overriding Royalty Interest shall be free and clear of all development, production and operating expenses, however, said interests shall bear and pay currently its portion of the costs of transportation, compression, dehydration, and similar costs, gross production, severance, ad valorem taxes and all other taxes assessed against the gross production subject to said Overriding Royalty Interest.

2.     It is agreed that nothing contained herein shall impose upon Assignor, or its successors or assigns, any duty or obligation to develop or operate the Leases or any wells located thereon, or maintain the Leases by payment of delay rentals, minimum royalties, shut-in royalty payments or any other similar payments necessary to keep the Leases in effect.

3.     Assignor shall have the exclusive right, as set forth in the Leases, to pool said Leases and the lands covered thereby, or any part thereof, with other lands and leases into voluntary units, or units established by any governmental agency having jurisdiction over said Leases and lands, and if said Leases are so pooled, the Overriding Royalty Interest shall burden only the production allocated to the Leases and lands by virtue of the allocation provisions of the pooling and/or unitization agreements governing the development of the unit or pooled area.

4.     The Overriding Royalty Interest conveyed herein shall burden only the interest of Assignor, and its successors and assigns, in the Leases and shall be reduced to the proportion that the leasehold interest of Assignor in said Leases bears to the total leasehold estate in the lands covered by the Leases. In addition, the Overriding Royalty Interest shall be subject to further proportionate reduction should the Leases cover less than the full, undivided oil, gas and mineral estate in the lands covered thereby.

-1-

DEF 00119

5.   This Assignment is made with no representations or warranties of title either express or implied and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors, representatives and assigns.

6.   In the event Assignor is required to assign in an arms length transaction some fractional undivided interest in the Leases in order to obtain access to Point Arguello Unit offshore drilling platform(s) for the drilling of wells on the Leases, the Overriding Royalty Interest shall be proportionately reduced; provided, however, that any oil and gas interest or other thing of value of any nature, whether similar or dissimilar, received by Delta in any such transaction shall be subject to this Overriding Royalty Interest.

7.   In the event any action of any governmental unit (whether federal or state and whether legislative, executive or judicial) precludes the orderly development of, and production of hydrocarbons and other minerals from, the Leases and Assignor receives compensation therefor, Assignee shall receive in respect of the Overriding Royalty Interest a proportionate part of such compensation which proportion shall be in the same ratio as the value of the Overriding Royalty Interest in the Leases reasonably expected had orderly development and production not been interrupted bears to the value of the expense interest in the Leases giving consideration to the expenses which would have been incurred by Assignor in deriving the value attributable to the expense interest had orderly development and production not been interrupted.

EXECUTED this 1st day of December, 1999, but effective for all purposes as of August 1, 1999 at 7:00 AM at the location of the Leases, hereinafter referred to as the EFFECTIVE DATE.

**ASSIGNOR:**

DELTA PETROLEUM CORPORATION

By: _____

Title: _____President_____

Attest:
(Seal)

By: _Sheryl Shelton_____

Title: _Assistant Secretary_____

**ASSIGNEE:**

By: _____
          Aleron H. Larson, Jr.

-2-

DEF 00120

## ACKNOWLEDGMENTS

State of Colorado          }
                           }
County of Denver           }

The foregoing instrument was acknowledged before me this 1st day of December, 1999 by Roger A. Parker. to me known to be the President of DELTA PETROLEUM CORPORATION, a Colorado corporation, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires:____5/18/01_____

Notary Public: Sheryl K. Shelton_____
Address: 9800 S. Rock Dove Lane_____
Highlands Ranch, Colorado 80126_____

State of Colorado          }
                           }
County of Denver           }

The foregoing instrument was acknowledged before me this 1st day of December, 1999 by ALERON H. LARSON, JR., for the purposes and in the capacity stated herein as the free act and deed of said individual.

My Commission Expires:____5/18/01_____

Notary Public: Sheryl K. Shelton_____
Address: 9800 S. Rock Dove Lane_____
Highlands Ranch, Colorado 80126_____

-3-

**Exhibit B**

DEF 00121

**EXHIBIT "A"**
**POINT ARGUELLO FIELD**
**Offshore California**

Attached to and made a part of that certain PURCHASE AND SALE AGREEMENT between Whiting
Petroleum Corporation, Seller, and Delta Petroleum Corporation, Buyer, dated the 8ᵗʰ day of June, 1999.

I.

    All of Seller's right, title and interest in and to the following described partnerships:

1.    Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership
Interest 5.8036%.

2.    Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984;
Partnership Interest 6.0652%.

3.    Partnership Agreement for Ownership of Facilities-Gaviota Gas Plant Company dated
October 1, 1984; Partnership Interest 5.7013%.

II.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil
and gas lease:

    A.    Oil and Gas Lease dated July 2, 1981 from Bureau of Land Management to
Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No.
OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

    Block 466, All that certain portion seaward of the three geographical mile line,
OCS Official Protraction Diagram NI 10-6, Santa Maria. (CA3-2056).

Subject to the following:

a.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips
and Champlin as non-operators covering the Rocky Point Unit;

b.    Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and
Champlin as non-operators, covering the Rocky Point Unit;

c.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending
the Unit Operating Agreement.

LEASE:

All of Seller's right, title and interest in and to the leasehold estate created by the following described oil
and gas lease:

DEF 00122

A.    Oil and Gas Lease dated May 19, 1981 from Bureau of Land Management
To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial
No. OCS-P 0453.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

Block 467, all that certain portion seaward of the three geographical mile line,
OCS Official Protraction Diagram NI 10-6, Santa Maria

Subject to the following:

a.    Lease Operating Agreement dated July 1, 1981;

b.    Unit Agreement dated February 15, 1985;

c.    Rocky Point Unit Operating Agreement dated February 1, 1985.

<u>LEASE:</u>

A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to
Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No.
OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

The E/2 of Block 465, All that portion seaward of the three geographical mile line,
OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron,
Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and
Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering
the Rocky Point Unit;

d.    Letter Agreement dated February 1, 1985 between Chevron, Champlin and Phillips amending
the Unit Operating Agreement of Rocky Point Unit.

III.

| PROPERTY NAME | Working Interest | Net Revenue Interest |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of the Seller's right title and interest in and to the leasehold estate created by the following described oil
and gas leases:

A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management
To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing

**Exhibit
B**

DEF 00123

Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

        The W/2 of Block 465, All that portion seaward of the three geographical mile line,
        OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

B.      Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to
      Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and
      ICI Delaware Inc. bearing
      Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING
DESCRIBED LAND:

        All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-
        Map No. 64 (CA 300316).

WELLS:

        A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12, A-13, A-14,
        A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, B-1WB01, B-2,
        B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15,
        B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-10, and C-11.

Subject to the following:

a.      Offset Development Well and Linewell Agreement dated September 12, 1988
      between Chevron, Phillips and Union Pacific Corp.;

b.      Unit Operating Agreement dated February 1, 1985 between Chevron, operator
      and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.      Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin
      covering the Rocky Point Unit;

d.      Letter Agreement dated February 6, 1985 between Chevron, Champlin and
      Phillips amending the Unit Operating Agreement of Rocky Point Unit;

e.      Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as
      non-operators, covering all of Block 55N-84W and the Hermosa
      Platform;

f.      Unit Agreement for Outer Continental Shelf Exploration, development and
      Production Operations on the Point Arguello Unit dated effective October 1, 1996
      between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum,
      Texaco Exploration and Production, Sun Operating Limited Partnership,
      Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy
      parts of Blocks 55N, 84W and 55N, 85W, Channel Islands Area and Parts of
      Blocks 464 and 465, Santa Maria Basin Area, Offshore California.

DEF 00124