support your response and identify the person who has custody, possession, or control over each document or thing.

 15. Set forth all calculations you have made in order to determine the amount BWAB has been overpaid in connection with the 1994 BWAB ORRI.

 16. Set forth the amount of each payment by Delta or PAR to Kaiser-Francis Oil Company, or its successor, in connections with the Francis ORRI since January 1, 2012, and include the date of each payment.

 17. Please describe, including dates and amounts, the money that you have received that is attributable to the 1994 BWAB ORRI and 1999 BWAB ORRI from the time period between August 31, 2012 and December 21, 2012.

## REQUESTS FOR PRODUCTION

 1. Please produce all documents identified in response to interrogatories propounded to you in this case.

 2. Produce all emails, correspondence or other written communications between Delta and Whiting relating to the Point A Unit.

 3. With respect to the Point A Unit, produce all ledgers, books of account, accounting entries, joint interest billings, records of payments to joint interest owners, ORRI owners whether in electronic or paper format.

 4. Produce all checks, wire transfers or other documents reflecting payments to Whiting by Delta on account of any negative cash flow in the Point Arguello Properties as required under the 1999 NOI.

 5. Produce all records, workpapers, adjustments, journal entries or other records relating to the "audit" of Delta's payments to ORRI owners described in the Declaration of Seth

7

Bullock.

6.    Produce all emails, correspondence, notes or other documents reflecting communications with any present or former Delta employee concerning the calculation of amounts to ORRI owners in the Point Arguello Properties and any alleged error in such calculations.

7.    Produce all documents upon which the calculations that appear at Exhibit F to the Declaration of Seth Bullock and you response to interrogatory 15, above, are based.

## REQUESTS FOR ADMISSION

1.    Please admit that Whiting holds legal title to the Point A Properties.  1a Admit Whiting's interest in Point A Unit has not been recorded in real property records of any United States state or county.

2.    Admit Whiting is a party to the 1996 Point A Unit Agreement and the 1996 Point A Operating Agreement.

3.    Admit that  the 1996 Point A Unit Agreement describes Whiting's interest in the Unit as being subject to a 3.5% ORRI.

4.    Admit that the 3.5% ORRI interest referenced in the 1996 Point A Unit Agreement burdening Whiting's interest is the 1994 BWAB ORRI.

5.    Admit Delta is not a party to the 1996 Point A Unit Agreement or the 1996 Point A Operating Agreement and no party to either agreement has consented to Delta's assumption of any rights or obligations under either agreement.

6.    Admit that from 1999 to the present, the oil and gas purchaser of production from Point A Unit has paid the proceeds of sale of such production to Whiting with respect to its 6.07 percent interest in the Unit.

8

7.    Admit that the working interest owners of the Point A Unit objected to Whiting's transfer of legal title to its 6.07 percent interest in the unit to Delta

8.    Admit that Delta did not record the 1999 NOI in any real property record of any United States state or county including Santa Barbara County, California.

9.    Admit that a hypothetical bona fide purchaser would discover in the exercise of reasonable diligence that Delta did not own record title to any interest in the Point A Unit.

10.    Admit that Delta could not convey its interest in the Point A Unit to a bona fide purchaser without notice because Delta did not own any record title interest in the Point A Unit.

11.    Please admit that all amounts paid pursuant to the 1994 BWAB ORRI, 1999 BWAB ORRI, and 1999 Larson ORRI relate to oil and not natural gas production.

12.    Please admit that beginning in 1999, Whiting sent the monies payable to BWAB and Larson pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, and the 1999 Larson ORRI to Delta for distribution to BWAB and Larson.

13.    Please admit that beginning in 1999 and continuing through August 21, 2012, Delta delivered to BWAB and Larson the monies it received from Whiting for distribution to BWAB and Larson.

14.    Please admit that as of December 16, 2011, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

15.    Please admit that as of March 23, 2012, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

7571252 v1

16.    Please admit that as of August 16, 2012, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

17.    Please admit that as of August 31, 2012, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

18.    Please admit that Delta is not aware of any novation agreement releasing Whiting from its obligations to pay the amounts earned by the 1994 BWAB ORRI and that Delta undertook such obligation to pay with BWAB's consent.

19.    Please admit that you did not overpay the sums due pursuant to either the 1994 BWAB ORRI, the 1999 BWAB ORRI, and the 1999 Larson ORRI.

20.    Please admit that neither BWAB nor Larson had a claim against Delta until:

   a.    after minerals were produced from the Point A Properties, and

   b.    after Whiting received production revenues from the sale of those minerals, and

   c.    after Whiting providing the funds to Delta for distribution of the amounts owed to BWAB or Larson, and

   d.    after Delta failed to pay those funds to BWAB or Larson.

21.    Please admit that neither Debtors nor you informed BWAB, Parker, or Larson or provided any notice in the Plan, disclosure materials, other notices, or filings with the Bankruptcy Court that you disputed the ownership of or entitlement to payments on account of the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

22.    Please admit that none of the amounts paid by Delta to BWAB or Larson on account of the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI were paid

10

under protest.

    23.     Please admit that neither BWAB nor Larson was a Delta creditor on August 31,

2012.

    24.     Please admit the authenticity of the 1994 BWAB ORRI, the 1999 BWAB ORRI,

the 1999 Larson ORRI, and the 1999 NOI.


Dated March 11, 2013         By:    */s/ Stuart N. Bennett*
                                       Barry L. Wilkie, Esquire
                                       Stuart N. Bennett, Esquire
                                       Jones & Keller, P.C.
                                       1999 Broadway, Suite 3150
                                       Denver, CO 80202
                                       (303) 573-1600

                                       *Counsel for BWAB Limited Liability*
                                       *Company*

7571252 v1

# Exhibit 1

## CONVEYANCE AND ASSIGNMENT

WHITING PETROLEUM CORPORATION, a Delaware corporation, and WHITING PROGRAMS, INC., a Delaware corporation (collectively, the "Assignor") whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290, for TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby grant, convey, transfer and assign to DELTA PETROLEUM CORPORATION, a Colorado corporation ("Assignee"), whose address is 3310 Qwest Tower, 555 Seventeenth Street, Denver, Colorado 80202, a net operating interest (as herein defined) in, to and under the following:

(a) The oil, gas and mineral leases described on Exhibit "A" attached hereto (collectively, the "Leases"), including, without limitation working interests, overriding royalty interests, royalty interests and any other interests of a similar nature affecting the lands covered by the Leases. (collectively, the "Lands".)

(b) The wells described on Exhibit "A" or which are located on the Lands (collectively, the "Wells").

(c) All unitization, communitization, pooling, agreements, working interest units created by operating agreements, partnership agreements and orders covering the Leases and Lands, or any portion thereof, and the units and pooled or communitized areas created thereby, including the Federal units created by the Unit Agreements described on Exhibit "A" (collectively, the "Units") and the four partnerships created by the Partnership Agreements described on Exhibit "A" i.e., PAPCO, PANGL, GGP and PATC (collectively, the "Partnerships").

(d) The tangible personal property, tools, machinery, materials, pipelines, plants, gathering systems, equipment, fixtures and improvements, which are incident or attributable to the Leases, Lands, Wells or Units with the production, treatment, sale or disposal of hydrocarbons or water produced therefrom or attributable thereto, on the Effective Time (collectively, the "Equipment").

(e) The licenses, permits, contracts, agreements and other instruments owned by Seller (other than bonds posted by Seller) which concern and relate to any of the Leases, Lands, Wells, Units and/or Equipment, INSOFAR AND ONLY INSOFAR as same concern or relate to the Leases, Lands, Wells, Units and/or Equipment, or the operation thereof; including, without limitation, oil, gas and condensate purchase and sale contracts; permits,; rights-of- way; easements; licenses; servitudes; estates; surface leases; farmin and farmout agreements; division orders and transfer orders; bottomhole agreements; dry hole agreements; area-of- mutual interest agreements; salt water disposal agreements; acreage contribution agreements; operating agreements; balancing agreements and unit agreements; pooling agreements; pooling orders; communitization agreements; processing, gathering, compression and transportation agreements; facilities or equipment leases relating thereto or used or held for use in connection with the ownership or operation thereof or with the production, treatment, sale or disposal of hydrocarbons; and all other contracts and agreements related to the Leases, Lands, Wells, Units and/or Equipment.

(f) Originals or copies of all computer tapes and discs, files, records, information or data relating to the Interests in the possession of Seller, including, without limitation, title records (including abstracts of title, title opinions, certificate of title and title curative documents), accounting records and files, contracts, correspondence, production records, electric logs, core data, pressure data, decline curves, graphical production curves, drilling reports, well completion reports, drill stem test charts and reports, engineering reports, regulatory reports, and all related materials, INSOFAR AND ONLY INSOFAR as the foregoing items constitute materials that may be lawfully conveyed to Buyer (i.e., the materials are not subject to a proprietary agreement precluding their transfer to Buyer), and, to the extent transferable, all other contract rights, intangible rights (excluding Seller's trademarks and service marks), inchoate rights, choses in action, rights under warranties made by prior owners, manufacturers, vendors or other third parties, and rights accruing under applicable statutes of limitation or prescription, attributable to the Interests.

(g) All payments, and all rights to receive payments, with respect to the ownership of the production of hydrocarbons from or the conduct of operations on the Interests accruing after the Effective Time.

All of the properties, rights, and interests described in paragraphs (a) through (g) above are referred to herein as the "Interests."

This Conveyance and Assignment shall be effective as of April 1, 1999, at 7:00 a.m., local time (referred to herein as the "Effective Time").

The net operating interest ("NOI") herein conveyed and assigned is defined as the monthly payable positive or negative cash flow resulting to the Interests from the following eight step calculation:

(i) oil and gas sales revenue;
(ii) less royalties and overriding royalties;
(iii) less Unit lease operating expenses;
(iv) less severance, production or ad valorem taxes, if any;
(v) less capital expenditures;
(vi) less Unit fees to the Unit operator; and
(vii) plus the positive or less the negative cash flow from the Partnerships.
(viii) plus or minus any other miscellaneous costs or revenues that may be related to these interests or operations

After taking into account Assignor's retention of net abandonment costs (i.e. cost of abandonment less equipment salvage value) under Section 9.1 of that certain Purchase and Sale Agreement dated as of June 8, 1999, as amended by an Amendment to Purchase and Sale Agreement dated as of June 8, 1999, between Assignor and Assignee (as amended, the "Agreement"), and the maximum payment of $2,000,000 by Assignor to purchase the Preferred Stock to fund the Deficit as such terms are defined in Section 9.2 of such Agreement, the above eight step calculation may result in positive cash flow or negative cash flow. In the event of

positive cash flow, Assignor will pay the excess to Assignee; in the event of a negative cash flow, Assignee will pay the deficit to Assignor.

This Conveyance and Assignment is delivered pursuant to and subject to the Agreement. The Agreement contains certain covenants and obligations which survive the delivery of, and shall not be deemed merged into, this Conveyance and Assignment as and to the extent provided in the Agreement.

Dated this 1st day of December, 1999, but effective as of the Effective Time.

Attest:                                WHITING PETROLEUM CORPORATION

s/Patricia J. Miller                   By: s/John R. Hazlett
Patricia J. Miller                        John R. Hazlett, Vice President
Corporate Secretary

Attest:                                WHITING PROGRAMS, INC.

s/Patricia J. Miller                   By: s/John R. Hazlett
Patricia J. Miller                        John R. Hazlett, Vice President
Corporate Secretary

Attest:                                DELTA PETROLEUM CORPORATION

s/Aleron H. Larson, Jr.                By: s/Roger A. Parker
Aleron H. Larson, Jr.                     Roger A. Parker, President

STATE OF COLORADO      )
        CITY AND       )    ss.
COUNTY OF DENVER       )

The foregoing instrument was acknowledged before me this 1st day of December, 1999, by John R. Hazlett, Vice President of Whiting Petroleum Corporation and Whiting Programs, Inc., both Delaware corporations.

My Commission Expires: February 28, 2003

                    s/Jean E. Solot
                    Notary Public

        STATE OF COLORADO      )
                CITY AND       )    ss.
        COUNTY OF DENVER       )

The foregoing instrument was acknowledged before me this 1st day of December, 1999, by Roger A. Parker as the President of Delta Petroleum Corporation, a Colorado corporation.

My Commission Expires: February 28, 2003

s/Jean E. Solot
Notary Public

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of that certain CONVEYANCE AND ASSIGNMENT between Whiting Petroleum Corporation, Assigor, and Delta Petroleum Corporation, Buyer, effective April 1, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%

3. Partnership Agreement for Ownership of Facilities- Gaviota Gas Plant Company dated October 1, 1984; Partnership

Interest 5.7013%

II.

| PROPERTY NAME | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of Seller's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram N1 10-6 Santa Maria (CA 3- 1055).

B. Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

WELLS:

A-1, A-2, A-3, A-4, A-5, A-6, A-7; A-8, A-9, A-10, A- 11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, (B-1WB-1, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C- 9, C-10 and C-11.

Subject to the following:

a. Offset Development and Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b. Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limit Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 5rN-84W and 55N-85W, Channel Island Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore, California.

c. Unit Operating Agreement Point Arguello Unit, Pacific Offshore, California, dated effective October 1, 1996 between Chevron U.S.A. Inc., Phillips Petroleum Company, Whiting Petroleum Corporation, Texaco Exploration and Production Inc., Sun Operating Limited Partnership, by Oryx Energy Company, its Managing General Partner, Pennnzoil Exploration & Production Company and Oxbow Energy, Inc.

# Exhibit 2

Recording requested by:
KAISER-FRANCIS OIL CO.

When recorded return to:
Kaiser-Francis Oil Company
P. O. Box 21468
Tulsa, OK 74121-1468
Attn: Bruce Kenney

2001-0077226

Recorded
Official Records
County OF
SANTA BARBARA
KENNETH A. PETTIT
Recorder
LARRY G. HERRERA
Assistant
02:07PM 07-Sep-2001

REC FEE 22.00
CC1 CON 1.00

BSC
Page 1 of 6

## ASSIGNMENT of OVERRIDING ROYALTY INTEREST

### (The "ASSIGNMENT")

TRANSFER TAX NOT MADE PART
OF THE PERMANENT RECORD

This Assignment is made and entered into this 25th day of June, 2001, between DFI TA PETROLEUM CORPORATION, a Colorado corporation, whose address is 555 17th Street, Suite 3310, Denver, Colorado, 80202, hereinafter referred to as Assignor, and Kaiser-Francis Oil Company whose address is P.O. Box 21468 Tulsa, OK 74121-1468, hereinafter referred to as Assignee.

NOW THEREFORE, IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor does by these presents, assign, transfer and convey unto Assignee, an OVERRIDING ROYALTY INTEREST of five percent (5%) in and to the oil and gas leases and lands described on Exhibit "A" attached hereto and by this reference made a part hereof (the "Leases"), which shall burden any and all the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by said Leases, and any extensions or renewals thereof Said Overriding Royalty Interest shall be subject to the following terms and conditions.

1.    The Overriding Royalty Interest shall be free and clear of all development, production and operating expenses, however, said interests shall bear and pay currently its portion of the costs of transportation, compression, dehydration, and similar costs, gross production, severance, ad valorem taxes and all other taxes assessed against the gross production subject to said Overriding Royalty Interest.

2.    It is agreed that nothing contained herein shall impose upon Assignor, or its successors or assigns, any duty or obligation to develop or operate the Leases or any wells located thereon or maintain the Leases by payment of delay rentals, minimum royalties, shut-in royalty payments or any other similar payments necessary to keep the Leases in effect.

3.    Assignor shall have the exclusive right as set forth in the Leases, to pool said Leases and the lands covered thereby, or any part thereof, with other lands and leases into voluntary units, or units established by any governmental agency having jurisdiction over said Leases and lands, and if said Leases are so pooled, the Overriding Royalty Interest shall burden only the production allocated to the Leases and lands by virtue of the allocation provisions of pooling and/or other agreements governing the development of the lands or pooled area.

DEF 00131

4.    The Overriding Royalty Interest conveyed herein shall burden only the interest of Assignor, and its successors and assigns, in the Leases and shall be reduced to the proportion that the leasehold interest of Assignor in said Leases bears to the total leasehold estate in the lands covered by the Leases. In addition, the Overriding Royalty Interest shall be subject to further proportionate reduction should the Leases cover less than the full, undivided oil, gas and mineral estate in the lands covered thereby.

5.    This Assignment is made with no representations or warranties of title either express or implied except those arising by, through, or under Assignor and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors, representatives and assigns.

EXECUTED this 25ᵗʰ day of June, July, 2001, but effective for all purposes as of December 1, 1999 at 7:00 AM at the location of the Leases, hereinafter referred to as the EFFECTIVE DATE.

ASSIGNOR:

DELTA PETROLEUM CORPORATION                              Attest:

                                                         (Seal)

By: _____        By: _____
Name: Roger A. Parker
Title: President /CEO

ASSIGNEE:

KAISER-FRANCIS OIL COMPANY                               Attest:

                                                         (Seal)

By: _____        By: _____
Name: James A. Willis
By: Exec. Vice-President              Bruce A. Kenney
                                      Assistant Secretary

DEF 00132

**ACKNOWLEDGMENTS**

State of Colorado        }
                         }
County of Denver         }

The foregoing instrument was acknowledged before me this 25th day of July, 2001 by Roger A. Parks, to be known to be the President/CEO of DEL RAY PETROLEUM CORPORATION, a Colorado corporation, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires: Feb 28, 2003

                                         Jean E. Solot
                                Notary Public: JEAN E. SOLOT
                                Address: 3155 S. Newport St
                                         Denver, CO 80224

State of Oklahoma        }
                         }
County of Tulsa          }

The foregoing instrument was acknowledged before me this 25 day of July, 2001 by James A. Willis, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires:

Notary Public Oklahoma
OFFICIAL SEAL
SANDRA K. TRIMBLE
Tulsa County
Commission Expires 05/04/2005

                                         Sandra K. Trimble
                                Notary Public: _____

T:\USER\BRUCE\ROBELLA\ORRLREV.DOC

EXHIBIT " A "
POINT ARGUELLO FIELD
Offshore California

I.

        All of Debtor's right, title and interest in and to the following described partnerships:

1.    Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2.    Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%.

3.    Partnership Agreement for Ownership of Facilities-Gaviota Gas Plant Company dated October 1, 1984; Partnership Interest 5.7013%.

II.

LEASE:

All of Debtor's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

    A.    Oil and Gas Lease dated July 2, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

    Block 466, All that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria. (CA3-2056).

Subject to the following:

a.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators covering the Rocky Point Unit;

b.    Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.

LEASE:

All of Debtor's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

    D.    Oil and Gas Lease dated May 19, 1981 from Bureau of Land Management To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0453.

Page 1 of 3

DEF 00134

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:
> Block 467, all that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria

Subject to the following:

a.    Lease Operating Agreement dated July 1, 1981; .

b.    Unit Agreement dated February 15, 1985;

c.    Rocky Point Unit Operating Agreement dated February 1, 1985.

LEASE:

> A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451.

> INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

> The E/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 1, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit.

III.

| PROPERTY NAME | Working Interest | Net Revenue Interest |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of the Debtor's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

> A.    Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Page 2 of 3

DEF 00135

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NII 0-6 Santa Maria (CA 3-1055).

     B.    Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A., Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

          All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

WELLS:

     A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, B-1WB01, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-10, and C-11.

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit;

e.    Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55N-84W and the Hermosa Platform;

f.    Unit Agreement for Outer Continental Shelf Exploration, development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limited Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 55N, 84W and 55N, 85W, Channel Islands Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore California.

DEF 00136

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - -    x
                                             :
                                             :    Chapter 11
In re:                                       :
                                             :    Case No. 11-14006 (KJC)
DELTA PETROLUEM, et al.,                     :
                                             :    Jointly Administered
              Debtors.                       :
                                             ::
- - - - - - - - - - - - - - - - - - - - -    x
                                             :
DELTA PETROLEUM GENERAL                      :
RECOVERY TRUST, and PAR                      :
PETROLEUM CORPORATION,                       :
                                             :    Adv. Pro No. 12-50898 (KJC)
              Plaintiffs,                     :
                                             :
v.                                           :
                                             :
BWAB LIMITED LIABILITY COMPANY,              :
                                             :
       Defendant, Counterclaimant.    x
```

## BWAB LIMITED LIABILITY COMPANY'S FIRST SET OF WRITTEN DISCOVERY REQUESTS TO PAR PETROLEUM CORPORATION

BWAB Limited Liability Company ("BWAB"), by and through undersigned counsel, in accordance with Federal Rules of Civil Procedure 33, 34 and 36, incorporated herein through Federal Rules of Bankruptcy Procedure 7033, 7034 and 7036, hereby propounds these First Written Discovery Requests to Par Petroleum Corporation ("PAR") and its affiliates (together, the "Reorganized Debtors"):

## INSTRUCTIONS AND DEFINITIONS

1.      In answering the following discovery requests, produce all of the requested information and documents in your possession, custody, or control.

2.      The discovery requests are ongoing.  If any information or documents come to your attention or into your possession, custody, or control after you have filed your response, and

that information or those documents were not included in your response, such information and/or documents must be promptly furnished to the undersigned.

3. The term "include" means including but not limited to.

4. The term "describe" means a comprehensive, accurate, and detailed description of information requested in the propounded interrogatory.

5. The term "documents" means all manner of written, typewritten, printed, or recorded material whatsoever, including any graphic, mechanical, or electrical recordings of any kind, correspondence, letters, telegrams, memoranda, notes, transcriptions of notes, calendars, diaries, minutes or records of meetings or conferences, contracts, agreements, reports, checks, statements, receipts, returns, summaries, tickets, drafts, inter-office and intra-office communications, offers, notations of conversations, records of telephone calls or meetings, printed matter, computer printouts, computer storage media of all kinds, email, teletypes, telefax, invoices, worksheets, drawings, plans, specifications, publications, pictures, blueprints, schematics, tape recordings, transcription of recordings, video recordings, log books, business records, and all drafts, alterations, modifications, changes and amendments or non-identical copies of any of the foregoing, of which you have knowledge or which are now or were formerly in your actual or constructive possession, custody, or control.

6. The term "identify" when related to a person means provide that person's name, address, telephone number, and present employer if known. When related to a document, it means provide the title, the date of execution, the drafter, the intended recipient, and any signatories. When related to an oral statement, it means provide the speaker(s), the recipient(s), all witnesses thereto, the date of said statement, and the content of said statement. When related to testimony, it means to state the date of the testimony, the type of testimony, the case name and

2

number, and court or other forum in which the testimony was given. When related to anything else, it retains its ordinary dictionary definition.

7.    If you consider any document or communication to be privileged, with regard to such document, provide the following information:

    a.  Describe the contents generally and the date of the document or communication;

    b.  Explain fully the basis for the claimed privilege;

    c.  Identify the author or maker and all signatures on the document;

    d.  Identify all persons or non-persons who have, or have had, access to such matter or documents; and

    e.  Identify the custodian of the original and all copies of the document.

8.    If the response to any request herein consists, in part or in whole, of an objection relating to the specific request, state with particularity the nature of the objection.

9.    "You" or "your" refers to Par Petroleum Corporation ("PAR") and its affiliates.

10.    "Delta" refers to Delta Petroleum Corporation.

11.    "BWAB" refers to BWAB Limited Liability Company.

12.    "Larson" refers to Aleron H. Larson, Jr.

13.    "Whiting" refers to Whiting Petroleum Corporation.

14.    The term "Emergency Motion" shall mean the "Emergency Motion of Reorganized Debtors and Delta Petroleum General Recovery Trust for Entry of an Order Enforcing the Provisions of Debtors' Confirmed Plan and the Confirmation Order," (henceforth "Emergency Motion") filed November 30, 2012 in this case.

15.    The term "1994 BWAB ORRI" shall mean the document which was attached as Exhibit D to the Emergency Motion.

3

16.     The term "Operator" has the same meaning as the meaning of that term in the 1994 BWAB ORRI.

17.     The term "1999 BWAB ORRI" shall mean the document which was attached as Exhibit E to the Emergency Motion.

18.     The term "1999 Larson ORRI" shall mean the document which was attached as Exhibit F to the Emergency Motion.

19.     The term "ORRI," when used without the foregoing qualifiers, shall mean overriding royalty interest.

20.     The term "1999 NOI" shall mean the Net Operating Interest conveyed from Whiting to Delta in 1999, a copy of which is attached as Exhibit 1 hereto.

21.     The term "1996 Point A Unit Agreement" shall mean the unit agreement referred to on the last page of the 1999 NOI.

22.     The term "1996 Point A Operating Agreement" shall mean the operating agreement referred to on the last page of the 1999 NOI.

23.     "Point A Properties" shall mean the property described in the 1999 NOI.

24.     "Point A Unit" or "Unit" shall mean the oil and gas leases and other property which is subject to the 1999 Point A Unit Agreement.

25.     The term "Francis ORRI" shall mean the overriding royalty interest, a copy of which is attached as Exhibit 2 hereto.

## INTERROGATORIES

1.     Identify each agreement among the working interest owners of the Point A Unit relating to the formation and/or operation of the Unit and all documents assigning any interest therein to Delta, Delta's assumption of any obligations thereunder and any working interest

4

owners consent to Delta's assumption of such obligations, and every document evidencing those agreements, assumptions, and consents.

2.    Identify each assignment to Delta of any interest in the Point A Unit, any consent to such assignment by any working interest owner and the recording or filing information, if any, where such assignment was recorded in the real property records of any United States state county or filed with any federal agency.

3.    If any conveyances of interests have occurred since 1994 which affect the 1994 BWAB ORRI, 1999 BWAB ORRI, and 1999 Larson ORRI, please describe those conveyances and identify all documents evidencing those conveyances.

4.    If you contend that any subsequent conveyance affected the interests granted by the 1994 BWAB ORRI, describe in detail the effect of the subsequent conveyance on the earlier ORRI and identify all documents supporting your contention.

5.    Did Delta's representatives attend meetings or participate in telephone conferences, with one of more of the working interest owners as to operations on the Point A Unit, or provide any input into decisions with respect to operations by the working interest owners? If Delta provided any input into such decisions, describe how and by whom such information was provided and identify all documents reflecting that input, including minutes of any operating committee or other meeting of working interest owners.

6.    Identify all documents that evidence any transfer of funds from Whiting to Delta from 1999 to the present with respect to the Point A Unit, including all wire transfers, checks, vouchers, invoices, billing statements, account records, and cover letters transmitting same.

7.    Identify all documents evidencing amounts due to Delta, Larson or BWAB from 1994 to the present from the sale of oil and gas produced by the Point A Properties.

7571245 v1

8.    Identify all documents on which you rely in support of any claim that any ORRI owner was overpaid with respect to its interest in the production from the Point A properties.

9.    Have you or Delta received from Whiting any conveyance of any interest relating to the Point A Properties other than the 1999 NOI? If so, please describe the conveyance and identify all documents evidencing the conveyance.

10.    Please describe, including date and amount, all payments related to any overriding royalty interests in oil or natural gas production in the Point A Unit which Delta distributed and describe how those interests were calculated.

11.    Please describe, including date and amount, all overriding royalty interests in oil or natural gas production in the Point A Unit—such as the Francis ORRI—which Delta continued to pay during the pendency of its bankruptcy.

12.    Please describe, including date and amount, all overriding royalty interests in oil or natural gas production in the Point A Unit—such as the Francis ORRI—which Reorganized Debtors continued to pay after August 31, 2012, and identify all documents evidencing those overriding royalty interests and their recording in the real property records of any United States state or county or filing with any federal agency.

13.    Please describe what information was available to a hypothetical bona fide purchaser, in the exercise of reasonable prudence, of Delta's ownership of the Point A Properties.

14.    Are your responses to the requests for admission propounded to you in this case anything besides an unqualified admission? If so, please (a) identify the number of the request for admission; (b) state all facts upon which you base your response; (c) identify each person who has knowledge of those facts; (d) identify all documents and other tangible things that

6

support your response and identify the person who has custody, possession, or control over each document or thing.

15.    Set forth all calculations you have made in order to determine the amount that BWAB has been over paid in connection with the 1994 BWAB ORRI.

16.    Set forth the amount of each payment by Delta or Par to Kaiser – Francis Oil Company or its successor in connection with the Francis ORRI since January 1, 2012, and include the date of each payment.

17.    Please describe, including dates and amounts, the money that you have received that is attributable to the 1994 BWAB ORRI and 1999 BWAB ORRI from the time period between August 31, 2012 and December 21, 2012.

## REQUESTS FOR PRODUCTION

1.    Please produce all documents identified in response to interrogatories propounded to you in this case.

2.    Produce all emails, correspondence or other written communications between Delta and Whiting relating to the Point A Unit.

3.    With respect to the Point A Unit, produce all ledgers, books of account, accounting entries, joint interest billings, records of payments to joint interest owners, and ORRI owners whether in electronic or paper format.

4.    Produce all checks, wire transfers or other documents reflecting payments to Whiting by Delta on account of any negative cash flow in the Point Arguello Properties as required under the 1999 NOI.

5.    Produce all records, workpapers, adjustments, journal entries or other records relating to the "audit" of Delta's payments to ORRI owners described in the Declaration of Seth

7

7571245 v1

Bullock.

6.      Produce all emails, correspondence, notes or other documents reflecting communications with any present or former Delta employee concerning the calculation of amounts to ORRI owners in the Point Arguello Properties and any alleged error in such calculations.

7.      Produce all documents upon which the calculations that appear at Exhibit F to the Declaration of Seth Bullock and your answers to interrogatory 15, above, are based.

## REQUESTS FOR ADMISSION

1.      Please admit that Whiting holds legal title to the Point A Properties.

2.      Admit Whiting's interest in Point A Unit has not been recorded in real property records of any United States state or county.

3.      Admit Whiting is a party to the 1996 Point A Unit Agreement and the 1996 Point A Operating Agreement.

4.      Admit that the 1996 Point A Unit Agreement describes Whiting's interest in the unit as being subject to a 3.5% ORRI.

5.      Admit that the 3.5% ORRI interest referenced in the 1996 Point A Unit Agreement burdening Whiting's interest is the 1994 BWAB ORRI.

6.      Admit that Delta is not a party to the 1996 Point A Unit Agreement or the 1996 Point A Operating Agreement and no party to either agreement has consented to Delta's assumption of any rights or obligations under either agreement.

7.      Admit that from 1999 to the present, the oil and gas purchaser of production from Point A Unit has paid the proceeds of sale of such production to Whiting with respect to its 6.07 percent interest in the Unit.

8

7571245 v1

8.    Admit that the working interest owners of the Point A Unit objected to Whiting's transfer of legal title to its 6.07 percent interest in the Unit to Delta

9.    Admit that Delta did not record the 1999 NOI in any real property record of any United States state or county including Santa Barbara County, California.

10.    Admit that a hypothetical bona fide purchaser would discover in the exercise of reasonable diligence that Delta did not own record title to any interest in the Point A Unit.

11.    Admit that Delta could not convey its interest in the Point A Unit to a bona fide purchaser without notice because Delta did not own any record title interest in the Point A Unit.

12.    Please admit that all amounts paid pursuant to the 1994 BWAB ORRI, 1999 BWAB ORRI, and 1999 Larson ORRI relate to oil and not natural gas production.

13.    Please admit that beginning in 1999, Whiting sent the monies payable to BWAB and Larson pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, and the 1999 Larson ORRI to Delta for distribution to BWABand Larson.

14.    Please admit that beginning in 1999 and continuing through August 21, 2012, Delta delivered to BWAB and Larson the monies it received from Whiting for distribution to BWAB and Larson.

15.    Please admit that as of December 16, 2011, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

16.    Please admit that as of March 23, 2012, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

9

17.   Please admit that as of August 16, 2012, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

18.   Please admit that as of August 31, 2012, neither BWAB nor Larson were owed any money pursuant to the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

19.   Please admit that Delta is not aware of any novation agreement releasing Whiting from its obligations to pay the amounts earned by the 1994 BWAB ORRI and that Delta undertook such obligation to pay with BWAB's consent.

20.   Please admit that you did not overpay the sums due pursuant to either the 1994 BWAB ORRI, the 1999 BWAB ORRI, and the 1999 Larson ORRI.

21.   Please admit that neither BWAB nor Larson had a claim against Delta until:

    a.   after minerals were produced from the Point A Properties, and

    b.   after Whiting received production revenues from the sale of those minerals, and

    c.   after Whiting providing the funds to Delta for distribution of the amounts owed to BWAB or Larson and

    d.   after Delta failed to pay those funds to BWAB or Larson.

22.   Please admit that neither Debtors nor you informed BWAB or Larson or provided any notice in the Plan, disclosure materials, other notices, or filings with the Bankruptcy Court that you disputed the ownership of or entitlement to payments on account of the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI.

23.   Please admit that none of the amounts paid by Delta to BWAB or Larson on account of the 1994 BWAB ORRI, the 1999 BWAB ORRI, or the 1999 Larson ORRI were paid

10

under protest.

24.    Please admit that neither BWAB nor Larson was a Delta creditor on August 31,

2012.

25.    Please admit the authenticity of the 1994 BWAB ORRI, the 1999 BWAB ORRI,

the 1999 Larson ORRI, and the 1999 NOI.

---

Dated March 11, 2013          By:    /s/ Stuart N. Bennett
                                     Barry L. Wilkie, Esquire
                                     Stuart N. Bennett, Esquire
                                     Jones & Keller, P.C.
                                     1999 Broadway, Suite 3150
                                     Denver, CO 80202
                                     (303) 573-1600

                                     *Counsel for BWAB Limited Liability
                                     Company*

7571245 v1

# Exhibit 1

## CONVEYANCE AND ASSIGNMENT

WHITING PETROLEUM CORPORATION, a Delaware corporation, and WHITING PROGRAMS, INC., a Delaware corporation (collectively, the "Assignor") whose address is 1700 Broadway, Suite 2300, Denver, Colorado 80290, for TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby grant, convey, transfer and assign to DELTA PETROLEUM CORPORATION, a Colorado corporation ("Assignee"), whose address is 3310 Qwest Tower, 555 Seventeenth Street, Denver, Colorado 80202, a net operating interest (as herein defined) in, to and under the following:

(a) The oil, gas and mineral leases described on Exhibit "A" attached hereto (collectively, the "Leases"), including, without limitation working interests, overriding royalty interests, royalty interests and any other interests of a similar nature affecting the lands covered by the Leases. (collectively, the "Lands".)

(b) The wells described on Exhibit "A" or which are located on the Lands (collectively, the "Wells").

(c) All unitization, communitization, pooling, agreements, working interest units created by operating agreements, partnership agreements and orders covering the Leases and Lands, or any portion thereof, and the units and pooled or communitized areas created thereby, including the Federal units created by the Unit Agreements described on Exhibit "A" (collectively, the "Units") and the four partnerships created by the Partnership Agreements described on Exhibit "A" i.e., PAPCO, PANGL, GGP and PATC (collectively, the "Partnerships").

(d) The tangible personal property, tools, machinery, materials, pipelines, plants, gathering systems, equipment, fixtures and improvements, which are incident or attributable to the Leases, Lands, Wells or Units with the production, treatment, sale or disposal of hydrocarbons or water produced therefrom or attributable thereto, on the Effective Time (collectively, the "Equipment").

(e) The licenses, permits, contracts, agreements and other instruments owned by Seller (other than bonds posted by Seller) which concern and relate to any of the Leases, Lands, Wells, Units and/or Equipment, INSOFAR AND ONLY INSOFAR as same concern or relate to the Leases, Lands, Wells, Units and/or Equipment, or the operation thereof; including, without limitation, oil, gas and condensate purchase and sale contracts; permits,; rights-of- way; easements; licenses; servitudes; estates; surface leases; farmin and farmout agreements; division orders and transfer orders; bottomhole agreements; dry hole agreements; area-of- mutual interest agreements; salt water disposal agreements; acreage contribution agreements; operating agreements; balancing agreements and unit agreements; pooling agreements; pooling orders; communitization agreements; processing, gathering, compression and transportation agreements; facilities or equipment leases relating thereto or used or held for use in connection with the ownership or operation thereof or with the production, treatment, sale or disposal of hydrocarbons; and all other contracts and agreements related to the Leases, Lands, Wells, Units and/or Equipment.

(f) Originals or copies of all computer tapes and discs, files, records, information or data relating to the Interests in the possession of Seller, including, without limitation, title records (including abstracts of title, title opinions, certificate of title and title curative documents), accounting records and files, contracts, correspondence, production records, electric logs, core data, pressure data, decline curves, graphical production curves, drilling reports, well completion reports, drill stem test charts and reports, engineering reports, regulatory reports, and all related materials, INSOFAR AND ONLY INSOFAR as the foregoing items constitute materials that may be lawfully conveyed to Buyer (i.e., the materials are not subject to a proprietary agreement precluding their transfer to Buyer), and, to the extent transferable, all other contract rights, intangible rights (excluding Seller's trademarks and service marks), inchoate rights, choses in action, rights under warranties made by prior owners, manufacturers, vendors or other third parties, and rights accruing under applicable statutes of limitation or prescription, attributable to the Interests.

(g) All payments, and all rights to receive payments, with respect to the ownership of the production of hydrocarbons from or the conduct of operations on the Interests accruing after the Effective Time.

All of the properties, rights, and interests described in paragraphs (a) through (g) above are referred to herein as the "Interests."

This Conveyance and Assignment shall be effective as of April 1, 1999, at 7:00 a.m., local time (referred to herein as the "Effective Time").

The net operating interest ("NOI") herein conveyed and assigned is defined as the monthly payable positive or negative cash flow resulting to the Interests from the following eight step calculation:

(i) oil and gas sales revenue;
(ii) less royalties and overriding royalties;
(iii) less Unit lease operating expenses;
(iv) less severance, production or ad valorem taxes, if any;
(v) less capital expenditures;
(vi) less Unit fees to the Unit operator; and
(vii) plus the positive or less the negative cash flow from the Partnerships.
(viii) plus or minus any other miscellaneous costs or revenues that may be related to these interests or operations

After taking into account Assignor's retention of net abandonment costs (i.e. cost of abandonment less equipment salvage value) under Section 9.1 of that certain Purchase and Sale Agreement dated as of June 8, 1999, as amended by an Amendment to Purchase and Sale Agreement dated as of June 8, 1999, between Assignor and Assignee (as amended, the "Agreement"), and the maximum payment of $2,000,000 by Assignor to purchase the Preferred Stock to fund the Deficit as such terms are defined in Section 9.2 of such Agreement, the above eight step calculation may result in positive cash flow or negative cash flow. In the event of

positive cash flow, Assignor will pay the excess to Assignee; in the event of a negative cash flow, Assignee will pay the deficit to Assignor.

This Conveyance and Assignment is delivered pursuant to and subject to the Agreement. The Agreement contains certain covenants and obligations which survive the delivery of, and shall not be deemed merged into, this Conveyance and Assignment as and to the extent provided in the Agreement.

Dated this 1st day of December, 1999, but effective as of the Effective Time.

Attest:                                    WHITING PETROLEUM CORPORATION

s/Patricia J. Miller                       By:s/John R. Hazlett
Patricia J. Miller                             John R. Hazlett, Vice President
Corporate Secretary

Attest:                                    WHITING PROGRAMS, INC.

s/Patricia J. Miller                       By:s/John R. Hazlett
Patricia J. Miller                             John R. Hazlett, Vice President
Corporate Secretary

Attest:                                    DELTA PETROLEUM CORPORATION

s/Aleron H. Larson, Jr.                    By:s/Roger A. Parker
Aleron H. Larson, Jr.                          Roger A. Parker, President

STATE OF COLORADO          )
          CITY AND         )    ss.
COUNTY OF DENVER           )

The foregoing instrument was acknowledged before me this 1st day of December, 1999, by John R. Hazlett, Vice President of Whiting Petroleum Corporation and Whiting Programs, Inc., both Delaware corporations.

My Commission Expires: February 28, 2003

s/Jean E. Solot
Notary Public

STATE OF COLORADO          )
          CITY AND         )    ss.
COUNTY OF DENVER           )

The foregoing instrument was acknowledged before me this 1st day of December, 1999, by Roger A. Parker as the President of Delta Petroleum Corporation, a Colorado corporation.

My Commission Expires: February 28, 2003

s/Jean E. Solot
Notary Public

EXHIBIT "A"
POINT ARGUELLO FIELD
Offshore California

Attached to and made a part of that certain CONVEYANCE AND ASSIGNMENT between Whiting Petroleum Corporation, Assigor, and Delta Petroleum Corporation, Buyer, effective April 1, 1999.

I.

All of Seller's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%

3. Partnership Agreement for Ownership of Facilities- Gaviota Gas Plant Company dated October 1, 1984; Partnership Interest 5.7013%

II.

| PROPERTY NAME | WORKING INTEREST | NET REVENUE INTEREST |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of Seller's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

A. Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram N1 10-6 Santa Maria (CA 3- 1055).

B. Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A. Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

WELLS:

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A- 11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, (B-1WB-1, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C- 9, C-10 and C-11.

Subject to the following:

a. Offset Development and Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b. Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limit Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 5rN-84W and 55N-85W, Channel Island Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore, California.

c. Unit Operating Agreement Point Arguello Unit, Pacific Offshore, California, dated effective October 1, 1996 between Chevron U.S.A. Inc., Phillips Petroleum Company, Whiting Petroleum Corporation, Texaco Exploration and Production Inc., Sun Operating Limited Partnership, by Oryx Energy Company, its Managing General Partner, Pennnzoil Exploration & Production Company and Oxbow Energy, Inc.

# Exhibit 2

Recording requested by:
KAISER-FRANCIS OIL CO.

When recorded return to:
Kaiser-Francis Oil Company
P. O. Box 21468
Tulsa, OK 74121-1468
Attn: Bruce Kenney

2001-0077226
Recorded
Official Records
County Of
SANTA BARBARA
KENNETH A. PETTIT
Recorder
LARRY G. HERRERA
Assistant
02:07PM 07-Sep-2001

| REC FEE    22.00
| CC1 CON     1.00
|
|
|
|
| BSC
| Page 1 of 6

## ASSIGNMENT of OVERRIDING ROYALTY INTEREST

### (The "ASSIGNMENT")

TRANSFER TAX NOT MADE PART
OF THE PERMANENT RECORD

This Assignment is made and entered into this 25th day of June, July, 2001, between DFI TA PETROLEUM CORPORATION, a Colorado corporation, whose address is 555 17th Street, Suite 3310, Denver, Colorado, 80202, hereinafter referred to as Assignor, and Kaiser-Francis Oil Company whose address is P.O. Box 21468 Tulsa, OK 74121-1468, hereinafter referred to as Assignee.

NOW THEREFORE, IN CONSIDERATION of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Assignor does by these presents, assign, transfer and convey unto Assignee, an OVERRIDING ROYALTY INTEREST of five percent (5%) in and to the oil and gas leases and lands described on Exhibit "A" attached hereto and by this reference made a part hereof (the "Leases"), which shall burden any and all the oil, gas and other leased minerals produced, saved and sold from or allocated to the lands covered by said Leases, and any extensions or renewals thereof Said Overriding Royalty Interest shall be subject to the following terms and conditions.

1.    The Overriding Royalty Interest shall be free and clear of all development, production and operating expenses, however, said interests shall bear and pay currently its portion of the costs of transportation, compression, dehydration, and similar costs, gross production, severance, ad valorem taxes and all other taxes assessed against the gross production subject to said Overriding Royalty Interest.

2.    It is agreed that nothing contained herein shall impose upon Assignor, or its successors or assigns, any duty or obligation to develop or operate the Leases or any wells located thereon or maintain the Leases by payment of delay rentals, minimum royalties, shut-in royalty payments or any other similar payments necessary to keep the Leases in effect.

3.    Assignor shall have the exclusive right as set forth in the Leases, to pool said Leases and the lands covered thereby, or any part thereof, with other lands and leases into voluntary units, or units established by any governmental agency having jurisdiction over said Leases and lands, and if said Leases are so pooled, the Overriding Royalty Interest shall burden only the production allocated to the Leases and lands by virtue of the allocation provisions of pooling and/or other agreements governing the development of the lands or pooled area.

DEF 00131

4.    The Overriding Royalty Interest conveyed herein shall burden only the interest of Assignor, and its successors and assigns, in the Leases and shall be reduced to the proportion that the leasehold interest of Assignor in said Leases bears to the total leasehold estate in the lands covered by the Leases. In addition, the Overriding Royalty Interest shall be subject to further proportionate reduction should the Leases cover less than the full, undivided oil, gas and mineral estate in the lands covered thereby.

5.    This Assignment is made with no representations or warranties of title either express or implied except those arising by, through, or under Assignor and shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors, representatives and assigns.

EXECUTED this 25ᵗʰ day of June, 2001, but effective for all purposes as of December 1, 1999 at 7:00 AM at the location of the Leases, hereinafter referred to as the EFFECTIVE DATE.


ASSIGNOR:

DELTA PETROLEUM CORPORATION                    Attest:

                                                                       (Seal)

By: _____    By: _____
Name: Roger A. Parker
Title: President/CEO


ASSIGNEE:

KAISER-FRANCIS OIL COMPANY                    Attest:
                                                                       (Seal)

By: _____    By: _____
Name: James A. Willis                              Bruce A. Kenney
By: Exec. Vice-President                        Assistant Secretary


                                                                       DEF 00132

**ACKNOWLEDGMENTS**

State of Colorado    }
                     }
County of Denver     }

The foregoing instrument was acknowledged before me this 25ᵗʰ day of July 2001 by Roger A. Parks to be known to be the President/CEO of DEI.FA PETROLEUM CORPORATION, a Colorado corporation, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires: Feb 28, 2003

Jean E. Solot
Notary Public: JEAN E. SOLOT
Address: 3155 S. Newport St
         Denver, CO 80224

State of Oklahoma    }
                     }
County of Tulsa      }

The foregoing instrument was acknowledged before me this 25 day of July, 2001 by James A. Willis, for the purposes and in the capacity stated therein as the free act and deed of said Corporation.

My Commission Expires:

Notary Public Oklahoma
OFFICIAL SEAL
SANDRA K. TRIMBLE
Tulsa County
Commission Expires 05/04/2005

Sandra K. Trimble
Notary Public: _____

TRUST/DEI.FA/DELIA/ORRI.REV.DOC

DEF 00133

EXHIBIT " A "
POINT ARGUELLO FIELD
Offshore California

I.

All of Debtor's right, title and interest in and to the following described partnerships:

1. Partnership Agreement-Point Arguello Pipeline Company dated August 2, 1984; Partnership Interest 5.8036%.

2. Partnership Agreement-Point Arguello Natural Gas Company dated September 1, 1984; Partnership Interest 6.0652%.

3. Partnership Agreement for Ownership of Facilities-Gaviota Gas Plant Company dated October 1,1984; Partnership Interest 5.7013%.

II.

LEASE:

All of Debtor's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

A. Oil and Gas Lease dated July 2, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company, bearing Serial No. OCS-P 0452

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 466, All that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria. (CA3-2056).

Subject to the following:

a. Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators covering the Rocky Point Unit;

b. Unit Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin as non-operators, covering the Rocky Point Unit;

c. Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement.

LEASE:

All of Debtor's right, title and interest in and to the leasehold estate created by the following described oil and gas lease:

D. Oil and Gas Lease dated May 19, 1981 from Bureau of Land Management To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0453.

Page 1 of 3

DEF 00134

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Block 467, all that certain portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6, Santa Maria

Subject to the following:

a.   Lease Operating Agreement dated July 1, 1981;

b.   Unit Agreement dated February 15, 1985;

c.   Rocky Point Unit Operating Agreement dated February 1, 1985.

LEASE:

A.   Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management to Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

The E/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NI 10-6 Santa Maria (CA 3-1055).

Subject to the following:

a.   Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.   Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.   Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.   Letter Agreement dated February 1, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit.

III,

| PROPERTY NAME | Working Interest | Net Revenue Interest |
|---|---|---|
| Point Arguello Unit | .06065210 | .04842500 |

All of the Debtor's right title and interest in and to the leasehold estate created by the following described oil and gas leases:

A.   Oil and Gas Lease dated July 1, 1981 from Bureau of Land Management To Chevron U.S.A. Inc. and Phillips Petroleum Company bearing Serial No. OCS-P 0451.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

Page 2 of 3

DEF 00135

The W/2 of Block 465, All that portion seaward of the three geographical mile line, OCS Official Protraction Diagram NII 0-6 Santa Maria (CA 3-1055).

B.    Oil and Gas Lease dated September 1, 1979 from Bureau of Land Management to Chevron U.S.A., Inc., Phillips Petroleum Company, Champlin Petroleum Company and ICI Delaware Inc. bearing Serial No. OCS-P 0316.

INSOFAR AND ONLY INSOFAR AS SAID LEASE AND INTEREST COVERS THE FOLLOWING DESCRIBED LAND:

All of Block 55N-84W, OCS Leasing Map, Channel Island Area, CAL-Map No. 64 (CA 300316).

WELLS:

A-1, A-2, A-3, A-4, A-5, A-6, A-7, A-8, A-9, A-10, A-11, A-12, A-13, A-14, A-15, A-16, A-16WB01, A-17, A-18, A-18WB01, A-19, B-1, B-1WB01, B-2, B-2WB01, B-3, B-6, B-8, B-9, B-9WB01, B-10, B-11, B-12, B-13, B-14, B-15, B-16, B-17, B-18, C-1, C-2, C-3, C-4, C-5, C-7, C-8, C-9, C-10, and C-11.

Subject to the following:

a.    Offset Development Well and Linewell Agreement dated September 12, 1988 between Chevron, Phillips and Union Pacific Corp.;

b.    Unit Operating Agreement dated February 1, 1985 between Chevron, operator and Phillips and Champlin, as non-operators, covering the Rocky Point Unit;

c.    Unit Agreement dated February 1, 1985 between Chevron, Phillips and Champlin covering the Rocky Point Unit;

d.    Letter Agreement dated February 6, 1985 between Chevron, Champlin and Phillips amending the Unit Operating Agreement of Rocky Point Unit;

e.    Operating Agreement dated July 1, 1979 between Chevron, operator and Phillips and Champlin as non-operators, covering all of Block 55N-84W and the Hermosa Platform;

f.    Unit Agreement for Outer Continental Shelf Exploration, development and Production Operations on the Point Arguello Unit dated effective October 1, 1996 between Chevron U.S.A., operator and Phillips Petroleum, Whiting Petroleum, Texaco Exploration and Production, Sun Operating Limited Partnership, Pennzoil Exploration and Production, Koch Industries, and Oxbow Energy parts of Blocks 55N, 84W and 55N, 85W, Channel Islands Area and Parts of Blocks 464 and 465, Santa Maria Basin Area, Offshore California,

Page 3 of 3

DEF 00136

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| DELTA PETROLUEM, et al., | : | Case No. 11-14006 (KJC) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | |
| DELTA PETROLEUM GENERAL | : | |
| RECOVERY TRUST and PAR | : | |
| PETROLEUM CORPORATION, | : | |
| | : | Adv. Pro No. 12-50877 (KJC) |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| ALERON LARSON, JR., | : | |
| | : | |
| Defendant, Counterclaimant. | : | |

## NOTICE OF SERVICE OF DISCOVERY

I, Raymond H. Lemisch, Esquire, hereby certify that on March 11, 2013, a true and complete

copy of the following documents were served via First Class Mail, postage prepaid, or Hand Delivery

upon the parties named in the attached service list:

1. *Aleron Larson, Jr.'s First Set of Written Discovery Requests to Delta Petroleum General Recovery Trust; and*

2. *Aleron Larson, Jr.'s First Set of Written Discovery Requests to Par Petroleum Corporation.*

Dated: March 11, 2013

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

By:    */s/ Raymond H. Lemisch*
Raymond H. Lemisch, Esquire (No. 4204)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010 telephone
(302) 442-7012 facsimile
rlemisch@beneschlaw.com

- and -

7571222 v1

Barry L. Wilkie, Esquire
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO  80202
(303) 573-1600  telephone
(303) 573-8133  facsimile
bwilkie@joneskeller.com
sbennett@joneskeller.com

*Counsel to Aleron Larson, Jr.*

7571222 v1

**Service List**

| *Via Hand Delivery* | *Via Regular Mail* |
|---|---|
| Anthony W. Clark, Esquire | Ron Meisler, Esquire |
| Kristhy M. Peguero, Esquire | Ebba Gebisa, Esquire |
| Skadden, Arps, Slate, Meagher & Flom LLP | Skadden, Arps, Slate, Meagher & Flom LLP |
| One Rodney Square | 155 North Wacker Drive |
| P.O. Box 636 | Chicago, Illinois 60606-1720 |
| Wilmington, Delaware 19899-0636 | |

7571222 v1

# Exhibit 11

# JONES&KELLER
ATTORNEYS AT LAW

BARRY L. WILKIE
ATTORNEY AT LAW

BWILKIE@JONESKELLER.COM

March 11, 2013

**SENT VIA EMAIL AND U.S. FIRST CLASS MAIL**

Anthony W. Clark
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE  19899

Re:    Delta Petroleum General Recovery Trust, et al. v. BWAB and v. Larson.

Dear Mr. Clark:

We are serving Plaintiffs with the written discovery requests which accompany this correspondence.  After we receive substantive responses and the documents requested, we intend to take the depositions of Mr. Seth Bullock and of Whiting Petroleum Corporation.  It is also likely that we will wish to take a deposition of each of the plaintiffs.

Please give us some dates when Mr. Bullock can be available for a deposition in the latter part of April or even early May.  We will be contacting Whiting Petroleum in this regard as well.

Sincerely,

JONES & KELLER, P.C.

Barry L. Wilkie

cc: Stu Bennett