**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| DELTA PETROLEUM, <u>et al.</u>, | : | Case No. 11-14006 (KJC) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| DELTA PETROLEUM GENERAL | : |  |
| RECOVERY TRUST, and PAR | : |  |
| PETROLEUM CORPORATION, | : |  |
|  | : | Adv. Pro No. 12-50898 (KJC) |
| Plaintiffs, | : |  |
| v. | : |  |
|  | : |  |
| BWAB LIMITED LIABILITY COMPANY, | : |  |
|  | x |  |
| Defendant, Counterclaimant. |  |  |

**BWAB'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR**
**SUMMARY JUDGMENT**

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

Raymond H. Lemisch (No. 4204)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
(302) 442-7010

JONES & KELLER, P.C.

Barry L. Wilkie (Colo. Bar No. 10751)
Stuart N. Bennett (Colo. Bar No. 5682)
1999 Broadway, Suite 3150
Denver, CO 80202
(303) 573-1600

*Counsel to BWAB Limited Liability Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... 3

PRELIMINARY STATEMENT ....................................................................................... 4

SUMMARY OF ARGUMENT ......................................................................................... 6

STATEMENT OF FACTS ................................................................................................ 9

ARGUMENT .................................................................................................................... 20

    A.    The 1994 ORRI is BWAB's property that BWAB received from Whiting, and there is no legitimate reason that BWAB should not continue to own and possess the 1994 ORRI. .............................................................................. 20

    B.    The 1994 ORRI was not reduced by 1999 conveyances.................................... 24

    C.    The 1999 ORRI is likewise a real property interest that is not Delta's property. ......................................................................................................... 26

    D.    The 1999 ORRI was not a transfer that could be perfected versus a bona fide purchaser, so it cannot be avoided and it remains BWAB's property. .......... 29

    E.    Mr. Bullock has no personal knowledge concerning the relevant events in this case, and the Court should therefore disregard Plaintiffs' Motion as it relies on Mr. Bullock's speculation. ...................................................................... 32

    F.    Plaintiffs' discovery responses to date—or lack thereof—demonstrate the Court should grant the Cross-Motion.................................................................. 33

CONCLUSION ................................................................................................................ 34

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Amaro*, 213 Cal. App. 4th 1102 (Cal. App. 2d Dist. 2013) ................. 30, 31, 32

*B. Cohen & Sons Caterers, Inc. v. New Plan Realty Trust* (In re B. Cohen & Sons Caterers, Inc.), 97 B.R. 808, 817 (Bankr. E.D. Pa. 1989)................................ 28

*Bachrach v. Salzman*, 981 P.2d 219 (Colo. Ct. App. 1999) ............................. 23

*Glenn Arms Associates v. Century Mortgage & Inv. Corp.*, 680 P.2d 1315 (Colo. Ct. App. 1984) ............................................................................................................ 23

*Harris v. 25 Hill Properties, Inc.*, 2007 WL 2774483 (Cal. Ct. App. Sept. 25, 2007)..... 20

*Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424 (9th Cir. 1957) ......................... 20

*In re Bake-Line Group, LLC*, 359 B.R. 556 (Bankr. D. Del. 2007) ................................ 22

*In re Colonial Ctr., Inc.*, 156 B.R. 452 (Bankr. E.D. Pa. 1993) ...................................... 22

*In re Dyckman*, 2012 WL 1302613 (Bankr. M.D. Pa. Apr. 16, 2012) ............................ 22

*In re Foothills Texas, Inc.*, 476 B.R. 143 (Bankr. D. Del. 2012)...................................... 20

*In re Nielsen*, 1998 WL 3379 (Bankr. D. Minn. Jan. 7, 1998) ........................................ 22

*In re Silver Fox, LLC*, 2010 WL 2572602 (D.N.J. June 24, 2010)............................ 27, 28

*Moore v. Tristar Oil & Gas Corp.*, 528 F. Supp. 296 (S.D.N.Y. 1981) .......................... 20

*Reiner v. Danial*, 211 Cal. App. 3d 682 (Cal. App. 2d Dist. 1989).......................... 30, 31

*Richmond Wholesale Meat Co. v. Franchise Tax Bd.*, 42 Cal. Rptr. 2d 854 (Cal. App. 4th 1995) ............................................................................................................ 26

*Scott v. Boma Inv. Co.*, 72 P.2d 274 (Colo. 1937).......................................................... 23

**Statutes**

Cal. Civ. Code § 1060........................................................................................................ 29

Cal. Civ. Code § 1532........................................................................................................ 22

Cal. Civ. Code § 760.020(a) ............................................................................................. 30

Cal. Pub. Res. Code § 3316.11 ......................................................................................... 26

Cal. Stats. 1969, c. 155, p. 409, § 2 ................................................................................. 30

California Code of Civil Procedure § 1060 ............................................................... 30, 31

3

BWAB Limited Liability Company ("BWAB"), by and through its attorneys, submits this Memorandum in Support of its Cross-Motion for Summary Judgment ("Cross-Motion").

## PRELIMINARY STATEMENT

In this case, the Plaintiffs seek a declaration that Delta Petroleum Corporation's ("Delta") Plan of Reorganization (the "Plan") extinguished an overriding royalty interest that BWAB has owned since 1994, five years before Delta's 1999 acquisition of an interest in the underlying oil and gas properties. Plaintiffs also seek to extinguish under the Plan or avoid under Bankruptcy Code §544(a)(3) an overriding royalty interest that Delta itself granted to BWAB as consideration for BWAB's assistance in Delta's acquisition of the underlying oil and gas interests. On February 12, 2013, Plaintiffs moved for summary judgment on their claims and filed a memorandum in support thereof (Adv. D.I. 34-35). On March 12, 2013, BWAB filed its opposition to Plaintiffs' Motion for Summary Judgment (Adv. D.I. 44, henceforth "Opposition") as well as a Motion to Permit Discovery Pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(d) prior to the court's decision on Plaintiffs' Motion (henceforth "56(d) Motion") (Adv. D.I. 44-45). On March 26, 2013, Plaintiffs filed their Objection to BWAB's 56(d) Motion (Adv. D.I. 48). On April 5, 2013, BWAB filed its reply in support of its 56(d) Motion (Adv. D.I. 51) and Plaintiffs filed their reply in support of their Motion for Summary Judgment (Adv. D.I. 52). On May 29, 2013, the Court held a hearing on the 56(d) Motion and granted BWAB until June 21, 2013 to supplement its opposition to Plaintiffs' Summary Judgment Motion and to file, if it so chose, a cross-motion for summary judgment.

4

BWAB served written discovery requests on Plaintiffs on March 11, 2013 to which Plaintiffs responded on April 10, 2013.  During the week of June 3, 2013, the parties conducted the depositions of party representatives and a former employee of Delta.

This memorandum brief supplements BWAB's Opposition to Plaintiffs' Motion for Summary Judgment in light of the discovery taken since the March 12 filing of BWAB's Opposition and supports BWAB's Cross-Motion for Summary Judgment filed contemporaneously herewith (the "Cross-Motion").

BWAB's Cross-Motion is based upon its affirmative defenses and counterclaims raised in its answer, affirmative defenses and counterclaims filed January 18, 2013 (Adv. D.I. 25) and its amended answer, affirmative defenses and counterclaims filed January 30, 2013 (Adv. D.I. 29).  BWAB has a counterclaim (the Fourth) for declaratory judgment that the 1994 and 1999 BWAB ORRIs are not extinguished, stripped or avoided by the confirmation order in Delta's bankruptcy, and that the interests are owned by BWAB and are in full force and effect, unaffected by the Confirmation Order.

The first three counterclaims raise three separate legal grounds to recover from Plaintiffs the monies that are due and payable by Delta with respect to the 1994 and 1999 ORRIs, but which have either simply been withheld without justification or excuse or which have been escrowed pursuant to the parties' stipulation (D.I. 1208).  The three counterclaims are for "money had and received" (First Counterclaim); for conversion (Second Counterclaim); and for restitution based upon unjust enrichment (Third Counterclaim).  BWAB's affirmative defenses arise in part out of Delta's pre- and post-filing conduct of paying BWAB's ORRIs without objection for 18 years in the case of the

5

1994 ORRI and 13 years with respect to the 1999 ORRI.  Its defenses are also based upon Delta's conduct during the bankruptcy of listing the ORRIs as real property on its Schedule of Assets and Liabilities ("Schedules"), of listing BWAB as an owner of its ORRIs on the Schedules, of failing to give BWAB any notice of any objection or dispute with respect thereto, seeking and obtaining court approval for the payment of pre- and post-petition royalties, and making payments to BWAB pursuant to the court's authorization.  Based on these actions, BWAB asserts affirmative defenses of estoppel, laches, unclean hands, waiver, ratification, account stated, violation of due process and violations of public policy.

The indisputable facts upon which BWAB's Cross-Motion is based are set out in detail in its Opposition to Plaintiffs' Motion for Summary Judgment and the declarations and exhibits filed in support thereof.  They will not be repeated herein, but appropriate references to the materials filed with the opposition will be provided.  In addition, supplementary materials from discovery taken since the filing of BWAB's Opposition will be provided herein.

## SUMMARY OF ARGUMENT

1.      BWAB obtained the 1994 ORRI with respect to the Point Arguello Unit from Whiting Petroleum Corporation ("Whiting") in December, 1994.  The 1994 ORRI is a properly perfected real property interest, but whether real or personal, it is BWAB's own property and is not now and has never been the property of Delta.  Indeed, the interest of Delta and the Reorganized debtors in the Point Arguello Unit was expressly made junior to and subject to BWAB's interest when Delta acquired its property.  Nothing in Delta's chapter 11 case or the confirmation of the Plan can extinguish

6

BWAB's separate property or convert its property into property of the Reorganized Debtors.

2.      The 1999 ORRI is a real property interest, as is Delta's Net Operating Interest ("NOI") and Plaintiffs are estopped to deny otherwise.  Unlike the 1994 ORRI, however, the 1999 ORRI is not a perfected real property interest because it was not recorded.  There is, however, no basis to avoid the 1999 ORRI under Section 544(a)(3) of the Code.  Delta's NOI in the Point Arguello Unit was, itself, not perfected by recording, nor was its predecessor's interest, from which Delta received its NOI.  As such, any effort to record the 1999 ORRI would have merely resulted in a wild deed, outside of the chain of title.  Recording the 1999 ORRI would therefore not have perfected it against a hypothetical *bona fide* purchaser which is a prerequisite to avoidance under Section 544(a)(3).

3.      The Plaintiffs argue that the 1994 ORRI and the 1999 ORRI were nothing more than contractual rights to payment and as such were prepetition unsecured claims that were extinguished upon confirmation of the Plan.  Even if construed as personal property interests, the 1994 and 1999 ORRIs were still conveyances of property and are still BWAB's separate property.  Characterizing the interest as personal does not change the property interest into a contractual interest.  Neither the 1994 nor the 1999 interests were part of Delta's assets and neither interest could have been extinguished by Delta's Plan.  Moreover, Delta paid BWAB timely all funds owned by BWAB, and therefore due to BWAB under the 1994 and 1999 ORRIs from the monies it received from Whiting until after confirmation of the Plan so at no time, either pre- or post-petition, did BWAB have a claim in the chapter 11 case.

7

4.      Plaintiffs also claim that BWAB was overpaid with respect to the 1994 ORRI.  It is indisputable that BWAB and Whiting entered into a written agreement in 1997 setting forth the proper calculation of the 1994 ORRI.  BWAB was paid consistently with the 1997 agreement with Whiting.  While it is disputed whether Delta actually assumed the obligation to pay BWAB, it is undisputed that BWAB never released Whiting from the obligation to pay and never consented to any amendment of its rights under the 1994 ORRI and the 1997 Agreement with Whiting.  Plaintiffs' position that subsequent conveyances from Delta reduced an earlier conveyance in 1994 from Whiting, thus leading to the overpayment of the 1994 ORRI, is incorrect, runs contrary to the law of conveyancing, and is inconsistent with the plain language of the 1994 conveyance.

5.      Finally, all sums Delta received from Whiting post-petition with respect to the 1994 ORRI were as trustee or nominee for payment of the funds to BWAB.  Delta never had any interest itself in the funds and would breach the trust relationship and would convert property belonging to BWAB if the funds were now disgorged.  With respect to the 1999 ORRI, Delta was obligated to pay the production revenues earned by the overriding royalty to BWAB, having previously conveyed such property to BWAB and Delta has no basis to avoid BWAB's interest or convert BWAB's funds to its own.  Moreover, as to both ORRIs, the Debtor sought and obtained court approval to make such payments post-petition and such payments were made in the ordinary course of business.

6.      There is no basis for Plaintiffs' continued conversion of BWAB's property, and BWAB is entitled to summary judgment on its counterclaims adjudicating and decreeing that BWAB is entitled to all sums wrongfully withheld by Plaintiffs and

8

that BWAB is the lawful owner of both the 1994 and 1999 ORRIs unaffected by the order of confirmation of Delta's Bankruptcy Plan.

### STATEMENT OF FACTS

1.      Given the similarities between the issues to be decided in this Cross-Motion and the facts set forth in BWAB's Opposition to Plaintiffs' Motion for Summary Judgment, BWAB incorporates the facts asserted in the Opposition as if fully set forth herein.

2.      The property at issue in this case is a unitized property made up of federal government leases known as the "Point Arguello Properties," which are defined at Exhibit 1 to the Declaration of Steven Roitman ("Roitman Dec.") which is attached to the Opposition as Exhibit A.

3.      In 1994, BWAB's affiliate BWAB Incorporated acquired an option to purchase a large number of properties from the Union Pacific Resources Corp, including the Point Arguello Properties.  The option to purchase such properties was later assigned to Whiting pursuant to a letter agreement dated July 28, 1994 ("Whiting Letter Agreement"), between Whiting and BWAB Incorporated (Roitman Dec. at Ex. 2).

4.      As part of the consideration for the assignment of the option to Whiting, BWAB had the option of receiving an assignment of either an undivided 6.5% of the net rights acquired by Whiting, or "a proportionately reduced 3.5% **overriding royalty interest out of the net revenue interest acquired by Whiting**", after Whiting purchased the Point Arguello Properties from Union Pacific Resources Corp. (Roitman Dec. at Ex. 2 at ¶ 2, emphasis added).  The assignment was to be "in recordable form and containing warranties of title, by, through and under Whiting, but not otherwise." (Roitman Dec. at

9

Ex. 2 at ¶ 2).  BWAB Incorporated also had the right to elect to have its overriding

royalty interest "**conveyed to another of its affiliates**." (Roitman Dec. at Ex. 6 at ¶ 6,

emphasis added).

5.      The Whiting Letter Agreement also provided as to such overriding royalty

interest, Whiting would receive all net revenues payable with respect to production from

the Properties; that BWAB  would execute division orders, transfer orders or other

agreements required by the operator or any purchasers of the production from the

Properties so that all revenue accruing to BWAB's interest would be paid to Whiting and

within fifteen days after Whiting's receipt of the funds Whiting would pay and account

monthly to BWAB for its net share of revenues (Roitman Dec. at Ex. 2 at ¶ 4).  Because

BWAB elected to receive the 3.5% overriding royalty interest, Whiting would not deduct

from its payments to BWAB any expenses other than the landowners royalty.

6.      The Whiting Letter Agreement further  provided in relevant part that: "If

in the future, ….(ii)Whiting is late in its payments to BWAB on three consecutive

occasions **BWAB may elect to have its net share of revenues paid directly to it by the

operator or the purchasers of production from the Properties**."  (Roitman Dec. at Ex.

2 at ¶ 5, emphasis added).

7.      Whiting exercised the option and acquired the Point Arguello Properties

on or about December 16, 1994, pursuant to the Whiting Letter Agreement. Upon its

acquisition of such properties, Whiting executed and delivered to BWAB, an affiliate of

BWAB Incorporated, an Assignment of Overriding Royalty dated December 16, 1994 in

the Point Arguello Properties (henceforth "1994 BWAB ORRI," *see* Roitman Dec. at Ex.

3).  A copy of the 1994 BWAB ORRI was recorded in the Official Records of the County

10

of Santa Barbara, California on January 25, 1995 (Roitman Dec. at ¶ 11). The 1994

BWAB ORRI was also filed with the Minerals Management Service, Pacific OCS

Region, on January 11, 1995 (Roitman Dec. at Ex. 4). Whiting acquired its interest in the

Point Arguello Properties as a direct result of BWAB's efforts (Roitman Dec. at ¶ 11).

Both Whiting's interest and BWAB's 1994 ORRI in the Point Arguello Properties were

earned or purchased 5 years before Delta ever had any kind of ownership interest (*id.*).

 8. The terms and conditions of the 1994 BWAB ORRI were consistent with

the Whiting Letter Agreement. As required by the Whiting Letter Agreement, the 1994

BWAB ORRI contained the following language or provisions:

 a. "Assignment of Interest: Whiting does hereby **grant, convey, assign, set over and deliver to BWAB an overriding royalty** consisting of an undivided Three and One-Half Percent (3.5%) interest in Whiting's [*i.e.* not Delta's] Net Revenue Interest from the Subject Properties, to be determined as set forth below. As used herein, the term 'Net Revenues' to the BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional or percentage share of Hydrocarbons from the Subject Properties, **after the deduction of** all lessors royalties, **overriding royalties, and other burdens and payments out of the gross production that burden Whiting's [*i.e.* not Delta's] fractional or percentage share**, and (B) the sum of Whiting's fractional or percentage share of third party (i) transportation expenses, (ii) treatment and processing expenses, (iii) compression expenses, and (iv) severance taxes, occupation taxes, and other like taxes based on the production of Hydrocarbons…." (Roitman Dec. at Ex. 4 at ¶ 1, emphasis and bracketed content added).

 b. Although the conveyance contemplated that Whiting would initially receive BWAB's share of net revenues earned from production of oil and gas from the Point Arguello Properties, it specifically required: "On or before the 15th day of each calendar month commencing January 15, 1995, Whiting shall remit to BWAB, …BWAB's Interest attributable to the Subject Properties as to revenues received by Whiting." (Roitman Dec. at Ex. 4 at ¶ 2.b.). If BWAB did not timely receive payment from Whiting of BWAB's share of revenues from production for three consecutive months then:

"BWAB shall have the right to require, where practicable, direct payments to BWAB by the operator(s) or purchasers(s) if…(ii) Whiting is late in making payments to BWAB … for three consecutive months." (Roitman Dec. at Ex. 4 at ¶ 2.c.).

c.   Whiting received a right of first refusal to purchase the property conveyed by the 1994 BWAB ORRI in the event BWAB elected to transfer or convey its interest to a non BWAB affiliate. (Roitman Dec. at Ex. 4 at ¶ 4).

d.   "Special Warranty of Title. Whiting warrants title to the BWAB Interest herein conveyed as against all persons claiming by, through or under Whiting, but not otherwise."  (Roitman Dec. at Ex. 4 at ¶ 6).

9.      During the fall of 1996, some or all of the leases comprising the Point Arguello Property were unitized into the Point Arguello Unit pursuant to a Unit Agreement dated effective October 1, 1996, between Whiting and a number of other working interest owners (henceforth "Unit Agreement," *see* Roitman Dec. at Ex. 1 at 2). The Unit Agreement, by its terms, describes covenants that run "with the land" to which the Unit Agreement pertains (*see* Transcript of Deposition of Kevin Nanke[1] (henceforth "Nanke Depo.") attached hereto as Exhibit A at 24:12-15; *id.* at 28:1-14; *id.* at Exh. 19, ¶ 21.1).  As a consequence of the unitization, BWAB and Whiting negotiated the effect of that unitization on the calculation of the amounts earned by BWAB from the 1994 BWAB ORRI.  Those negotiations resulted in an agreement dated June 25, 1997, which sets out in detail BWAB's percentage interest in the production proceeds generated by Whiting's working interest in the Point Arguello Unit, out of which the 1994 BWAB ORRI is carved (henceforth "BWAB/Whiting 1997 Agreement," *see* Roitman Dec. at Ex. 5).

---

[1]For brevity, BWAB only includes in the attached deposition transcript exhibits the relevant portions of those transcripts.  Additionally, for the Court's convenience, BWAB has included a master list of exhibits generated by the court reporters in this case as Exhibit A-1 hereto, along with the deposition exhibits referenced herein.

10.    Following Whiting's delivery of the 1994 BWAB ORRI conveyance to BWAB, Whiting received—for the benefit of BWAB—BWAB's monthly share of proceeds from the sale of hydrocarbons (virtually all of which were oil) produced from the Point Arguello Properties, and delivered them directly to BWAB on a monthly basis until late in 1999 or early 2000.  These sums included the royalties calculated pursuant to the BWAB/Whiting 1997 Agreement.  Thereafter, presumably based upon the Purchase Agreement and Amendment (as defined in the Bullock Declaration, attached to Plaintiffs' Motion for Summary Judgment) between Delta and Whiting, Whiting delivered such proceeds (as calculated pursuant to the BWAB/Whiting 1997 Agreement) to Delta for delivery to BWAB in the ordinary course of business.  According to Delta's Chief Financial Officer at the time, the method for paying BWAB was calculated as it had been at Whiting in accordance with an excel spreadsheet that he obtained directly from Whiting (Nanke Depo. at 74:14-25).

11.    BWAB has had no objection to such arrangement between Whiting and Delta as long as BWAB timely received its production proceeds.  BWAB was not a party to the Purchase Agreement and Amendment between Delta and Whiting.  BWAB did not release Whiting or the operator of the Point Arguello Properties from their  obligations under the 1994 BWAB ORRI conveyance to pay to BWAB its share of production revenues owned pursuant to the 1994 BWAB ORRI.  Further, BWAB has the right to demand of the operator to pay BWAB directly (Roitman Dec. at ¶ 12; *id.* at Ex. 4 at ¶ 2.c.).

13

12.     During the latter half of 1999, pursuant to the Purchase Agreement and Amendment, Delta attempted to acquire Whiting's ownership interest in the Point Arguello Properties (Roitman Dec. at ¶ 18).

13.     BWAB assisted Delta in those efforts pursuant to an Agreement dated April 29, 1999, but made effective as of April 1, 1999 (henceforth "BWAB Fee Agreement," *see* Roitman Dec. at Ex. 6).  According to the terms of the BWAB Fee Agreement, if Delta acquired a net operating interest in the property described on Exhibit A thereto, including the Point Arguello Unit, Delta would convey to BWAB an overriding royalty interest in the Point Arguello Property "calculated as 3% of the actual gross revenue generated from and accrued to Delta's interest." (Roitman Dec. at Ex. 6 at ¶ 3(2))**.**

14.     Due in part to the efforts of BWAB, Delta was able to enter into the June 8, 1999 Purchase and Sale Agreement with Whiting (*see* Declaration of Seth Bullock, Adv. D.I. 36 (henceforth "Bullock Dec.") at ¶ 9).  If successfully closed, the transaction as initially contemplated by the Purchase and Sale Agreement would have resulted in Delta's acquisition of all of Whiting's legal and beneficial interest in the Point Arguello Properties, including legal title (Nanke Depo. at 14:25-15:5; Transcript of Deposition of Seth Bullock (attached hereto as Exhibit B, henceforth "Bullock Depo.") at 86:24-87:9 (the Purchase and Sale Agreement relates to all the seller's interest in the oil and gas leases described on Exhibit A thereto)).

15.     Kevin Nanke was employed at Delta for 17 years (Nanke Depo. at 7:21-23).  During that time, he served as controller, Chief Financial Officer, and treasurer of Delta.  *Id.* at 8:4-21.

14

16.     Mr. Nanke confirmed that Delta initially contemplated the purchase from Whiting of "a direct working interest in the Point Arguello acquisition." Nanke Depo. at 15:3-5.

17.     Whiting was unable, however, to obtain the consents of the other working interest owners in the Point Arguello Properties to the transfer of Whiting's legal ownership to the property because of concerns that Delta did not have the financial strength necessary to fulfill Whiting's working interest obligations, particularly those relating to plugging and abandonment of the offshore wells and platforms (Nanke Depo. at 15:13-20; Roitman Dec. at ¶ 21).  The other working interest owners had no objection, however, if Whiting conveyed to Delta all of its ownership in the Point Arguello Properties, **except for legal title** (Roitman Dec. at ¶ 21).

18.     As a result, the Purchase Agreement was amended by an Amendment dated June 8, 1999, and was eventually closed in December of 1999, when Whiting executed and delivered to Delta a Conveyance and Assignment dated December 1, 1999, pursuant to which Whiting conveyed what was labeled a Net Operating Interest in the Point Arguello Properties to Delta (henceforth the "1999 Delta NOI," *see* Roitman Dec. at Ex. 7).

19.     The Amendment to the Purchase Agreement changed the form of the assignment of the properties to Delta, but did not change the definition of the properties being purchased as set forth in paragraph 1.2 of the Purchase Agreement (*Compare* Nanke Depo. at Exh. 21 *with id.* at Exh. 22).  Moreover, the exhibits setting forth the interest purchased are identical between the Purchase Agreement and the Assignment of NOI (Nanke Depo. at 45:1-8; c*ompare* Nanke Depo. at Exh. 21 *with id.* at Exh. 22).

15

20.    The 1999 Delta NOI states in part: "Whiting Petroleum Corporation …

does hereby grant, convey, transfer and assign to Delta Petroleum Corporation… a net

operating interest (as herein defined) in, to and under the following:…" (Roitman Dec. at

Ex. 7 at 1-2).  The term Net Operating Interest is defined in the 1999 Delta NOI as the

following:

> a.   The net operating interest ("NOI") herein conveyed and assigned is
> defined as the monthly payable positive or negative cash flow resulting
> to the Interests from the following eight step calculation:
>
> (i)     oil and gas sales revenue:
> (ii)    **less** royalties and **overriding royalties**:
> (iii)   Less Unit lease operating expenses;
> (iv)    less severance, production or ad valorem taxes, if any;
> (v)     less capital expenditures;
> (vi)    less Unit fees to the Unit operator; and
> (vii)   plus the positive or less the negative cash flow from the
> Partnerships.
> (viii)  plus or minus any other miscellaneous costs or revenues
> that may be related to these interests or operations….
>
> **In the event of positive cash flow, Assignor will pay the excess to**
> **Assignee; in the event of a negative cash flow, Assignee will pay**
> **the deficit to Assignor.**

 (Roitman Dec. at Ex. 7 at 2-3, emphasis added).

21.    The NOI precisely describes the rights and obligations that an owner of

what is known in the oil industry as a "working interest" owner would have, except for

the obligations associated with future costs relating to abandonment of the of the wells

and drilling platforms (Nanke Depo. at 38:20-39:17).

22.    The parties' intended and the definition of Net Operating Interest makes

clear that Whiting retained bare legal title to the Point Arguello Properties but conveyed

16

all of its beneficial interest to Delta subject to previously granted royalties and overriding royalties owed to third parties such as the 1994 BWAB ORRI (Roitman Dec. at ¶ 23).

23.    On December 1, 1999, as part of the closing of the Purchase Agreement and Amendment, Delta executed and delivered an overriding royalty interest, carved out of its newly acquired beneficial ownership interest in the Point Arguello Properties, to BWAB (henceforth "1999 BWAB ORRI," or "1999 ORRI" *see* Roitman Dec. at Ex. 8), pursuant to the BWAB Fee Agreement.

24.    Delta accounted for the 1999 ORRI as an "overriding royalty interest…." Nanke Depo. at 19:2-7.  Prior to this litigation, Delta did not consider the 1999 ORRI to reduce the 1994 ORRI.  Nanke Depo. at 49:24-50:7.

25.    When Delta acquired the NOI, BWAB was informed that Delta and Whiting had agreed that Delta would not record such document in any county recording office because of Whiting's concern that its other working interest owners would consider such action as a conveyance of legal title in violation of its agreements with them (Roitman Dec. at ¶ 25).

26.    Whiting was notified and made aware of Delta's delivery of the 1999 BWAB ORRI and conveyance of part of its newly acquired interest in the Point Arguello Properties to BWAB (Roitman Dec. at ¶ 26).

27.    Following Delta's acquisition of its interest in the Point Arguello Properties, Whiting distributed to Delta for distribution to BWAB  monthly revenues owned by BWAB from its 1994 BWAB ORRI and its 1999 BWAB ORRI in the ordinary course of business.  Delta in turn timely distributed such revenues to BWAB until September of 2012 (Roitman Dec. at ¶ 27).

17

28.     Contrary to Plaintiffs' allegations in their Amended Complaint (Adv. D.I. at ¶ 37) and the Declaration of Seth Bullock (Bullock Dec. at ¶ 17), Delta did <u>not</u> mistakenly "lump" together its calculations of the 1999 ORRI and the 1994 ORRI, but rather separately calculated each according to the provisions of those conveyances. Nanke Depo. at 84:3-13.  At his deposition Mr. Bullock admitted that he was unaware of the 1997 Agreement between Whiting and BWAB in relation to the proper method of calculating the 1994 ORRI (Bullock Depo. at 132:18-133:10, demonstrating Mr. Bullock's lack of awareness of the 1997 Agreement during his calculation of the alleged overpayment and lack of knowledge concerning the effect of the 1997 Agreement on his calculations).

29.      After Delta filed bankruptcy on December 16, 2011, Delta continued to deliver revenues owned by virtue of BWAB's overriding royalties to BWAB in the ordinary course of business when they were received from Whiting.  At no time did Delta have an ownership interest in those revenues (Roitman Dec. at ¶ 28).

30.     The last payment of production revenues by Delta to BWAB was a check dated August 21, 2012 and received on August 27, 2012.  Notably, the check detail confirms BWAB as "owner" (Roitman Dec. at Ex. 9).  BWAB has received no further payments on the 1994 BWAB ORRI or 1999 BWAB ORRI from either Delta, Plaintiffs, or Whiting since that check.

31.     BWAB was listed on Delta's Schedule of Assets and Liabilities as an owner of its ORRIs (*see* D.I. 140 at 217).  At no time prior to the latter part of September of 2012 did Delta or Plaintiffs ever provide notice to BWAB that they disputed the 1999 BWAB ORRI, or any amounts owned or previously paid pursuant thereto.  At no time

18

prior to January 4, 2013, when Plaintiffs filed their amended complaint in this proceeding did Delta or Plaintiffs provide notice to BWAB that they disputed the 1994 BWAB ORRI, or any amounts owned or previously paid pursuant thereto.

32.     Delta's confirmed Plan and its Disclosure Statement made no mention of BWAB's overriding royalty interests, did not indicate that BWAB's property interests were disputed, and did not deal with BWAB's property interest.  At no time prior to confirmation of its Plan did Delta commence an adversary proceeding to determine the validity, extent and priority of BWAB's property interests.

33.     At no time prior to early January of 2013 did Delta or Plaintiffs provide notice to BWAB of any alleged mistake by Delta in the calculation of the amounts paid to BWAB on account of the 1994 BWAB ORRI, nor did they explain how they made such mistake or even what the mistaken calculation was.  BWAB did not learn of the Plaintiff's explanation of how the supposed mistake was calculated until February 12, 2013, when Plaintiffs served BWAB with Plaintiffs' Brief in Support of their Motion for Summary Judgment.

34.     Mr. Bullock, upon whose declaration Plaintiffs rely for the calculation of the supposed overpayment to BWAB of the 1994 ORRI, now admits that he does not know how the payments to BWAB were calculated and his opinion that BWAB was overpaid is based solely upon his reading of the provisions of paragraph 1 of the 1994 ORRI (Bullock Depo. at 40:8-21; *id.* at 145:13-24, referring to Bullock Declaration). Likewise, Mr. Bullock does not have any personal knowledge concerning how the decimal percentage used to determine the amount of BWAB's payments was calculated or whether that decimal percentage is correct (Bullock Depo. at 135:9-136:1).  Finally,

19

Mr. Bullock admitted that—contrary to the Amended Complaint and his Declaration—

BWAB was not paid by simply lumping the 1999 ORRI calculation together with the

1994 ORRI calculation (Bullock Depo. at 144:1-19).

## ARGUMENT

**A. The 1994 ORRI is BWAB's property that BWAB received from Whiting, and there is no legitimate reason that BWAB should not continue to own and possess the 1994 ORRI.**

The 1994 BWAB ORRI is a properly recorded real property interest.  Roitman

Dec. at ¶ 11; *In re Foothills Texas, Inc.*, 476 B.R. 143, 149 (Bankr. D. Del. 2012)

(describing overriding royalty interests as "an interest in real property regarded as a

covenant running with the land between the assignor and the assignee, and is enforceable

by the assignor against the assignee") (internal quotation marks and citation omitted).[2]

From the plain language of the assignment, it is clear that Whiting and BWAB intended

for the 1994 ORRI to be a real property interest.  The language used is that of

conveyance. The assignment was required to be in recordable form with warranties of

title.  BWAB was required to execute division or transfer orders so that all revenues

attributable to BWAB's interest would be paid to Whiting.  All these provisions relate to

a conveyance of a real property interest—not simply a contractual agreement with respect

to division of profits.

---

[2] *See also Harris v. 25 Hill Properties, Inc.*, 2007 WL 2774483 (Cal. Ct. App. Sept. 25, 2007) (unpublished) ("overriding royalty interests created by an operating lessee for the duration of a specific oil and gas lease are interests in real property"); *Moore v. Tristar Oil & Gas Corp.*, 528 F. Supp. 296, 309 (S.D.N.Y. 1981) ("under California law, both an overriding royalty and a working interest are interests in real property"); *Honolulu Oil Corp. v. Kennedy*, 251 F.2d 424, 429 (9th Cir. 1957) ("The decisions of California courts establish that a stipulation that there be an overriding royalty, consisting of a share of the produce in kind, does create an interest in real property.").

It is of no consequence, however, whether the assignment is a real or personal property interest. Whiting—not Delta—conveyed the 1994 BWAB ORRI to BWAB. The Point Arguello Property conveyed to Delta by the 1999 NOI, whether considered real or personal property, was expressly reduced by then-existing overrides. Roitman Dec. at ¶ 23; *see also* Declaration of Aleron Larson ("Larson Dec.") attached to the Opposition, at ¶ 13. As the 1994 BWAB ORRI predates the 1999 NOI, the property represented by the 1994 BWAB ORRI was never conveyed from Whiting to Delta. As the 1994 BWAB ORRI is not and never was property of the debtor, it cannot be avoided or extinguished (or reduced by subsequent overrides, *see* § B., *infra*).

Delta's Plan makes it clear that <u>only property of the Debtor</u> is re-vested in the Reorganized Debtors free and clear of claims. The Plan states the following: "all property <u>comprising the Estates</u> not otherwise vested in the Joint Venture Company or the Recovery Trusts shall revest in the Estate of the applicable Reorganized Debtor, free and clear of all Liens, Claims and Equity Interests[.]" *See* Plaintiffs' Motion for Summary Judgment (Adv. D.I. 34) at 13 n. 20 (*quoting* D.I. 885 § 10.1). By its express terms, this provision neither purports to nor does it have the effect of re-vesting in the Reorganized Debtors property that was never part of Delta's assets.

That Delta received money from Whiting to transmit to BWAB on account of the 1994 BWAB ORRI is of no moment. Delta was a mere conduit of payment from Whiting to BWAB. Roitman Dec. at ¶ 16, ¶¶ 27-28; Larson Dec. at ¶ 20. Although BWAB did not object to getting paid through Delta, BWAB never released Whiting of any obligation to pay under the 1994 BWAB ORRI. BWAB's rights are rights as to Whiting, not Delta. Roitman Dec. at ¶ 17.

21

Put differently, there was no novation of Whiting's obligation.  Novation must

occur by contract.  *See* Cal. Civ. Code § 1532 ("Novation is made by contract, and is

subject to all the rules concerning contracts in general.").  No such contract of novation

occurred here.  Roitman Dec. at ¶ 17.

Delta had neither an equitable nor a legal interest in the funds it received from

Whiting for payment to BWAB on account of the 1994 BWAB ORRI.  Any assets that

Delta received from Whiting on account of the 1994 BWAB ORRI were merely held by

Delta for the benefit of BWAB.  Plaintiffs have provided no evidence to support a

proposition that such funds belong to either of them.  The bankruptcy process does not

permit the bankruptcy estate to acquire property it never owned in the first place.  *In re*

*Bake-Line Group, LLC*, 359 B.R. 556, 570 (Bankr. D. Del. 2007) ("A debtor may not

increase its rights to property through the filing of a bankruptcy petition."); *In re Nielsen*,

1998 WL 3379 at *3 (Bankr. D. Minn. Jan. 7, 1998) (deeming it "axiomatic" that, subject

to inapplicable exceptions, "only property that is owned by the debtor as of the

commencement of the case may constitute property of the estate").[3]

Rather than address the above arguments in a substantive manner with respect to

the 1994 ORRI, only two paragraphs of Plaintiffs' Reply in support of their Motion for

Summary Judgment (Adv. D.I. 52, henceforth, "Reply") superficially address the 1994

ORRI.  *See* Reply at pp. 10-11.  Plaintiffs ignore the fact that Whiting, <u>not Delta</u>,

conveyed BWAB the 1994 ORRI.  *Id.*  Plaintiffs cite no authority for their assertion that

the 1994 ORRI is not an interest in real property.  *Id.*  Plaintiffs simply assert that the

---

[3] *See also In re Colonial Ctr., Inc.*, 156 B.R. 452, 463 (Bankr. E.D. Pa. 1993) ("the scope of a debtor's interest in property is defined by relevant nonbankruptcy law and not expanded by the bankruptcy filing"); *In re Dyckman*, 2012 WL 1302613 at *2 (Bankr. M.D. Pa. Apr. 16, 2012) ("the Bankruptcy Code itself does not create property interests").

1994 ORRI "became a claim subject to the bankruptcy" without any supporting facts or authority whatsoever. *Id.* Plaintiffs have no good-faith substantive reply to the above facts and argument concerning the 1994 ORRI. There is no legitimate reason why BWAB should have been and continues to be deprived of the benefit of the 1994 ORRI. The Court should therefore enter summary judgment against Plaintiffs with respect to the portion of their claims pertaining to the 1994 ORRI. There are no genuine disputes of material fact that Plaintiffs received funds that BWAB earned pursuant to the 1994 ORRI and that Plaintiffs have wrongfully withheld those funds from BWAB. Plaintiffs have intercepted and withheld funds that BWAB earned pursuant to the 1994 ORRI—and which equity and good conscience require to be paid to BWAB. Under the doctrine of money had and received Plaintiffs are obligated to pay all withheld funds to BWAB. *Scott v. Boma Inv. Co.*, 72 P.2d 274, 275 (Colo. 1937).

Plaintiffs' same actions constitute the unlawful dominion and control over BWAB's property and Plaintiffs' positions in this dispute demonstrate their intent to permanently deprive BWAB of this property; in short, Plaintiffs actions constitute the tort of conversion. *Glenn Arms Associates v. Century Mortgage & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. Ct. App. 1984). Moreover, Plaintiffs have knowingly received the benefit of the 1994 ORRI proceeds under circumstances where it would be unjust for Plaintiffs to retain the funds. This constitutes unjust enrichment and requires Plaintiffs to disgorge the funds that they have wrongfully retained. *Bachrach v. Salzman*, 981 P.2d 219, 222 (Colo. Ct. App. 1999) *aff'd and remanded*, 996 P.2d 1263 (Colo. 2000).

Based on the above, BWAB is entitled to a declaratory judgment that the 1994 ORRI remains in full force and effect and it is entitled to recover from Plaintiffs all funds

23

wrongfully retained and converted under the doctrines of money had and received, conversion and unjust enrichment. For these reasons, the Court should enter summary judgment in BWAB's favor concerning the portion of its counterclaims which pertain to the 1994 ORRI.

**B. The 1994 ORRI was not reduced by 1999 conveyances.**

Plaintiffs' Amended Complaint asserts that "the Debtors mistakenly lumped together the percentages related to each of the 1994 and 1999 interests," and therefore BWAB was overpaid (Adv. D.I. 22 at ¶ 37). Mr. Bullock's declaration makes a similar claim (Bullock Dec. at ¶ 17). Plaintiffs further contend that the 1994 ORRI should be reduced by Delta's subsequent conveyances in 1999 of overriding royalties with respect to the Point Arguello properties. *See* Reply at pp. 17-19. This interpretation is based solely on Mr. Bullock's reading of the 1994 ORRI assignment (Bullock Depo. at 40:8-21). However, Mr. Bullock's interpretation based upon his reading of an agreement 18 years after it was executed is not worthy of any consideration, especially as he has no knowledge of any custom or practice in the oil and gas industry as to the proper calculation of an ORRI (Bullock Depo. at 41:1-2). Moreover, it is contrary to Whiting and BWAB's intent in the 1994 ORRI conveyance (Roitman Dec. at ¶ 14). Mr. Nanke—who has firsthand knowledge concerning the calculations given his status as a Delta employee for the relevant time frames, as opposed to Seth Bullock, upon whose Declaration Plaintiffs rely—directly contradicts this assertion. *See* Nanke Depo. at 84:3-13 (*e.g.* "Q. So they weren't just lumped together and the same formula applied to each, were they? A. They were not…."). Perhaps most importantly, Mr. Bullock now admits that the "lumping" allegations in the Amended Complaint and his Declaration are

24

incorrect (Bullock Depo. at 144:1-19).  Moreover, it is clear that Mr. Bullock has no

personal knowledge concerning any alleged overpayments (*see* Statement of Facts, *supra*,

at ¶ 34; § E., *infra*).

Furthermore, Plaintiffs' argument contradicts basic concepts of conveyancing,

disregards the plain language of the 1994 ORRI, and would lead to an absurd result.

Having conveyed the 1994 ORRI to BWAB, Whiting no longer owned that interest and

could exercise no control over it to unilaterally reduce it, unless Whiting specifically

reserved that right or tied it to some triggering event in the future.  The 1994 ORRI

contains no such reservation and contains no reference to any such subsequent event.

Delta, even given its purported status as "Whiting's successor in interest" could not have

unilaterally acted to reduce BWAB's interest.  *See* Reply at p. 18 n. 33.  A contrary

conclusion would make the 1994 ORRI an illusory conveyance, as Whiting or Delta

could theoretically re-sell a 100% ORRI to another party and completely eliminate the

1994 ORRI.  Plaintiffs' position contemplates precisely this absurd result.  Indeed, the

1994 ORRI is not subject to deductions which "will burden" or "may burden in the

future" Whiting's interest; as written in 1994, the 1994 ORRI is subject only to interests

"that burden" Whiting's then-interest (Roitman Dec. at ¶ 14).  Having conveyed the 1994

ORRI, Whiting no longer had that ownership interest in its property-right "bundle of

sticks" to re-convey to someone else via subsequent ORRIs.  Likewise, Delta did not

have the power to burden the 1994 ORRI with its 1999 conveyances, especially as

Delta's NOI specifically excluded interests such as the 1994 ORRI (Roitman Dec. at ¶

22; *id.* at Ex. 7 at 2-3).  Therefore, the 1994 ORRI never came into Delta's possession

and Delta had no power to reduce it.

25

Plaintiffs have no admissible evidence or valid argument that BWAB has been overpaid. The Court should grant summary judgment against Plaintiffs and in favor of BWAB with respect to Plaintiffs' claims that BWAB has been overpaid on the 1994 ORRI. Moreover, the Court should grant summary judgment in BWAB's favor with respect to its counterclaim for declaratory judgment concerning the calculation of the 1994 ORRI; namely, that it is <u>not</u> reduced by subsequent conveyances.

### C. The 1999 ORRI is likewise a real property interest that is not Delta's property.

Plaintiffs assert that BWAB is no longer entitled to the 1999 ORRI because the NOI did not convey a real property interest to Delta, and that Delta therefore could not have conveyed a real property interest to BWAB (Adv. D.I. 35 at 12-13). However, all evidence in this case points to the fact that the NOI was in fact a real property interest. Plaintiffs' argument that BWAB did not receive a real property interest, therefore, fails.

In the words of Delta's former Chief Financial Officer, the NOI describes all the rights and obligations that an owner of what is known in the oil industry as a "working interest" would have, except for the obligations associated with future costs relating to abandonment of the of the wells and drilling platforms (Nanke Depo. at 38:20-39:17). A working interest in an oil lease is an interest in real property. *Richmond Wholesale Meat Co. v. Franchise Tax Bd.*, 42 Cal. Rptr. 2d 854, 862 (Cal. App. 4th 1995) ("Joint working interest owners are essentially tenants in common in an estate in real property, namely, the right to exploit oil and gas beneath a particular tract of land[,]" *citing*, *inter alia*, Cal. Pub. Res. Code § 3316.11). The Court should accept the straightforward testimony of

26

Delta's own former high-ranking officer that Delta considered the NOI to be an interest in real property.

BWAB furthermore demonstrated in its Opposition that the Plaintiffs' argument the NOI was not a real property interest lacks merit because the consequence of Plaintiffs' argument is that Delta rejected the NOI as an executory contract that was not assumed (Opposition at 20-21).  Plaintiffs retort that "even if the contract between Whiting and Delta were executory…that makes no difference, because the contract could have ridden through the bankruptcy[.]"[4]  Reply at 5 (*citing In re Silver Fox, LLC*, 2010 WL 2572602 (D.N.J. June 24, 2010).  Plaintiffs misstate the bankruptcy record, however, as Delta's "Notice of Rejection of Executory Contracts and Unexpired Leases" explicitly states the following:

> **IF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE DOES NOT APPEAR ON AN EXHIBIT TO THE NOTICE OF REVISED EXHIBITS THE EXECUTORY CONTRACT OR UNEXPIRED LEASE WILL BE REJECTED AS OF THE EFFECTIVE DATE.**

D.I. 896 (emphasis in original).  The NOI does not appear on the Notice of Revised Exhibits (D.I. 891).  The order authorizing the assumption of executory contracts does not include the NOI (D.I. 918).

The very case that Plaintiffs cite for the proposition that, if it is a contract, the NOI "rode through" the bankruptcy itself states that the "ride through" doctrine only applies where "a debtor has failed to expressly assume or reject a prepetition lease

---

[4] Plaintiffs also assert, for the first time in this litigation, that the 1999 ORRI was "nothing more than a simple factoring agreement that conferred a right of payment to BWAB in exchange for its assistance to Delta in the Whiting deal."  Reply at 5.  Plaintiffs cite neither fact nor law for this position concerning "factoring[.]"  *Id.*  Indeed, there is nothing in the plain language of the 1999 NOI that suggests it constitutes a factoring type of arrangement rather than a conveyance of an interest in real property.

agreement or executory contract…." *In re Silver Fox, LLC*, 2010 WL 2572602 at *6

(citation and quotation marks omitted).  If the NOI is a contractual interest as Plaintiffs

claim, the foregoing language in Delta's "Notice of Rejection of Executory Contracts and

Unexpired Leases" is an express rejection, so the "ride through" doctrine does not apply.

Plaintiffs cannot simply ignore the plain language of Delta's bankruptcy filings and

cannot escape the conclusion that the NOI was either an executory contract which has

been rejected—which no one is arguing—or that it was an interest in real property.  *See*

Response at 21.  As the latter result comports with Delta's repeated assertions in

bankruptcy that its interest in Point Arguello was a real property interest—*see*, *e.g.*, D.I.

140 at 9 (Schedule A—Real Property, listing Point Arguello Gross Working Interest of

6.07% of Net Revenue Interest conveyed by 1999 NOI) and D.I. 140 at 112 (Schedule

A—Real Property, listing Point Arguello prospect)—the Court should conclude that both

the NOI and the 1999 ORRI from which it was carved are interests in real property.  This

is the correct factual result, and Plaintiffs have utterly failed to rebut BWAB's argument

that they are judicially estopped from reversing the positions Delta staked out in its

bankruptcy schedules.[5]

---

[5] Plaintiffs' sole authority in response to BWAB's judicial estoppel argument that Plaintiffs are bound by the representations in their schedules is *B. Cohen & Sons Caterers, Inc. v. New Plan Realty Trust* (In re B. Cohen & Sons Caterers, Inc.), 97 B.R. 808, 817 (Bankr. E.D. Pa. 1989), cited in the Reply at 12, n. 17. That case permitted a debtor to recover $50,000 for lost property, even though her schedule listed the value at $16,500.  97 B.R. at 817.  That the debtor was not bound by her schedules was due to "the context of [the] case" and the fact that the court "firmly believe[d] that [the schedules] *were* inaccurate" in light of competent testimony at trial concerning the value of that property. *Id.* (emphasis in original).  There is no such reason for the Court to reach a similar conclusion here.  Unlike the *B. Cohen & Sons* debtor, Plaintiffs have not even made "efforts to explain why the Schedules were filled out incorrectly." *Id.*  Moreover, *B. Cohen & Sons* stands only for the proposition that property valuation, rather than categorization of type, may ultimately differ from the bankruptcy schedules.  Indeed, the Court should heed *B. Cohen & Sons*' admonition that "We cannot emphasize strongly enough that it is important that debtors complete their Schedules accurately." *Id.*

Given this conclusion, the plain language of the 1999 ORRI—which is language of conveyance of real property—should control.  Mr. Bullock admits his assertions to the contrary, upon which Plaintiffs rely, are not based on his experience or knowledge (Bullock Depo. at 99:4-12).  As such, the Court should grant summary judgment against Plaintiffs with respect to their claims that BWAB lost its 1999 ORRI interests under contract theories.

**D. The 1999 ORRI was not a transfer that could be perfected versus a bona fide purchaser, so it cannot be avoided and it remains BWAB's property.**

As BWAB set forth in its Opposition, the 1999 ORRI cannot be avoided in this action because it was not a transfer that could have been perfected against a bona fide purchaser due to Delta's failure to record its interests (Opposition at 23-25).  Had BWAB recorded the 1999 ORRI, it would have been a "wild deed" which would not have provided notice to a bona fide purchaser, and thus was not capable of being perfected against such a purchaser (*id.*).

Plaintiffs assert various frivolous replies to this point.  First, Plaintiffs assert that merely because ORRIs are "recordable under California law[,]" the 1999 ORRI is an interest "subject to avoidance under section 544(a)(3)."  *See* Reply at 15.  However, the operative inquiry under 544(a)(3) is not recordability, but perfection versus a *bona fide* purchaser.  The issue is whether recording would have had any legal affect as against a *bona fide* purchaser, not whether the interest was capable of being recorded.

Plaintiffs also assert that BWAB should have "initiated an action to quiet title" or "brought an action for declaratory relief" to protect its interest.  *See* Reply at 15.  In support of this argument, Plaintiff cites "Cal. Civ. Code § 1060."  Reply at 15 n. 30.

29

However, Cal. Civ. Code § 1060 was repealed over forty years ago.  *See* Cal. Stats. 1969, c. 155, p. 409, § 2, operative July 1, 1970.  Even if Plaintiffs had cited the current California quiet title statute, it would not have helped Plaintiffs' argument. Quiet title actions are limited to the establishment of title "*against adverse claims* to real or personal property…."  Cal. Civ. Code § 760.020(a) (emphasis added).  Plaintiffs may have intended to cite California Code of Civil Procedure § 1060, which provides for declaratory actions "in cases of actual controversy…."  Here, there was no indication that anyone—much less Delta—disputed BWAB's ownership of the 1999 ORRI.  Delta paid the 1999 ORRI prior to its bankruptcy and affirmatively sought leave from the court to pay the monies owed pursuant to the 1999 ORRI to BWAB during its bankruptcy, and actually did pay the monies owed pursuant to the 1999 ORRI pursuant to the Court's order (D.I. 9, 66, 296; Roitman Dec. at ¶¶ 27-28).  Simply put, there were no adverse claims against which BWAB could have filed an action to quiet title.  Likewise, there was no "actual controversy" concerning which BWAB could have filed a declaratory action.  Having quietly laid in wait during the pendency of Delta's bankruptcy, Plaintiffs cannot now ambush BWAB in reliance on procedures which require actual claims or controversies.

Plaintiffs cite *Aguayo v. Amaro*, 213 Cal. App. 4th 1102 (Cal. App. 2d Dist. 2013) and *Reiner v. Danial*, 211 Cal. App. 3d 682 (Cal. App. 2d Dist. 1989) for the proposition that BWAB should have initiated an action to quiet title or an action for declaratory relief.  Reply at 15 n. 30.  Neither case assists Plaintiffs.

30

*Reiner*'s discussion of standing reinforces the conclusion that declaratory relief pursuant to California Code of Civil Procedure § 1060 was **not** available to BWAB concerning the 1999 ORRI:

> Plaintiffs are not urging a *mere hypothetical situation* upon this court for determination. Their position is clearly adverse to that maintained by defendant, and an actual controversy exists capable of definite and conclusive relief. Both plaintiffs clearly have standing to seek declaratory relief.

*Reiner*, 211 Cal. App. 3d at 689 (citation omitted, emphasis added). By contrast, as discussed above, had BWAB brought a declaratory relief action in California state courts pursuant to California Code of Civil Procedure § 1060 prior to the operation of the bankruptcy automatic stay, BWAB would have been asking for adjudication of a truly hypothetical dispute. BWAB would be asking the following question:

> Will the court affirmatively declare BWAB's rights under the 1999 ORRI where Delta has never challenged BWAB's entitlement to the 1999 ORRI and, Delta has paid what is owed pursuant to the 1999 ORRI consistently since it first acquired the property in 1999?

The attenuated and hypothetical nature of any claim for declaratory relief that Plaintiffs assert BWAB should have brought shows that BWAB was not entitled to that relief. *Reiner* does not assist Plaintiffs.

Plaintiffs' citation of *Aguayo* includes the following parenthetical description: "(affirming superior court ruling quieting title in connection with a dispute involving a wild deed)". Reply at 15 n. 30. The California Court of Appeals did indeed affirm the trial court in *Aguayo*. Unfortunately, and in all other respects, Plaintiffs grossly misrepresent the nature of the case and its applicability to this dispute. The trial court found the following:

31

> "The court is convinced that this 'wild deed' was recorded to insure
> the legal owners would not receive tax bills and thereby be reminded
> that property taxes were due." Additionally, the court found that "[t]he
> act of diverting property tax bills from the true owner was a deceitful
> act intended to insure the legal owner would not pay their property
> taxes and also appears to be a criminal act per Penal Code section
> 115.5."

*Aguayo*, 213 Cal. App. 4th at 1108.  The Court of Appeals found it was proper that the

trial court permitted the party defending against the fraudster's quiet title action to assert

the defense of unclean hands.  *Id.* at 1113-15.  Ultimately, *Aguayo* is a case about the

ineffectual nature of a fraudster recording a wild deed and that fraudster's failure to

obtain real property through quiet title.  Plaintiffs' citation of *Aguayo* only reinforces the

fact that had BWAB recorded a wild deed, it would have been ineffectual.  Just like the

*Aguayo* trial and appellate courts, this Court should act to prevent Plaintiffs' attempted

theft of property and grant BWAB's Cross-Motion.

### E. Mr. Bullock has no personal knowledge concerning the relevant events in this case, and the Court should therefore disregard Plaintiffs' Motion as it relies on Mr. Bullock's speculation.

Mr. Bullock's deposition revealed that he has little to no personal knowledge

concerning the relevant transactions and events in this case.  *See* Bullock Depo. at 29:1-6

(no knowledge of what was intended to be conveyed with 1999 NOI other than what is

written); *id.* at 29:22-30:10 (no knowledge of what was intended to be conveyed with

1999 ORRI other than what is written); *id.* at 31:22-32:6 (no knowledge about 1994

ORRI other than from reading the document); *id.* at 40:8-21 (does not base his

conclusions on the ORRI calculations on any custom or practice in the industry); and *id.*

at 135:9-136:1 (does not have any basis to say whether the decimal percentage on which

BWAB was paid was correct and does not know whether it includes a government

32

landowner royalty).  Plaintiffs rely heavily on his admittedly uniformed Declaration in their Motion for Summary Judgment.  As such, the Court should deny Plainitffs' Motion as it relies on inadmissible evidence: Mr. Bullock's uniformed speculation.

### F. Plaintiffs' discovery responses to date—or lack thereof—demonstrate the Court should grant the Cross-Motion.

Additionally, on April 10, 2013, Plaintiffs responded to BWAB's written discovery requests (*see* Discovery Responses attached as Exhibit C).  Seth Bullock signed the verification of those responses (*id.*).  While these responses asserted seventeen general objections, they omit any mention of the fact that Plaintiffs have 2,500 banker's boxes of records that Plaintiffs have not searched in connection with this case (Bullock Depo. at 79:24-80:17).  Likewise, there is no indication that Plaintiffs have undertaken a search of their electronic records for relevant documents in this case (Bullock Depo. at 80:18-81:4).  Plaintiffs' apparent disregard of their discovery obligations is consistent with the course of document production in this case; on May 31, 2013, BWAB produced over 10,000 pages of documents to Plaintiffs that BWAB obtained from Whiting, the vast majority of which were documents that Whiting sent to Delta and were thus squarely in Plaintiffs' possession.

Rather than provide full and timely discovery responses, Plaintiffs unilaterally determined that they would not do so; Plaintiffs instead opted to repeatedly state that they would provide complete responses "at the appropriate time…."  *Id.*  By way of further example, Plaintiffs objected to various fully-defined terms (such as "Whiting's Interest") or commonly-understood phrases (such as "ORRI owners" or "paid under protest").  *Id.*

Through counsel on May 24, 2013, BWAB sent Plaintiffs a letter highlighting the various deficiencies in Plaintiffs' discovery responses (*see* Letter attached as Exhibit D). Plaintiffs have yet to respond to that letter or supplement their deficient discovery responses.  As such, BWAB may be forced to move to compel Plaintiffs' provision of full and complete discovery responses pursuant to F.R.C.P. 37 as well as seek relevant sanctions under that rule.  BWAB hereby reserves its right to supplement this Cross-Motion should the Court enter any sanction on account of Plaintiffs' obstructionist approach to discovery.  BWAB's discovery requests provided Plaintiffs' with an opportunity to bring forth evidence that would have demonstrated why the Court might not grant the Cross-Motion; the generally non-responsive nature of Plaintiffs' responses and apparent disinterest in searching their own files suggests that Plaintiffs have no such evidence.

**CONCLUSION**

For the foregoing reasons, and those set forth in the Opposition and the attachments thereto, the Court should grant summary judgment in BWAB's favor and against Plaintiffs concerning Plaintiffs' claims, and grant summary judgment in BWAB's favor and against Plaintiffs concerning BWAB's counterclaims.

Dated:          June 21, 2013

34

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

By: /s/ Raymond H. Lemisch
        Raymond H. Lemisch, Esquire (No. 4204)
        222 Delaware Avenue, Suite 801
        Wilmington, DE 19801
        (302) 442-7010 telephone
        (303) 442-7012 facsimile
        rlemisch@beneschlaw.com

        – and –

        Barry L. Wilkie, Esq.
        Stuart N. Bennett, Esq.
        **JONES & KELLER, P.C**
        1999 Broadway, Suite 3150
        Denver, CO  80202
        (303) 573-1600 telephone
        (303) 573-8133 facsimile
        bwilkie@joneskeller.com

        *Counsel to BWAB Limited Liability Company*