# EXHIBIT B

Case 12-50898-KJC   Doc 84-2   Filed 07/05/13   Page 2 of 7

In Re: Delta Petroleum Corp. (Debtor)   ALERON H. LARSON, JR.   6/6/2013

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

Case No. 11-14006(KJC)   (Jointly Administered)
Adv. Pro No. 12-50898(KJC)
Adv. Pro No. 12-50877(KJC)

IN RE:

DELTA PETROLEUM CORPORATION, et al.,

Debtors,

DELTA PETROLEUM GENERAL RECOVERY TRUST and PAR PETROLEUM CORPORATION,

Plaintiffs,

v.

BWAB LIMITED LIABILITY COMPANY,

Defendant.

and

DELTA PETROLEUM GENERAL RECOVERY TRUST and PAR PETROLEUM CORPORATION,

Plaintiffs,

v.

ALERON LARSON, JR.,

Defendant.

---

DEPOSITION OF:   ALERON H. LARSON, JR. - June 6, 2013

---

Case 12-50898-KJC   Doc 84-2   Filed 07/05/13   Page 3 of 7

In Re: Delta Petroleum Corp. (Debtor)    ALERON H. LARSON, JR.                    6/6/2013

Page 19

1   written here, but as you describe it?

2        A.   Yes.  This was just a mistake Steve did or

3   his attorney did or something, at least that's my

4   opinion; I don't know, you'd have to ask Steve.

5        Q.   So in your mind, a net revenue interest is

6   a lesser interest than a gross revenue interest?

7        A.   Yes.

8        Q.   So let's go to option two, Should Delta

9   acquire a net operating interest, BWAB's overriding

10  royalty interest will be calculated as 3 percent of

11  the actual gross revenue generated from and accrued to

12  Delta's interest.  The term "net operating interest,"

13  is that -- prior to this deal, was that a common term

14  that you had seen in the oil and gas business, a net

15  operating interest?

16       A.   It's a -- it's not a definitive term,

17  legal term of art.  It's sort of an oil and gas slang,

18  catch-all, for a number of things that could probably

19  be considered a net operating interest.  You can't

20  tell by looking at these words what that means.  If

21  you go to the -- I wish I could remember, a yellow

22  back that has -- I can't remember the name of it.

23            But if you look at oil and gas terms, it

24  will have a loose thing in it that can't -- you can't

25  go from here and see what net operating interest --

Case 12-50898-KJC   Doc 84-2   Filed 07/05/13   Page 4 of 7

In Re: Delta Petroleum Corp. (Debtor)    ALERON H. LARSON, JR.                    6/6/2013

Page 36

1      A.      I vaguely recall it, yes.

2      Q.      Do you know what precipitated the drafting

3  of this amendment?

4      A.      Let me read through it and see.

5      Q.      Take your time.

6      A.      This is 14 years ago.  Oh, yes, I

7  remember.

8      Q.      Do you recall what precipitated the

9  amendment?

10     A.      Whiting -- the partners out there in the

11 Point Arguello unit wanted Whiting to retain its

12 obligation to -- for the abandonment costs, because

13 Whiting had a parent at the time, essentially it was

14 spun off into a public company; it had been one, then

15 it was purchased.

16             And the parent was a large utility, and

17 they wanted to keep the parent that -- the parent had

18 made a -- had underwritten or guaranteed the

19 obligation of Whiting, and they wanted to keep Whiting

20 in some fashion on there so that they could have that

21 guarantee.  And Delta was too small and we couldn't

22 get guarantee that would equal that big a utility.

23     Q.      Under the original form of the agreement,

24 which is ahead of the amendment and as we reviewed in

25 the prior 8-K, the June 9 8-K, if you recall at

Case 12-50898-KJC   Doc 84-2   Filed 07/05/13   Page 5 of 7

In Re: Delta Petroleum Corp. (Debtor)    ALERON H. LARSON, JR.                    6/6/2013

Page 37

1  Article 9.1, there was a commitment, and that's on
2  page 2442 of this document.  In Article 9.1, it had
3  been anticipated in the original form of the agreement
4  that Whiting would retain liability for all
5  abandonment costs.
6        A.    Yes.
7        Q.    Given the conclusion of that in particular
8  in the original form of the agreement, how would that
9  amendment fit into a need for Whiting to retain
10 liability or abandonment costs if it was already in
11 the agreement?
12       A.    I see what you're saying.  Whiting
13 assigned -- Whiting conveyed to Delta -- I have to
14 make sure I don't say "us," because I don't want to
15 confuse my individual capacity with Delta.  But
16 Whiting was to convey its interest to Delta, and it
17 did so; it conveyed its interest with the one change
18 that was that Whiting retain legal title on behalf of
19 Delta, they actually conveyed everything they had and
20 retained legal title so that they could -- which
21 seemed to be acceptable for the partners out there.
22             And this was an arrangement whereby Delta
23 obtained the ownership of the whole thing except for
24 the -- except for legal title.
25       Q.    Just to make sure I understand that, so

Case 12-50898-KJC   Doc 84-2   Filed 07/05/13   Page 6 of 7

In Re: Delta Petroleum Corp. (Debtor)    ALERON H. LARSON, JR.                6/6/2013

Page 38

1   the amendment addresses a concern on the part of

2   Whiting's partners that Whiting retain legal title?

3        A.   The concern, as I understand it, was that

4   Whiting retain its obligations and that legal title

5   might be a way to do it.

6        Q.   Okay.

7        A.   So I can't tell you exactly what the

8   thinking was on their part.  We were concerned only

9   that we got all the incidences of ownership, which we

10  did.  When I say "we," again, I'm talking about Delta.

11       Q.   Did you ever have any conversations with

12  anyone at Whiting about the net operating interest?

13       A.   I didn't personally; Roger and perhaps

14  others in our company did, some of our land people and

15  whatnot.

16       Q.   Do you know who initially came up with the

17  structure of a net operating interest for this deal?

18       A.   I don't know whether it came through us

19  for them or even if it perhaps came from BWAB; I don't

20  know the individual party who suggested it.

21       Q.   Okay.

22       A.   It may have even been an attorney

23  someplace.

24       Q.   And do you know if the net operating

25  interest was ever discussed with any of Whiting's

Case 12-50898-KJC    Doc 84-2    Filed 07/05/13    Page 7 of 7

In Re: Delta Petroleum Corp. (Debtor)    ALERON H. LARSON, JR.                6/6/2013

Page 60

1    Q.    Did you record the 1999 assignment?

2    A.    No.

3    Q.    Why did you not record it?

4    A.    Whiting asked us not to, asked Delta not
5    to record it.  I don't believe Whiting had even
6    recorded its interest.  Much of that was taken care of
7    at the MMS, and whether it was recorded or not, they
8    couldn't go to the MMS and make a change without the
9    MMS approval, so nobody really worries about that too
10   much.  We did not want to do anything that would
11   compromise Whiting, and that's what they asked us to
12   do, so we did it.

13            When I say "we," that was Delta.  Once
14   Delta didn't record it, we derived our interest from
15   Delta.  You know, number one, we wanted to make sure
16   we, as officers and directors, were in compliance with
17   our understanding of Whiting; and, number two, it
18   wouldn't have made any difference anyway because there
19   was no chain of title there.  You know, the legal
20   title was kept safely by Whiting for us.

21   Q.    If you look at Exhibit 13, which is the
22   2001 Kaiser-Francis assignment, you'll see at the top
23   a stamp.  Is it correct based on that stamp -- or does
24   that stamp indicate to you that Kaiser-Francis
25   recorded this assignment?