# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DELTA PETROLUEM, et al., | Case No. 11-14006 (KJC) |
| Debtors. | Jointly Administered |
| DELTA PETROLEUM GENERAL RECOVERY TRUST, and PAR PETROLEUM CORPORATION, | |
| Plaintiffs, | Adv. Pro No. 12-50898 (KJC) |
| v. | |
| BWAB LIMITED LIABILITY COMPANY, | |
| Defendant, | |
| DELTA PETROLEUM GENERAL RECOVERY TRUST, and PAR PETROLEUM CORPORATION, | |
| Plaintiffs, | Adv. Pro No. 12-50877 (KJC) |
| v. | |
| Aleron Larson, Jr., | |
| Defendant, | |

**EXPERT REPORT OF ROBERT T. COSGROVE**
Burns, Wall and Mueller, P.C.

Introduction and Qualifications

I am an attorney licensed to practice law in the State of Colorado. I was admitted to the Colorado Bar in 1982, and since that time, I have practiced with the law firm of Burns, Wall and Mueller, P.C., in Denver, Colorado. Burns, Wall and Mueller, P.C., has been providing legal services to clients in the oil and gas industry in the Rocky Mountain Region since 1968. A large portion of those services involve analysis of oil and gas title and conveyance issues. As part of my practice, I have reviewed an untold number of instruments of conveyance affecting all types of

oil and gas interests in connection with mineral title examinations, mineral acquisitions and securitization issues, and the preparation of drilling and division order title opinions. I have been retained by BWAB Limited Liability Company to provide opinions in connection with this litigation.

## Scope of Work

A.     I was asked to review an instrument called Assignment of Overriding Royalty dated December 16, 1994 (the "1994 Assignment") from Whiting Petroleum Corporation ("Whiting") to BWAB Limited Liability Company ("BWAB"). Based upon that review, I was asked to provide an opinion as to how an experienced title-examining attorney would treat that instrument with respect to the following:

    1.     Identifying the type of interest created by the instrument;

    2.     Identifying the nature of the interest created by the instrument;

    3.     Identifying whether the interest created is subject to some future defeasance or impairment.

B.     I was asked to review an instrument called Assignment of Overriding Royalty Interest dated December 1, 1999 (the "1999 Assignment") from Delta Petroleum Corporation ("Delta") to BWAB Limited Liability Company. Based upon that review, I was asked to provide an opinion as to how an experienced title-examining attorney would treat that instrument with respect to the following:

    1.     Identifying the type of interest created by the interest;

    2.     Identifying the nature of the interest created by the instrument.

C.     I was asked to review an instrument called Assignment of Overriding Royalty Interest dated December 1, 1999 (the "Larson Assignment") from Delta Petroleum Corporation to Aleron H. Larson Jr. ("Larson"). Based upon that review, I was asked to provide an opinion as to how an experienced title-examining attorney would treat that instrument with respect to the following:

    1.     Identifying the type of interest created by the interest;

    2.     Identifying the nature of the interest created by the instrument.

## Summary of Opinions

A.     Although it is a non-standard form of assignment, the 1994 Assignment would be construed as being the assignment of a 3.5% overriding royalty interest from Whiting to BWAB. That interest would generally be treated as an interest in real property which, upon delivery of the instrument became BWAB's sole property separate and distinct from that of Whiting. Based upon the language of the instrument, and the terms of the underlying letter agreement dated July

28, 1994 between these parties pursuant to which it was assigned, the interest is not subject to any future reduction, impairment or defeasance by any future action taking by Whiting or its successors in title.

B.      The 1999 Assignment would be construed as being the assignment of a 3.0% overriding royalty interest from Delta to BWAB. That interest would generally be treated as an interest in real property, which upon delivery of the instrument became BWAB's sole property separate and distinct from that of Delta.

C.      The Larson Assignment would be construed as being the assignment of a 1.0% overriding royalty interest from Delta to Larson. That interest would generally be treated as an interest in real property, which upon delivery of the instrument became Larson's sole property separate and distinct from that of Delta.

## Basis for Opinions

### Background

In the vast majority of jurisdictions within the United States, property interests relating to oil and gas rights prior to production are generally treated as real property interests.[1] In examining title to oil and gas interests and reviewing documents of conveyance, title examiners generally encounter three distinct forms of interests. These are leasehold interests, royalty interests, and overriding royalty interests.

A royalty interest is the interest reserved by the owners of the oil and gas mineral estate after the mineral estate has been severed by the conveyance of the operating rights through a lease or otherwise.[2] The owner of a royalty interest is entitled to a fixed share of production when and if it occurs free of the costs of production but is not otherwise entitled to participate in the operations for the development of the minerals.

A leasehold interest or working interest is the interest held by the party that has been granted the right, usually by a lease, to develop the mineral estate.[3] The owner of the working interest or operating rights receives a fixed share of the production, after deduction of royalty and overriding royalty interests, when and if it occurs; however, is responsible for 100% of the costs of exploration, development and operation of the property.

An overriding royalty interest is an interest carved out of the working interest by conveyance or reservation.[4] The owner of an overriding royalty interest is entitled to a fixed share of production when and if it occurs free of the costs and expenses of development and operation, but is not otherwise entitled to participate in the operation for the development of the minerals.

---

[1] Williams & Myers Oil & Gas Law, §214
[2] See, generally, Williams & Myers Oil & Law Law Manual of Terms
[3] Id.
[4] Id.

3

Instruments used for conveying any of the above types of interest typically refer to a specific percentage interest being created or assigned. However, the percentage reflected in the instrument creating the interest does not necessarily reflect the actual share of production from a specific well that an interest owner is entitled to receive. That specific share of production attributable to an ownership interest is commonly referred to as the "net revenue interest." The net revenue interest frequently differs from the stated percentage of the interest created by the reservation or conveyance due to a number of factors. For example, although a party may own 100% of the leasehold interest in a well, if that working interest is subject to 12.5% royalty interest then the actual net revenue interest attributable to the working interest is 87.5% In similar fashion, although a party may own a 12.5% royalty under a lease, if that lease only covers one half of the acreage included in a spacing unit for a particular well, or ½ of the oil and gas mineral interest in the lands described, then that party's net revenue interest would be one half of the 12.5% royalty or a net revenue interest of 6.25%. The same would generally be true for an overriding royalty interest, particularly if proportionate reduction language is used.

Nature of the Transactions

The 1994 Assignment was created in connection with a transaction whereby BWAB Incorporated assigned an option to acquire certain UPRC oil and gas interests to Whiting. The 1999 Assignment and Larson Assignment arose out of a transaction whereby BWAB facilitated the transfer or sale of those interests from Whiting to Delta. In the first instance, it appears that the interest conveyed or assigned to BWAB by Whiting was part of the consideration for the assignment of the UPRC option. In the second instance, it appears that the interest assigned from Delta to BWAB was in the nature of a finder's fee or commission for its participation in the transfer of the oil and gas properties described in the assignment, and the interest assigned to Larson was in consideration of his personal guaranty of a loan to complete the transaction.

It is very common in the oil and gas industry to see payment for services rendered, or of a commission or finder's fee through the reservation or assignment of an overriding royalty interest. The actions of Whiting, Delta, BWAB and Larson in engaging in such transactions are entirely consistent with industry practice.

Opinion A – December 16, 1994 Assignment

<em>Nature and Type of Interest Created</em>

In reviewing the 1994 instrument, I noted the following characteristics:

    A.    The instrument is entitled "Assignment of Overriding Royalty;"

    B.    The instrument was recorded in the real estate records of Santa Barbara County, California.

    C.    The instrument references an Asset Purchase and Sale Agreement dated October 6, 1994 ("UPRC Agreement") whereby Whiting agreed to buy certain producing, non-producing and undeveloped oil and gas properties from Union Pacific Resources Company (1994 Assignment, Para. A)

4

    D.    The instrument references the fact that there is a letter agreement dated July 28, 1994 between Whiting and BWAB Incorporated whereby BWAB Incorporated was given alternative means of participating in the properties, which are the subject of the UPRC Agreement. BWAB elected to participate by acquiring a 3.5% overriding royalty interest. (1994 Assignment, Para. C)

    E.    The instrument references an effective date of January 1, 1994 (1994 Assignment, Para. B)

    F.    The instrument uses real property language of grant and conveyance to transfer the interest. (1994 Assignment, Para. 1)

    G.    The interest assigned is a fixed interest on gross production carved out of the working interest owned by Whiting not being responsible for payment of any costs of exploration, development or operation. (1994 Assignment, Para. 1)

    H.    The instrument contains a provision whereby BWAB agrees to execute transfer orders so as to allow Whiting to be paid the revenues attributable to the BWAB interest. A transfer order is a document required by a purchaser of production prior to paying the proceeds from production attributable to a particular interest to one other than the record owner of that interest. (1994 Assignment, Para. 2)

    I.    BWAB had the right to receive payment of proceeds from production attributable to interest directly from the operator or purchaser in certain circumstances. (1994 Assignment, Para. 2c)

    J.    The instrument contains warranty of title provision (1994 Assignment, Para. 6)

    K.    Exhibits to the instrument reference the fact that the document is assigning interests in both producing and non-producing oil and gas leases.

Based upon the foregoing characteristics, it appears that the parties to this interest intended to create a real property interest consisting of a specific independent ownership interest in the oil and gas leases described in the exhibit to the instrument. The net revenue interest attributable to this overriding royalty interest could vary from lease to lease depending upon the size of Whiting's net revenue interest in each individual lease. The interest so acquired would be considered an overriding royalty interest in accordance with common industry standards.

*Future Impairment of the Interest*

Once an overriding royalty interest is carved out of a working interest and assigned to a third party, it becomes the independent property right of that third party. As such, a property right cannot be impaired or modified by the unilateral actions of the assignor. Rather, the nature of the interest becomes fixed as of the effective date of the instrument.

In reviewing titles, it is not uncommon to come across instruments conveying overriding royalty interests which are subject to future modification. Typically, those are instances in which the overriding royalty interest is convertible to a working interest after payout of a well or,

5

alternatively, when the overriding royalty interest is convertible to a greater or lesser interest after payout or other economic factors are reached with respect to a particular well. In each such instance where this occurs, the language of the instrument of conveyance specifically provides for such a future modification.

From my review of the 1994 Assignment, I see no language that would provide for the future impairment or modification of the Whiting interest assigned to BWAB. Therefore, in my opinion, it would be appropriate to construe the instrument as creating a fixed interest in BWAB as of January 1, 1994, the effective date of the instrument.

I understand that Plaintiffs have raised the argument that the language contained in Para. 1 of the 1994 Assignment, specifically that "BWAB Interest shall mean the difference between (A) the gross revenues received by Whiting from the sale of its fractional percentage share of hydrocarbons from the subject properties after the deduction of all lessor's royalties, overriding royalties and other burdens and payments out of gross production of burden Whiting's fractional or percentage share . . ." allows for the future reduction of BWAB's interest based upon the future creation of other burdens on Whiting's interests. Being aware that that interpretation of the instrument has been raised, I would look to two factors to determine if the BWAB interest was actually subject to future modification.

First, from a very simplistic standpoint, I would review future conveyances from Whiting to determine whether it had actually created any additional burdens upon its interests. From the materials I have examined, it appears it did not.

Secondly, when presented with an argument that the instrument is ambiguous, I would look to the content of extraneous materials to determine the intent of the parties to the instrument. In this case, the 1994 Assignment specifically references the fact that it is being granted in accordance with and pursuant to the terms of a letter agreement dated July 28, 1994, between Whiting and BWAB. A review of that letter agreement provides that the parties agree that in the event BWAB elected to accept the overriding royalty interest option, it would receive "a proportionally reduced 3.5% overriding royalty interest out of the net revenue interest <u>acquired</u> (emphasis added) by Whiting." That language, specifically the statement that the interest is computed based upon the interest acquired by Whiting, would confirm my conclusion that the overriding royalty interest was not subject to any future impairment or modification.

<u>Opinion B – December 1, 1999 Assignment</u>

In reviewing the 1999 instrument, I noted the following characteristics:

    A.    The instrument is entitled "Assignment of Overriding Royalty Interest;"

    B.    The instrument assigns and conveys "an OVERRIDING ROYALTY INTEREST of three percent (3.0%) in and to the oil and gas leases and lands described on Exhibit A." It specifically provides that it will apply to any extension or renewal of said leases. (1999 Assignment, 2nd Para.);

    C.    The instrument provides that the interest assigned shall be free and clear of all development production and operating expenses. (1999 Assignment, Para. 1);

6

D. The instrument specifically precludes the creation of any implied obligations or covenants on the part of the working interest owner. (1999 Assignment, Para. 2);

E. The instrument contains a proportionate reduction clause. (1999 Assignment, Para. 4);

F. The instrument contains specific language concerning what conditions, if any, the interest assigned will be subject to reduction in the future. (1999 Assignment, Para. 6);

G. The instrument uses real property language of grant and conveyance to transfer the interest.

Based upon the foregoing characteristics, it appears that the parties to this interest intended to create a real property interest consisting of a specific independent ownership interest in the oil and gas leases described in the exhibit to the instrument. The interest so acquired would be considered an overriding royalty interest in accordance with common industry standards.

The primary difference between the 1999 Assignment and the 1994 Assignment is in the form used. The 1999 Assignment is a much more standard industry form, which uses the proportionate reduction clause to reduce the net size of the interest being assigned to correspond to the interest owned by the assignor while the 1994 Assignment tied the size of the interest being assigned to the net revenue interest of the assignor to accomplish the same purpose.

The fact that the interest was assigned by Delta, which at that time acquired and owned a "net operating interest," does not alter my opinion that the instrument would be construed as conveying to BWAB an overriding royalty interest.

Federal oil and gas leases are subject to rules and regulations promulgated by the appropriate federal agency concerning ownership and transfer of interests in the leases. Among other things, these regulations allow for the assignment of record title or the separate assignment of operating rights in a federal lease.

Assignment of operating rights is the practice whereby the owner of record title to a lease assigns the operating rights to a portion of the lease. Operating rights are defined as the interest created out of a lease authorizing the holder of that right to enter on the leased lands to conduct drilling and related operations, including the production of oil and gas from such lands in accordance with the terms of the lease.[5] The assignment of operating rights would be equivalent to assigning the working interest in the lease to the assignee. The assignor retains record title while the assignee receives ownership of and the right to operate and control the operating rights assigned. An assignment of operating rights in a federal lease is in the nature of a common law sublease.[6] Thus, it would appropriately be construed as a real property interest.

It is my opinion that the Conveyance and Assignment dated December 1, 1999 from Whiting to Delta should be construed as a conveyance of operating rights equivalent to the conveyance of a working interest in the oil and gas leases described in the instrument. This conclusion is based

---

[5] 43 C.F.R. §3100.0-5(d)
[6] Rocky Mountain Mineral Law Foundation, Law of Federal Oil and Gas Leases, §10.06[2]

upon the fact that the instrument assigns to Delta an interest in every type of property interest involved in the operating interest attributable to an oil and gas lease. This includes an interest in the leases, the wells, all tangible personal property associated with the operation of the wells, and all intangible personal property including all contract rights and obligations. The Assignment further provided that Delta would assume 100% of the operational costs associated with the interest in the leases being assigned. From the language of the instrument, it is clear that Delta acquired all operational rights and liabilities (excepting plugging and abandonment liability) with respect to the interests formerly owned by Whiting, while Whiting retained only bare record title to the interest it had acquired from UPRC. Thus, notwithstanding the fact the instrument makes reference to a net operating interest, the interest assigned was equivalent to an operating interest or working interest in the federal oil and gas leases described. The 1999 Assignment was carved out of this interest.

Opinion C – Larson Assignment

The form used for the Larson Assignment is identical to the form used for the 1999 Assignment, except for the percentage interest assigned. Therefore, my analysis of the form and conclusions and opinions reached with respect to it are the same as those applicable to the 1999 Assignment which are incorporated herein.

Procedural Matters

Attached hereto as Exhibit A is a copy of my resume. I have not authored any publications in the past 10 years.

Attached hereto as Exhibit B is a list of documents examined by me. Those materials constitute the facts and data which were relied upon in formulating my opinions and any of the documents may be used as exhibits in support of those opinions.

I have not testified as an expert at trial or by deposition in the previous four years.

My firm is being compensated for all work on this case upon hourly billing rates. My rate is $350 per hour. My firm's compensation is not dependent upon our opinion.

BURNS, WALL AND MUELLER, P.C.

By *[signature]*

Robert T. Cosgrove

# EXHIBIT A

**ROBERT THOMAS COSGROVE**
303 EAST SEVENTEENTH AVENUE, SUITE 800
DENVER, COLORADO 80203-1260
(303) 830-7000

| | |
|---|---|
| EDUCATION: | <u>University of Denver, College of Law</u><br>Denver, Colorado<br><br>J.D., June, 1982<br>Order of St. Ives<br>Technical Research Editor, **Denver Law Journal**, 1981-1982<br><br><u>University of Massachusetts</u><br>Amherst, Massachusetts<br><br>B.S., Zoology, June 1979 |
| LEGAL:<br>EXPERIENCE | BURNS, WALL AND MUELLER, P.C., Denver, Colorado<br>Associate:    1982 - 1987<br>Shareholder/Director: 1987 - present. |
| AREAS OF<br>PRACTICE | <u>Oil and Gas:</u><br>Representing companies and individuals in many aspects of oil and gas law relative to the upstream oil and gas industry including, preparation and interpretation of industry contracts, examination of mineral titles, preparation of Drilling and Division Order Title Opinions and litigation involving oil and gas contracts and title and surface use disputes.<br><br><u>Commercial Litigation:</u><br>Representing Plaintiffs and defendants in substantial contract and real property disputes and other complex commercial litigation in federal and state courts. Reported decisions include *Shewmake v. Badger Oil Corp.*, 654 F.Supp. 1184 (D. Colo. 1984); *National Co-op Refinery Ass'n v Rouse*, 60 B. R. 857 (D. Colo. 1986); *In re Val Moritz Inv. Group Ltd.*, 116 B. R. 257 (Bankr. D. Colo. 1990); *In re Anderson Petroleum, Inc.*, 61 B. R. 583 (Bankr. D. Colo. 1986); *AEC Industries, LLC v Survivor Oil Inc.*, 7 P.3d 1052 (Colo. App. 1999); *Merrick & Co. v Estate of Verzuh*, 987 P.2d 950 (Colo. App. 1999); *Beckhart v. HTS Properties, LLC*, 981 P.2d 219 (Colo. App. 1999); *Grynberg v. Waltman*, 946 P.2d 473 (Colo. App. 1997); *Sundaram v James*, 2012 Bankr. Lexis 4771 (Bank. Colo. 2012); *Durwick, LLC v Doe*, 2012 Bankr. Lexis 2589 (Bank. Colo. 2012) |

| | |
|---|---|
| PROFESSIONAL LICENSES: | Colorado Supreme Court, 1982; U.S. District Court, District of Colorado, 1982; U.S. Court of Appeals, Tenth Circuit, 1983; U.S. Court of Appeals, Fourth Circuit, 1989. |

MARTINDALE – HUBBELL RATING:   AV

PROFESSIONAL ASSOCIATIONS:   Member:   Denver Bar Association
Colorado Bar Association
Rocky Mountain Mineral Law Foundation

## EXHIBIT B

## MATERIALS EXAMINED

1. Declaration of Seth Bullock in Support of Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056

2. Assignment of Overriding Royalty dated December 16, 1994, recorded January 25, 1995, at Reception 95-004156, between Whiting Petroleum Corporation and BWAB Limited Liability Company.

3. SEC Form 8-K/A dated June 9, 1999, Delta Petroleum Corporation as registrant.

4. Purchase and Sale Agreement dated June 8, 1999 between Whiting Petroleum Corporation and Whiting Programs, Inc. as seller, and Delta Petroleum Corporation, as buyer.

5. Promissory Note dated May 24, 1999 in the amount of $1,000,000, Delta Petroleum Corporation as borrower and Roger A. Parker and Aleron H. Larson, Jr. as holders.

6. SEC Form 8-K/A, Amendment #2, dated June 9, 1999, Delta Petroleum Corporation as registrant.

7. SEC Form 8-K/A dated December 1, 1999, Delta Petroleum Corporation as registrant.

8. Conveyance and Assignment dated December 1, 1999, whereby Whiting Petroleum Corporation and Whiting Programs, Inc., conveys to Delta Petroleum Corporation

9. Loan Agreement dated December 1, 1999 among Kaiser-Francis Oil Company as lender, and Delta Petroleum Corporation as borrower.

10. Promissory Note (Floating Interest Rate) dated December 1, 1999 in the principal amount of $8,000,000 among Delta Petroleum Corporation as debtor and Kaiser-Francis Oil Company as lender.

11. Assignment of Overriding Royalty Interest dated December 1, 1999, between Delta Petroleum Corporation and BWAB Limited Liability Company, assigning an overriding royalty interest of three percent in and to the oil and gas leases and lands described on Exhibit A, Point Arguello Field, Offshore California, concerning that certain Purchase and Sale Agreement between Whiting Petroleum Corporation, as seller, and Delta Petroleum Corporation, as buyer, dated June 8, 1999.

12. Point Arguello Calculation of Excess Payments to BWAB

13. Notice of Electronic Filing, Declaration in Support (of Seth Bullock) Plaintiffs Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, dated February 12, 20013, U.S. Bankruptcy Court, District of Delaware, Case No. 12-50898-KJC, *Delta Petroleum General Recovery Trust et al v. BWAB Limited Liability Company et al.*

14. BWAB's Memorandum of Law in Opposition to Plaintiffs Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056 (Adv. D.I. 34)

15. Declaration of Steven Roitman in Support of BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056

16. Point Arguello Field, Offshore California, concerning that certain Conveyance and Assignment between Whiting Petroleum Corporation, as assignor, and Delta Petroleum Corporation, buyer, effective April 1, 1999

17. Letter dated July 28, 1994, to BWAB Incorporated from Whiting Petroleum Corporation concerning the acquisition of Union Pacific Resources Corp. Interest in Point Arguello Field, Offshore Santa Barbara, CA, etc.

18. Letter dated July 13, 1994 to Union Pacific Resources Company from BWAB Incorporated, regarding Revised Proposal for Purchase of Certain Assets

19. Assignment of Overriding Royalty dated December 16, 1994, recorded January 25, 1995 at Reception No. 95-004---, Santa Barbara County, between Whiting Petroleum Corporation and BWAB Limited Liability Company.

20. Point Arguello Field, Offshore California, concerning that certain Assignment of Overriding Royalty between Whiting Petroleum Corporation, as assignor, and BWAB Limited Liability Company, as assignee, dated December 16, 1994.

21. Assignment of Overriding Royalty dated December 16, 1994 between Whiting Petroleum Corporation and BWAB Limited Liability Company, "Received" stamp January 11, 1995 Minerals Management Service Pacific OCS Region, Environmental Evaluation, Camarillo, California

22. Letter dated June 24, 1997 to BWAB Incorporated from Whiting regarding Point Arguelio Unitization

23. Agreement dated April 1, 1999 between BWAB Limited Liability Company and Delta Petroleum Corporation

24. Conveyance and Assignment dated December 1, 1999, among Whiting Petroleum Corporation and Whiting Programs, Inc. as assignor, and Delta Petroleum Corporation, as assignee.

25. Assignment of Overriding Royalty Interest dated December 1, 1999 between Delta Petroleum Corporation as assignor, and BWAB Limited Liability Company, as assignee.

26. Delta Petroleum Corporation's Check #091156 made payable to BWAB Limited Liability Company in the amount of $52,602.49

27. Declaration of Aleron H. Larson, Jr. in Support of BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056

28. Delta Petroleum Corporation 2004 Annual Report

29. Assignment of Overriding Royalty Interest dated December 1, 1999, between Delta Petroleum Corporation as assignor and Aleron H. Larson, Jr., as assignee.

30. Declaration of Fred Gaynor Rappleye, II, in Support of BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056

31. Conveyance and Assignment dated December, 19 1999 among Whiting Petroleum Corporation and Whiting Programs, Inc., as assignor, and Delta Petroleum Corporation as assignee

32. Certificate of Service dated March 12, 2013 concerning BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, filed in the United States Bankruptcy Court for the District of Delaware, Adversary Proceeding No. 12-50898 (KJC), *Delta Petroleum*

33. Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, filed in the United States Bankruptcy Court for the District of Delaware, Adversary Proceeding No. 12-50898 (KJC), *Delta Petroleum*

34. Unit Agreement for Outer Continental Shelf Exploration, Development and Production Operations on the Point Arguello Unit, among Channel Islands Area and Santa Maria Basin Area, Offshore California (Contract No. 496001), dated effective October 1, 1996.

35. Agreement between Delta Petroleum Corporation and Aleron H. Larson, Jr. and Roger A. Parker, dated July 30, 1999, concerning $2,000,000 loan from Labyrinth Enterprises, LLC to Delta

36. Assignment of Overriding Royalty Interest dated December 1, 1999, between Delta Petroleum Corporation and Aleron H. Larson, Jr., concerning a 1 percent overriding royalty interest in and to the oil and gas leases and lands described on Exhibit A.

37. Unit Operating Agreement, Point Arguello Unit, Pacific Offshore, California, effective October 1, 1996, between Texaco Exploration and Production, Inc. Sun Operating Limited Partnership, Pennzoil Exploration and Production Company, Koch Industries, Inc., Oxbow Energy Inc., Chevron U.S.A. Inc., Phillips Petroleum Company, and Whiting Petroleum Corporation

38. Assignment of Oil and Gas Lease from Union Pacific Resources Company to Whiting Petroleum Company effective January 1, 1994.

39. Decision/Assignments Approved relating to assignment referenced in paragraph 38 above.

40. Memorandum of Law In Support of Plaintiffs' Motion for Summary Judgment.

41. BWAB's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment.